ACCEPTED
03-16-00131-CV
12911642
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/26/2016 7:31:34 PM
JEFFREY D. KYLE
CLERK

No. 03-16-00131

_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/26/2016 7:31:34 PM
JEFFREY D. KYLE
Clerk

# IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN

_____

Mary Louise Serafine,
*Appellant*

v.

Alexander Blunt; Ashley Blunt; Scott Lockhart; Austin Drainage and Foundation, LLC d/b/a Austin Drainage and Landscape Development; Viking Fence Company, Ltd.; and Viking GP, LLC,
*Appellees*

_____

**From the 250th Judicial District Court of Travis County, Texas,
Hon. Karin Crump, presiding,
Cause No. D-1-GN-12-001270**

_____

**APPELLANT'S BRIEF**

_____

Mary Louise Serafine
State Bar No. 24048301
P.O. Box 4342, Austin, Texas 78765
Tel:(512) 220-5452
Email: mlserafine@gmail.com
Attorney for Appellant

**ORAL ARGUMENT REQUESTED**

_____

# IN THE COURT OF APPEALS FOR THE
# THIRD DISTRICT OF TEXAS AT AUSTIN

_____

Mary Louise Serafine, *Appellant*

v.

Alexander Blunt; Ashley Blunt; Scott Lockhart; Austin Drainage and Foundation, LLC d/b/a Austin Drainage and Landscape Development; Viking Fence Company, Ltd.; and Viking GP, LLC, *Appellees*

## IDENTITY OF PARTIES AND COUNSEL

**Plaintiff/Appellant:**
**Mary Louise Serafine**

**Trial and appellate counsel:**
Ray Bass (through Feb. 29, 2016)(deceased)
State Bar No. 01884000
120 West 8th Street, Georgetown, TX 78626
Tel: 512-863-8788
ray@raybass.com

Mary Louise Serafine  (current)
State Bar No. 24048301
Attorney & Counselor at Law
PO Box 4342, Austin, TX 78765
Tel: 512-220-5452
mlserafine@gmail.com

**Trial counsel:**
Robert G. Hargrove (through Sept., 2012)
State Bar No. 24032391
Hays & Owens, LLP

807 Brazos, Ste. 500, Austin, TX 78701
Tel: 512-472-3993
(now at Osborn, Griffith & Hargrove)
515 Congress Avenue, Suite 2450, Austin, TX 78701
Tel: 512-476-3529
rob@texasenergylaw.com


**Defendants/Appellees:**
**Viking Fence Company, Ltd. and Viking GP, LLC**

**Trial and appellate counsel:**
Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500, Austin, TX 78701
Tel:  512-708-8200

Jeff D. Otto  (trial and appellate counsel)
State Bar No. 15345500
jotto@thompsoncoe.com

Melissa Ackie (trial and appellate counsel)
State Bar No. 24088686
mackie@thompsoncoe.com

Wade C. Crosnoe  (appellate counsel)
State Bar No. 00783903
wcrosnoe@thompsoncoe.com

Sara B. Churchin  (appellate counsel)
State Bar No. 24073913
schurchin@thompsoncoe.com

**Defendants/Appellees:**
**Scott Lockhart and Austin Drainage and Foundation LLC d/b/a Austin Drainage and Landscape Development**

**Trial and appellate counsel:**
The Raydon Firm LLC

Ronald M. Raydon
State Bar No. 00798456
Two Riverway, Suite 845, Houston, TX 77056
Tel:  281-222-7293
ron@raydonlaw.com

**Defendants/Appellees:**
**Alexander Blunt and Ashley Blunt**

**Trial and appellate counsel:**
Hajjar Peters LLP
Doran D. Peters
State Bar No. 24027615
3144 Bee Caves Road, Austin, Texas 78746
Tel: 512-637-4956
service @legalstrategy.com

**Appellate counsel:**
Martens, Todd, Leonard, Taylor & Ahlrich  (current)
Amanda Taylor
State Bar No. 24045921
301 Congress Ave., Suite 1950, Austin, Texas 78701
Tel: 512-542-9898
ataylor@textaxlaw.com

# TABLE OF CONTENTS

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Abbreviations and Record References . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiv

Statement on Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi

Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvii

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
I.    The great weight and preponderance of evidence
      —or conclusive evidence—established Serafine's
      title by limitations no later than November 23, 1988 . . . . . . . . . . . . .  8

      A.    The elements of adverse possession were met  . . . . . . . . . . . . . . 8

      B.    No relevant evidence contradicted these facts  . . . . . . . . . . . . . 24

      C.    Grant's Occupied Line Survey is accurate  . . . . . . . . . . . . . . . 25

      D.    Serafine met the 5, 10, and 25-year statutes for
            limitations title  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

II.   The court erred in expunging the notice of *lis pendens*
      ---misconstruing  Prop. Code §12.0071, defeating appellate jurisdiction
      over the *res,* and ignoring statutory procedural requirements . . . . . .  29

      A.    "Probable validity" means "legally cognizable"  . . . . . . . . . . . 29

B.     The expungement of a valid but rejected claim defeats
appellate jurisdiction over the *res* ........................ 31

C.     The trial court  ignored statutory procedure ................ 32

III.   Declaring the Carson survey as the boundary was error ........... 33

A.     The Carson survey is untenable under any theory ........... 34

B.     The trial court erred in finding Serafine's
surveyor Grant's methods "unreliable" ........................ 39

C.     The court erred by not holding a hearing on the boundary .... 39

IV.   The court erred in granting the MSJs of Viking Ltd.
and Viking GP  on (a) negligent training and supervision
and (b) nuisance ........................................... 41

A.     The court erred in granting summary judgment
favorable to Viking on negligent hiring,
training, and supervision .............................. 41

B.     The court erred in granting summary judgment
favorable to Viking on Serafine's nuisance claims .......... 50

V.    The trial court engaged in prevailing-party
fee-shifting unauthorized by any statute, by fashioning
an unwarranted $10,000 sanction ............................ 52

A.     The conduct in question was unsanctionable ............... 55

B.     The purpose of the sanction was improper—
to replace Viking's failed fee-shifting under
the offer-of-settlement rule ............................ 58

C.     Viking's sanctions motion was based on a

substantive error of law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

D.      The court acted arbitrarily by surmising
         sanctionable conduct, without finding it  . . . . . . . . . . . . . . . . . 60

VI.    The trial court erred in awarding Serafine $0
        in fees and sanctions under the Citizen's Participation Act,
        or alternative law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

A.      The court was required to award Serafine's fees
         under *Sullivan*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

B.      The trial court was required to award sanctions  . . . . . . . . . . . . 63

C.      In addition, the Court should render judgment in the
         amount of $53,525 in attorney's fees to Serafine . . . . . . . . . . . 67

VIIa.  Errors in the trial court require a new trial  . . . . . . . . . . . . . . . . . . 68

A.      Plaintiff was denied rebuttal  . . . . . . . . . . . . . . . . . . . . . . . . . . 69

B.      In a "death penalty" sanction the trial court excluded
         plaintiff's trial exhibits on controlling issues . . . . . . . . . . . . . . 75

C.      Admitting a purported mediation and settlement
         offer was harmful error  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

D.      The court erred in refusing a lateral support instruction  . . . . . 85

VIIb. The trial court prevented appeal within
        the meaning of TRAP 44.1(a)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . 87

Prayer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

Appellant's Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

## Trial Court Orders

Final Judgment, including charge, verdict,
order on boundary, monetary sanctions .......................... Tab 1
Order setting boundary, expungement ........................... Tab 2
Findings of fact & conclusions of law .......................... Tab 3
Order granting Viking MSJs ................................... Tab 4
Order consolidating cases .................................... Tab 5
Directed verdict on Lockhart ................................. Tab 6
Order excluding plaintiff's expert Hilts ....................... Tab 7
Evidentiary sanction excluding plaintiff's exhibits ............... Tab 8
Judge's bill of Exception .................................... Tab 9

## Pleadings

Petition in 12-1270 ....................................... Tab 10
Petition in 13-4023 ....................................... Tab 11
First supplement to petitions, both cases ........................ Tab 12
Second supplement to petitions, both cases ...................... Tab 13
Blunts' counterclaims for interference and fraudulent lien .......... Tab 14
Blunts' counterclaim for trespass .............................. Tab 15

## Motion

Plaintiff's supplement to motion for Chapter 27 relief .............. Tab 16

## Statutes and Rules

Civ. Prac. & Rem. Code sec. 27.009 ............................ Tab 17
Civ. Prac. & Rem. Code sec. 16.034 ............................ Tab 18
Prop Code sec. 12.0071 ..................................... Tab 19
Tex. R. Civ. P. 13 ......................................... Tab 20
Civ. Prac. & Rem. Code Chapter 10 ........................... Tab 21
Tex. R. Civ. P. 265 ........................................ Tab 22
Tex. R. civ. P. 266 ........................................ Tab 23
Civ. Prac. & Rem. Code secs. 16.021 to 16.030 .................. Tab 24

## ABBREVIATIONS AND RECORD REFERENCES

**Parties**

"Serafine" means plaintiff/appellant Mary Lou Serafine.

"Viking Ltd." means defendant/appellee Viking Fence Company, Ltd. d/b/a Viking Fence Co.

"Viking GP" means defendant/appellee Viking GP, LLC, the general partner of Viking Ltd.

"Viking" means Viking Ltd. and Viking GP collectively.

"Lockhart" refers to defendants/appellees Scott Lockhart and Austin Drainage and Foundation, LLC d/b/a Austin Drainage and Landscape Development.

"Mr. and Mrs. Blunt" or "Blunts" refers to defendants/appellees Alexander Blunt and Ashley Blunt.

**Rules & Statutes**

"Rule" or "TRAP" means Texas Rule(s) of Appellate Procedure.

"TRCP" means Texas Rule(s) of Civil Procedure.

"CPRC" means Civil Practice & Remedies Code.

"TCPA" or "Chapter 27" refers to the Texas Citizen's Participation Act at Chapter 27 of the Civ. Prac. & Rem. Code.

**Form of Record Citations**

REPORTER'S RECORDS
**[vol. or supp. no.].RR:[pg. no.]**

The trial court ordered revision of Volumes 1, 7, and 16.
Only if citation is necessary to *Revised* Reporter's Records, then:

**[vol. or supp. no.].RevisedRR:[pg. no.]**

CLERK'S RECORDS
**CR:[pg. no.]**              refers to record filed 5-9-16 (1096 pp.)
**CRSuppI:[pg. no.]**         refers to that filed 5-27-16  (250 pp.)
**CRSuppII:[pg. no.]**        refers to that filed 6-21-16  (41 pp.)
**CRSuppIII:[pg. no.]***      refers to that filed 7-8-16  (166 pp.)
**CRSuppIV:[pg. no.] ***      refers to that filed 7-8-16  (31 pp.)
**CRSuppEx:[pg. no.]****      refers to that filed 7-21-16 (one exhibit)
**CRSuppV:[pg. no.]**  * refers to that filed 9-1-16 (780 pp.)
**CRSuppVI:[pg. no.] ****     refers to that filed 9-14-16 (77 pp.)
**CRSuppVII:[pg. no.]****     refers to that filed 9-14-16 (104 pp.)

*      No supplement number shown on title page.
**      No title page is shown on this exhibit supplement.

# INDEX OF AUTHORITIES

*Cases*

*Beard Family Partnership v. Commercial Indem. Ins. Co.*,
116 S.W.3d 839 (Tex. App.—Austin 2003) . . . . . . . . . . . . . . . . . . . . . . . 68

*Brohlin v. McMinn*, 341 S.W.2d 420 (Tex. 1960) . . . . . . . . . . . . . . . . . . . . . . 26

*Brookshire Bros., Ltd. v. Aldridge*, 438  S.W.3d 9 (Tex. 2014) . . . . . . . . . . 81

*City of Houston v. Bates*, 406 S.W.3d 539 (2013) . . . . . . . . . . . . . . . . . . . . . 29

*Crosstex North Texas Pipeline, L.P. v. Gardiner*, No. 15-0049
(Tex. June 24, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51, 52

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237 (Tex. 2001) . . . . . . . . . . . . . . . . 28

*Ford Motor Company v. Castillo*, 279 S.W.3d 656 (Tex. 2009) . . . . . . . . . . 87

*In re Estate of Francisco Julio Lerma Sanchez*, No. 04-11-00332-CV
(Tex. App.—San Antonio April 18, 2012) . . . . . . . . . . . . . . . . . . . . . . 32

*In re Patton*, 47 S.W.3d 825, 828 (Tex. App.—Fort Worth 2001) . . . . . 81

*Jacque v. Steenberg Homes, Inc.*, 563 N.W.2d 154 (Wis. 1997) . . . . . . . . . 51

*King v. Associates Commercial Corp.*, 744 S.W.2d 209
(Tex.App.—Texarkana 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127
(Tex. App.—Amarillo 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Latimer  v.  Memorial  Hermann  Hospital  Sys.*,  No.  14-09-00925-CV
(Tex.App.—Houston [14th Dist.] Jan. 20, 2011) . . . . . . . . . . . . . . . . 42

*Lippincott v. Whisenhunt*, 462 S.W.3d 507 (Tex. 2015) . . . . . . . . . . . . . . . . 66

*Mentis v. Barnard*, 870 S.W.2d 14 (Tex.1994) . . . . . . . . . . . . . . . . . . . . . . . . 83

*Metzger v. Sebek*, 892 S.W.2d 20 (Tex. App.—Houston 1994) . . . . . . . . . . . 65

*Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355 (Tex. 2014) . . . . . . . . . . . . . 59

*Nabours v. Whiteley*, 466 S.W.2d 62 (Tex.Civ.App. —Austin 1971) . . . . . 26

*Neyland v. Thompson*, No. 03-13-00643-CV
      (Tex. App.—Austin Apr. 7, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 64

*Rosell v. Central West Motor Stages, Inc.*, 89 S.W.3d 643
      (Tex.App.—Dallas 2002, pet. denied) . . . . . . . . . . . . . . . . . . . . . . 41

*Salma v. Capon*, 161 Cal.App.4th 1275 (2008) . . . . . . . . . . . . . . . . . . . . . . 64

*Serafine v. Blunt*, 466 S.W.3d 352 (Tex. App.—Austin 2015, no pet.) . . . . 61

*Simon v. Nance*, 100 S.W. 1038
      (Tex. Civ. App.—Austin 1907, no writ) . . . . . . . . . . . . . . . . . . . . . . 86

*Sullivan v. Abraham*, 488 S.W.3d 294 (Tex. 2016) . . . . . . . . . . . . . . . . . . . 63

*Tarrant Cnty. v. Chancey*, 942 S.W.2d 151
      (Tex.App.—Fort Worth 1997, no writ) . . . . . . . . . . . . . . . . . . . . . . 61

*Texas Water Rights Commission v. Crow Iron Works*,
      582 S.W.2d 768 (Tex. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*TransAmerican Nat'l Gas Corp. v. Powell*, 811 S.W.2d 913
      (Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

*Wein v. Sherman*, No. 03-10-00499-CV
      (Tex.App.—Austin Aug. 23, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Yates v. Fisher*, 988 S.W.2d 730, 731 (Tex. 1998) . . . . . . . . . . . . . . . . . . . 42

### Rules and Statutes

Civ. Prac. & Rem. Code Chapter 27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Civ. Prac. & Rem. Code Chapter 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Prop. Code §12.0071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 32

Tex. R. App. P. 44.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

Tex. R. Civ. P. 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

### Other Authority

Black's Law Dictionary, Garner, B., ed., 10th Edition, 2014 . . . . . . . . . . . . 30

## STATEMENT OF THE CASE

**Nature of the case:** Serafine's claims were for trespass-to-try title, interference with property rights, and damage to property. (CR:15-29, 32-50). The Blunts counterclaimed for trespass, tortious interference with contract, and fraudulent lien. (CR:419-21, 6-8).

**Trial court proceedings:**

**In Cause No. D-1-GN-12-001270:**
Serafine filed suit against the Blunts and Lockhart; the Blunts counterclaimed against Serafine.

**Court of Appeals interlocutory disposition of Blunts' counterclaims in part:**

After a stay entered in Dec., 2012 (CR:30-31) the Court issued its mandate on Sept. 10, 2015. (CR:415-418). The Court's opinion is at *Serafine v. Blunt*, 466 S.W.3d 352 (Tex. App.—Austin 2015, no pet.),

**In Cause No. D-1-GN-13-004023:**
Serafine filed suit against Viking Fence.

**Trial court disposition:**

**Trial court assigned for all purposes:** The Honorable Karin Crump, 250th Judicial District Court, Travis County. CR:55.

The 250th Judicial District Court retained and consolidated all matters above. (CR:371-376). Trial was held Oct. 13-16, 2015. RR, Vol.9-12. Two final orders were signed on Nov. 13, 2015. CR:740-43. Final judgment was signed Dec. 3, 2015. (CR SuppIII:94-129).

**Court of Appeals proceedings:**

On June 13, 2016 matters concerning the record were abated to the trial court. On July 26, 2016 the Court reinstated the appeal. On July 28, 2015 the trial court signed orders in the matters abated. The clerk's record of matters abated was filed on Aug. 31, 2016. CRSuppV:448-50.

**STATEMENT ON ORAL ARGUMENT**

Should the Court wish oral argument concerning issues not authoritatively interpreted, appellant respectfully suggests these include:

- how the sanctions provision in the Citizen's Participation Act should be interpreted, including when false testimony undergirds a mixed-claim Chapter 27 violation;

- how to apply the principle of interference with property rights under the Supreme Court's nuisance jurisprudence in *Crosstex North Texas Pipeline, L.P. v. Gardiner*, No. 15-0049 (Tex. June 24, 2016);

- when a case is headed for appeal, how the "probable validity" phrase in Prop. Code § 12.0071 should be interpreted on a motion to expunge a *lis pendens* notice.

Tex. R. App. P. 39.1(b).

# ISSUES PRESENTED FOR REVIEW

Two cases with related but different facts, different defendants and causes of action, and different experts were consolidated just before trial. The issues are argued in the order in which the preceding ones provide context for later ones—not, as often is the case, in order of diminishing importance.

1a.    Whether the jury's rejection of appellant's title by limitations was against the great weight and preponderance of the evidence, or alternatively,

1b.    Whether appellant's title by limitations was conclusively established, and no evidence supported a contrary result.

2.    Whether the court below erred in expunging the notice of *lis pendens* as a matter of law under Prop. Code § 12.0071.

3.    Whether the court's fixing of the boundary at the "Carson line" was against the great weight and preponderance of the evidence or, alternatively, the evidence conclusively established that the "Carson line" was error.

4.    Whether the court erred as a matter of law in granting Viking's motions for summary judgment on (a) negligent training and supervision and (b) nuisance.

5.    Whether the trial court abused discretion by replacing Viking's failed fee-shifting plea with a $10,000 sanction against Serafine in Viking's favor.

6.    Whether the court erred in awarding Serafine **$0** in relief on the Blunts' dismissed counterclaims under the Citizen's Participation Act.

7a.    Whether the trial court's erroneous rulings require a new trial.

7b.  Whether the trial court prevented appeal within the meaning of TRAP 44.1(a)(2).

## STATEMENT OF FACTS

Serafine bought Lots 5 and 6 in Hyde Park, Austin in 1977. 9.RR:112,113, 116. Serafine brought two law suits arising out of separate construction projects contracted by her then-neighbors, the Blunts, in late 2011 and early 2012, on and abutting what Serafine claimed was her land.

1. ***Claims against Viking (Cause No. D-1-GN-13-004023).*** Serafine claimed that Viking Fence knew or had to know the Blunts had hired Viking to tear out ***Serafine's*** fences and gate post without her consent, disrupting her boundary by installing a fence on her property. CR:32-50. After depositions, Serafine claimed Viking had a "business policy to treat the property rights of adjoining landowners...with...contemptuous disregard," *Id.,*¶112, and a "routine practice, of sending out unsupervised...persons" doing "quick work...." *Id.,*¶31. Viking did not know who all of its crew were. 11.RR.16-17.

Serafine's surveyor reconstructed the original boundary created by the fence. CR:50. It showed Serafine had lost 120 square feet on a small lot. *Ibid.* At trial Serafine testified without dispute to photographs of a Pecan tree showing that before Viking's work, "that's my chain link fence and that's the tree on my property." 9.RR:159. After Viking's work, "the tree is now on the

1

Blunts' property." 9.RR:156.

Viking's Jimmy Clanin was asked, "before you start putting in a fence that is between two properties, do you have any contact with the adjoining property owner?" he answered, "No, sir, not generally." 11.RR:20. He testified, "I can't specifically remember looking at the survey before I started the job." 11.RR:19.

Serafine claimed Viking was liable because Viking should know "that demolition, removal, and/or replacement of an existing fence that separates two properties would cause litigation to ensue" including the trespass-to-try-title action she was forced to bring against the Blunts to restore the 34-year-old boundary. CRSuppVI:3-10. She testified she "didn't want my chain link fence that matched the gate to be torn out." 9.RR.142-43. The jury saw a photo of the historic "Snelling House" plaque on Serafine's house. 9.RR.129-130; 17.RR.5. Earlier she had been engaged in a historic restoration. 9.RR:139.

2. ***Construction-Related Claims against Lockhart and the Blunts (Cause No. D-1-GN-12-001270)***. Entirely separately, the Blunts hired contractor Lockhart a few months later in about March or April, 2012. Serafine testified she saw "that an apparent drainage system was being installed...close to my

property." 10.RR:189 (Serafine). Then "orange lines were painted along my driveway which appeared to be where the next part of the trench was going to be, on my driveway." The double lines extended for some 43 feet, parallel to the north wall of her house, about 10 feet from it. *Ibid.* Alexander Blunt testified to a photo of the orange lines, and that his surveyor's stake was planted to mark the lines' location. 11.RR:121, 123-24. Various photos showed the stake planted right through the entry way into Serafine's yard, the space closed off by the still-standing gate. 18.RR:213, 233 (Blunt Exx. 56, 79). Seeing the lines, Serafine hired licensed engineer David Price. 10RR:189. He inspected on site. *Ibid.* Based on Price's engineering opinion, Serafine obtained a TRO, a temporary injunction was denied, and construction went forward. The City stopped construction and ordered protective measures for Serafine's tree. 3.RR.24 (Blunt). Serafine sued for damages. CR:15-29(Petition ¶17).

Serafine alleged the trenching and underground drainage system interfered with the lateral support of her land . She claimed it permanently "removed soil, created underground voids, and [removed] ground and surface moisture" in a manner harmful to her land and the foundation of her house. CR:18-19:¶19. Following expert reports, Serafine pled that "in all reasonable

3

engineering probability, changes in the land and soil...will interfere with lateral support, [and] will diminish the weight-bearing capacity of the soil, [] and...will damage Plaintiff's land, house, trees, and a small building...she intended to turn into an office." CR19:¶20. There were "no plans, no specs, no drawings, no analysis of the clay soil in the area, and no competent engineering input or supervision." CR19:¶24. Serafine alleged Lockhart was engaged in unauthorized practice of engineering. CR:22. Ultimately, at trial, there were no plans or specs for the construction.

At trial Serafine's engineer Price testified that the soil was "very plastic, goes through high shrink/swell variations." 10.RR:220. "When it's dry, it shrinks, when it's wet, it swells up." 10.RR:206. As a result, "you're going to get a tilted site." 10.RR:208.

Price anticipated that a slow "lateral shifting" of Serafine's land was taking place because "when you dig a ditch --you've upset the soil dynamic...if you dug a hole in sand, obviously it breaks up, because when you dig a hole it caves in." 10.RR:228.

Cracks formed throughout Serafine's house, she testified, and actual "breaks in the drywall...and large and long cracks in every room;" the craftsman-period front porch posts became "misaligned"; and other damage.

9.RR:448.

Serafine's photographs were excluded as a sanction. *See infra.*

Serafine pled damages for diminution in value and stigma. CR19:¶23,26.

Her valuation expert Rudy Robinson testified to damages between $164,522 and $196,800. 10.RR.291.

### 3. *Claims against only Blunts in trespass-to-try title (Cause No. 12-1270 above).*

Serafine claimed limitations title against the Blunts by adverse possession or alternatively agreed boundary or prescriptive easement. CR:15-29 (Live petition, Nov., 2012). Serafine claimed ownership from the north curb cut entering her driveway, then along a set of 200-pound railroad ties she had installed by 1978 to mark her driveway, then along the original fence line. *Ibid*.

Serafine also sued the Blunts for fraud by non-disclosure, but did not pursue it at trial. Serafine testified that neither of the Blunts (nor Viking) told her they planned to tear out the original fence. Serafine testified that Ashley Blunt affirmatively told Serafine they would not tear it out. 9.RR:142. Ashley

5

Blunt's testimony did not dispute this.

Serafine was represented by counsel for virtually all of the 12-1270 case including the Blunts' counterclaims, successively by Rob Hargrove and then Ray Bass. Mr. Bass was lead counsel. Serafine, a lawyer, also worked on the case.

Serafine obtained separate legal opinions and a second engineering consultation in addition to Price. Fee bills are shown at 17.RR:176,178; 18.RR:10, 13, 16; these exhibits were excluded.

4. ***Blunts' counterclaims against Serafine (Cause No. 12-1270 above).*** The Blunts filed a counterclaim against Serafine for trespass, a month before trial. CR:419-421. The Blunts had also filed two counterclaims against Serafine in 2012. CR:6-8. As to the latter claims, Serafine had taken interlocutory appeal in this Court for the denial of dismissal under the Citizen's Participation Act. The Court stayed the 12-1270 case in December, 2012. CR:20-21.

### *Procedural History*

By May of 2015, the trespass-to-try title action, the lateral support/ construction case, and the Blunts' counterclaims against Serafine in the 12-

1270 case were still stayed pending interlocutory appeal. In the 13-4023 case, Viking and Serafine had agreed to a trial setting of October 12, 2015.

On June 26, 2015, this Court remanded in part for Chapter 27 relief to Serafine but allowed the mixed claim for alleged interference by threats and harassment to go forward. *Serafine v. Blunt*, 466 S.W.3d 352 (Tex.App.—Austin 2015, no pet.). Serafine later claimed this was fabricated and that Alexander Blunt had knowingly testified falsely to generate the claim. CR:719-739.

On Aug. 24, 2015 the parties and trial court signed an agreed order consolidating 13-4023 into 12-1270, but keeping the trial date of October 12, 2015. The Blunts the brought a new counterclaim against Serafine for trespass on Sept. 11, 2015. CR:419-421. Serafine sought continuance and was denied. CR:506-510; 551-54.

Four days before trial, on Viking's motion, the trial court entered an evidentiary sanction against Serafine and excluded most of Serafine's exhibits. CR:558-559.

At trial, Serafine was denied rebuttal. 12.RR:32.

Serafine took nothing at trial. Final judgment signed on Decemberr 3, 2015 sanctioned Serafine for $10,000 and awarded $0 in Chapter 27 relief.

CRSuppIII:94-129.

## SUMMARY OF THE ARGUMENT

The underlying story here is about private property rights.  The Blunts bought the lot neighboring Serafine's some 32 years after she had held her lot as it was.  The Blunts knew—from more than a decade as tenants and from her contentious correspondence when Mrs. Blunts' parents owned the adjoining land—that Serafine adamantly wanted her land and fixtures as they were.  They criticized her, but still bought the house next door that had been "built out" in the old days to less than 2 feet from the property line.  Serafine's house was 12 feet from it, a driveway, perhaps future carport.  What the Blunts could not take from Serafine legally, they took by deception, with a promise the fence would stay where it was, and facilitated by Viking.  That is the bottom line of this lawsuit.

## ARGUMENT

**I.  The great weight and preponderance of evidence—or conclusive evidence—established Serafine's title by limitations no later than November 23, 1988.**

**A.  The elements of adverse possession were met.**

Serafine bought Lots 5 and 6 in Hyde Park on August 11, 1977.

8

Serafine's deed was produced at trial.   9.RR:112, 113,  116.  It is stamped multiple times showing it was recorded the next day.  18.RR.278-82 (Deed), At time of trial Serafine had owned, used, and enjoyed the land continuously for over 38 years.  She paid taxes on it each year.  9.RR:116; 10.RR:33.  Lots 5 and 6 are known as 4011 Avenue D.

***Serafine marked the north boundary,  which was observed by others for 37 years.***

Upon purchase in 1977, Serafine and her then- boyfriend moved into the house on Lots 5 and 6.   Thereafter they laid down railroad ties "[t]o mark the line of the boundary, to mark -- to mark the line that I was claiming and to divide my driveway from the front yard of 4013 or what was then Ms. Davis' yard."  9.RR:119-120.

(By Mr. Bass, Serafine's counsel:)
***Q. Now, I know -- can you give us an exact date that you put those railroad ties down?***
A. I know that it was before Thanksgiving of '78.

***Q. Okay. Have you -- at my request, have you calculated the date that Thanksgiving occurred in 1978?***
A. Yes. November 23rd of 1978 was Thanksgiving, and I know that they were put down well before Thanksgiving, because I specifically remember what we
were doing on Thanksgiving and they were there.

***Q. But whether or not it was well before -- you could tell this jury with certainty you put those railroad ties there prior to***

9

*Thanksgiving of 1978; is that correct?*
A. Yes, sir, before November 23rd of '78.

9.RR:119-120.

(By Blunts' counsel Mr. Peters):
*Q:      Why did you feel the need to do that, was Ms. Davis a mean lady?*

A:      Of course not. In order to delineate the boundary and make it consistent with the chain link fence so that their -- so that the boundary would be clear, I wanted the boundary to be clear.

*Q. Why did you feel the need to have a clear boundary?*

A. I wanted to know where my property begins and ends so that it would be very clear to everyone.

10.RR.41-42.

(By Blunts' counsel Mr. Peters)
*Q. But you didn't have a surveyor come out and verify whether or not it was on your property?*
A. I didn't -- I did not have a surveyor come out.

*Q. But your thought was this is already my property?*
A. Well, whether it was or not, I was going to mark it and take it.

10.RR:49.

Serafine testified she also placed a horizontal tie to create "the space that I needed or anyone else needed to put one car and pull that car forward and put another -- at the time there were two of us living there together, and put two cars in the driveway."  10.RR:42.

10

***The boundary was observed by others.***

Alexander Blunt testified, "There is a horizontal tie. I've observed it many times." 11.RR:132.

Edward Schrump—Ashley Blunt's father—had owned the neighboring lot at 4013 since 1994. He noticed Serafine's railroad ties. He testified he "paid them no mind," but he guessed they were there when he bought the property and he did not install them. 11.RR:275.

When the neighboring front yard at 4013 was mowed, workers never mowed past the railroad ties into Serafine's property. 9.RR:125. So grass on her side along her driveway would be higher, and grass on the neighbor's side was shorter. Serafine testified she had taken photos of it. 9.RR:125-126. The photos were excluded as part of the sanction.

The railroad ties are "about six to eight inches wide" and Serafine "considered [her] property to be all the way up to the furthest edge of the railroad ties." 9.RR:125. At time of trial, the railroad ties had remained in place nearly 37 years. 9.RR:121.

***The north boundary fence was an undisturbed boundary and barrier for 34 years.***

When Serafine purchased Lots 5 and 6 in 1977, the back yard was already completely enclosed by fencing on all four sides. 10.RR.60.

11

Anyone looking at the boundary fence that Viking tore out would see that it matched exactly the fencing attached to two sides of Serafine's house. Those portions of matching fence are still standing.

Below are Viking's trial exhibits, testified to by Serafine.

The following photograph is Viking Ex. 17, 18.RR:272-277. At the corner of the house, the matching fence is attached to a pole, right at the house.



Fence at southeast corner of Serafine's house

Viking Ex. 17, 18.RR:272-277.

After a break in the fence to accommodate the wall of the house, the fence continues again from the opposite house-corner, again attached to a pole placed immediately at the house. The same fence extends for a short distance and terminates in an identically-matching gate. Below is Viking trial Exhibit 17, 18.RR:272-277.



The gate then latched directly to the north boundary fence at issue here, which stretched for 53 feet (10.RR:163).  The north boundary fence is shown in the Viking trial exhibit below.  Viking Ex. 17, 18.RR:272-277.  The gate is only very slightly seen at far left.[1]

---

[1]  *See also* Blunts' Ex. 79, 18.RR:233—a view of the north boundary fence taken from inside the Blunts' backyard.



Boundary fence to which gate attached.  Viking trial Exhibit 17, 18.RR:272-277.

Taken together as the photographs show, Serafine's backyard was not accessible except from inside the house, or through the gate attached to the north boundary fence that Viking tore out. Since 1977 Serafine's north boundary was the "chain link fence between my backyard and Ms. Davis' yard." 9.RR:116.

Serafine testified that she claimed the fence as hers and the property up to it, because her gate latched to the fence, the gate and the fence "belonged together" because they matched, and the gate and the fence matched the other fencing attached to both sides of her house. 9.RR:124,125; 10.RR:60.

Serafine testified she closed and "locked" the gate with its horseshoe latch as she wished to keep people out and never let anyone inside the fence without her permission. 9.RR:117-118. She kept grass and shrubs on her side of the fence and mowed up to the fence. 9.RR:121. With some gravel she made a path that ran alongside the fence "so that you could walk behind the [small] building [that was there] to where the garbage area is." 9.RR:122.

> (By Mr. Bass, Serafine's counsel:)
> *Q: And did you ever move that fence?*
> A: No.
>
> *Q. Did -- was anyone ever authorized to climb over that fence and come into your backyard?*

17

A. No, not ever.

9.RR.117.

Serafine always considered the property to be hers, all the way up to the chain link fence. 9.RR:121,124.

The north boundary fence remained in place until the Blunts paid Viking to tear it out in December, 2011.

***Serafine had more than 30 years of peaceable possession, with open, notorious use.***

When Serafine bought Lots 5 and 6, the property next door at 4013 was owned by Mrs. Zelphia Davis. Edward and Susan Schrump purchased 4013 in 1994. 11.RR:275 (Edward Schrump). The Schrumps are the parents of defendant Ashley Blunt. Ashley moved into the 4013 house as her parents' tenant in 1994. 11.RR:163-64 (Ashley Blunt).

The 1994 Stearns survey was admitted into evidence. 11.RR:43. It was addressed to the Schrumps, dated near their time of purchase—Aug. 29, 1994—and showed the chain link fence at Serafine's north boundary extending past the property line that Stearns drew, into the land at 4013. Blunt Ex. 34, 18.RR:172-174.

It is undisputed that Ashley and later both of the Blunts occupied the Schrumps' 4013 house next door to Serafine at various times during the 1990's

as tenants, and both occupied it again as tenants from 2005 to 2014, perhaps purchasing it near the latter part of that period. No current deed of theirs was produced at any time.

With Serafine's north boundary marked in front with railroad ties along the driveway by 1978, and marked in the backyard by the north fence since before 1977, no one ever complained.

Edward and Susan Schrump and Alexander and Ashley Blunt owned or occupied the property on the other side of Serafine's north boundary for 17 years from 1994 until 2011 when, without Serafine's consent, they paid Viking to tear out her north boundary fence. Serafine testified:

> Q. (BY MR. BASS)
> [] *At any time up to this good day, do you know, has anyone ever filed a lawsuit contesting your boundaries up to that fence?*
> A. Never, no.

9.RR:122-23.

Both Blunts confirmed they knew Serafine did not want the original fence torn out. 11.RR:166-167, 170 (Ashley Blunt); 11.RR:97 (Alexander Blunt: "She was against it.")

In a handwritten note to Serafine in mid-2008, Alexander Blunt described the fence on Serafine's north boundary as the fence "on our property line."

19

Blunt Ex. 5, 18.RR:155-56.  Ashley Blunt also testified the fence was "on our property line."  11.RR:192.  This was a boundary fence.

About the same time, Serafine in a handwritten note informed the Blunts (then tenants), "I'm not planning to have the existing fence between our yards removed."  10.RR:52 .

In June, 2008—fully three and a half years *before* tearing out the boundary fence—the Schrumps and Blunts all signed a letter and sent it to Serafine, showing they knew Serafine was making an adverse possession claim to the north boundary.  Blunt Ex.8, 18.RR:161 (letter dated 6/23/2008).

***All fencing and railroad ties on Serafine's Lots 5 and 6 remained undisturbed for more than 30 years.***

***Serafine's tenants used Lots 5 and 6 as residential property, without moving the fence or railroad ties.***

It is undisputed that all the fencing (since 1977)  and the railroad ties (since at least Nov. 23, 1978) remained in exactly their original place until the Viking tear-out of 2011.

Serafine and her partner lived at the 4011 house on Lots 5 and 6  from 1977 until 1981.  When they separated and moved out in 1981, Serafine began leasing it to tenants.  She leased it until 2002 when she began a historic restoration and when it was finished in 2004 she moved back in.  *See infra.*

20

Serafine testified:

> (Cross-examination by Mr. Peters, Blunts' counsel)
> *Q. So you left in 1981, and then you started renting out the property, correct?*
> A. That's correct.
>
> *Q. And your tenants used the property, correct?*
> A. Yes.

10.RR:44

Serafine testified she was aware of how the tenants used the property.

10.RR:44-45. In all cross-examinations by the Blunts, Lockhart, and Viking, there was not even a suggestion that at any time Lots 5 and 6 were not used, or that any tenant did not use Lots 5 and 6, or that any tenant used Lots 5 and 6 in any unusual way, used it for grazing animals, used it other than an ordinary resident would, or changed anything in the yard or driveway that changed the north boundary as it had been marked by the fence and railroad ties.

Ashley Blunt testified:

> (By Mr. Peters, her counsel)
> *Q. Okay....she [Serafine] rented out the property. Did you ever know any of her tenants?*
> A. I knew most of her tenants. Actually I think all of them when I lived there, we were always friends.
>
> *Q. Okay. And did you ever have occasion to go inside the house several times?*
> A. Yes, I went in there and -- when two women lived there that

were roommates, my brother dated one of them, we would have parties, go over there and hang out. I went over there when a neighbor I know lived over there, I would baby-sit his daughter over there, so I was over there on many occasions.

11.RR:177.

Serafine's last tenant "vacated" in 2002. 10.RR:45. She then began a two-year historic restoration of the house, from 2002 to 2004, and was finally able to move back in, in 2004. 9.RR:118, 10.RR:163-64, 10.RR:45 (Serafine).

Serafine's last tenant Nils Juulhansen was called by the Blunts. Juulhansen and his family lived on Serafine's property until they moved next door to 4013. 11.RR:256 (Juulhansen). Juulhansen did not testify that he or anyone else, including Serafine's property manager, made any changes in the fencing or railroad ties or that he changed the use of the yard or driveway.

Serafine had a property manager who managed 4011. 10.RR.173. He recommended to Serafine that she replace the foundation. 10.RR.173. When Juulhansen moved next door in 2002, Serafine began the restoration, which lasted to 2004. 10.RR:45. Serafine started with the foundation. Serafine hired engineer Floyd Goodrich for this purpose. 10.RR:173. Goodrich made inspections over some period of time. 10.RR:174. He then made his first of

22

three reports to Serafine on December 5, 2002.    The Blunts offered Goodrich's firm's reports as "Business Records of Aztec Associates." 18.RR:177-190. The reports were admitted for specified purposes. 10.RR:104. Goodrich and Aztec specified, supervised, and later certified repair work for Serafine over more than a four-month period, ending in a report re-issued on March 19, 2003. 18.RR:188. None of Goodrich's recommendations called for removing the railroad ties or any fencing. *Id.*   Serafine followed all his recommendations.  10.RR:174.

During Serafine's remodeling from 2002 to 2004, Sam Archer was living across the street from Serafine's property. 11.RR:290 (Archer). He testified that he saw the remodeling in progress. He saw the workers.  11.RR:291. Archer is a friend of Alexander Blunt and testified for the Blunts. 11.RR:292. He lived across the street from Serafine's property continuously from 1999 to 2010. 11.RR:290 (Archer). Archer did not testify to anything unusual at Serafine's property, to any vacancies, to any changes in the use of the yard or driveway, or to changes in the marking of the north boundary by Serafine's fence and railroad ties. The workers he saw were remodeling inside of 4011. 11.RR:291.

**B.     No relevant evidence contradicted these facts.**

Defendants presented only irrelevancies.

To the extent they might have presented contradictory evidence, none existed.

In addition to Serafine's testimony, six witnesses were called by the Blunts who were well familiar with how Serafine's property was used during the time it was leased to her tenants: Edward Schrump and Susan Schrump (owned 4013 next door to Serafine's Lots 5 and 6 and visitied 4013 frequently, *see supra*); Sam Arhcer (lived across the street from Serafine's property from 1999 to 2010, *supra*); Nils Juulhansen (lived at Serafine's property until 2002, then moved next door to 4013, *supra*); Ashley Blunt (lived at 4013 next door to Serafine's property in the 1990's, knew the residents of 4011 well and visited them frequently, later lived at 4013 from 2005 until 2014); and Alexander Blunt (lived at 4013 in the 1990's and again from 2005 to 2014). No one ever testified that Serafine's Lots 5 and 6 were not used at all times in an ordinary residential manner, or testified that Serafine's Lots 5 and 6 were altered in any way to disrupt the fencing and railroad ties on the north boundary, until Viking tore out the north boundary fence in 2011.

## C. Grant's Occupied Line Survey is accurate.

James Grant, LPLS was Serafine's expert surveyor. He testified that Hyde Park was platted in 1891 without artificial monuments. 9.RR:66. In the case of Hyde Park, "there is not a note on the plat." *Ibid.* "So there is no explanation at all on the face of that subdivision plat that guides a ...modern day surveyor...." 9.RR:67. Blunts' surveyor Holt Carson confirmed that in Hyde Park original monuments "just do not exist." 12.RR:15.

Grant reconstructed Serafine's original north boundary in an "occupied line survey"—a map of "visible above ground improvements along or near a line between two landowners. It could be a fence. It could be a rock wall. It could even be a curve." 9.RR:67. The map is at Viking Ex. 48. 18.RR:284-85. The second page states metes and bounds describing Serafine's claim. *Ibid.*[2]

Grant's notes on the map show the points he used to reconstruct Serafine's original north boundary:

- "Calculated point on north edge of railroad ties"

- "Occupied Line follows north edge of railroad ties"

---

[2] The same map, clarifying the right-hand portion expanded to show detail is at 18.RR:286(Viking Ex. 53).

- "Middle of closed latch as gate used to close"

- "Old chain link fence/occupied line, reconstructed from records and photograph"

- "Calculated corner"

This Court in *Nabours v. Whiteley*, 466 S.W.2d 62 (Tex.Civ.App.—Austin 1971), held that

> An axiom in boundary suits is that the footsteps of the original surveyor must be followed, if ascertainable in locating the line. If, however, there is insufficient evidence to establish the line followed by the original surveyor, ***then ancient boundaries may be proved by evidence of common reputation.*** (citing *Stover v. Gilbert*, 247 S.W. 841 (Tex. 1923).

466 S.W.2d at 64(emphasis added).

Grant did exactly what *Nabours*, discussed *supra*, prescribes. He laid out an Occupied Line Survey using the gate latch and other "ancient" "evidence of common reputation." *Nabours*, 466 S.W.2d at 84.

**D.    Serafine met the 5, 10, and 25-year statutes for limitations title.**

This case is on all fours with the fence cases, *Brohlin v. McMinn*, 341 S.W.2d 420 (Tex. 1960) and *Nabours v. Whiteley*, 466 S.W.2d 62 (Tex. App.—Austin 1971).

With the railroad ties in place for 37 years (1978 to trial time) and the original matching fence in place for more than 33 years (before 1977 to tear-

26

out in 2011) , and with Serafine's recorded deed and tax payments, Serafine had met the five-year statute of limitations at the latest by November 23, 1983 (from 1978 to 1983). ***This was 28 years before Viking tore out the north boundary fence in December, 2011.*** Thereafter, Serafine met the five-year statute again, 46 times, considering every five-year time period beginning in 1979 (79 to 84), beginnign in 1980 (80 to 85), and beginning in 1981 (81 to 86), and so on.

Serafine met the ten-year statute of limitations—even if she had had no deed and had not paid taxes (which she did)—***at the latest*** by November 23, 1988 (from 1978 to 1988). ***This was fully 23 years before Viking tore out the fence in December 2011. It was six years before the Schrumps even bought the adjacent land in 1994.*** Serafine met the ten-year statute 24 more times, with each ten-year period ending on November 23rd of 1989, 1990, 1991, and so on, up to November 23rd of 2011—a few weeks before Viking tore out the fence in December 2011.

As to the 25-year statute, Serafine had met this by November 23, 2003 (from 1978 to 2003). ***That is more than eight years before the tear-out.*** Serafine met the 25-year statute again in 2004, 2005, 2006, et seq., calculating each of those years as concluding a 25-year span of use, enjoyment, and

occupation.

The above are conservative calculations beginning with the latest possible date of Serafine's placing the railroad ties by Thanksgiving of 1978, not counting her purchase and immediate use beginning on August 11, 1977.

With Serafine's recorded deed, she may have met even the three-year statute of limitations in any three-year period.

Because Serafine offered evidence that meets the elements of adverse possession, and that evidence was uncontradicted at trial, the Court should reverse and render judgment in her favor on legal sufficiency. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241-42 (Tex. 2001). This would restore both properties to the state they were in for over at least three decades. Alternatively, because the verdict goes against the great weight and preponderance of the evidence discussed above, the court should reverse and remand for a new trial on factual-sufficiency grounds. *Id.* at 242.

**II.** **The court erred in expunging the notice of *lis pendens*--- misconstruing Prop. Code §12.0071, defeating appellate jurisdiction over the *res,* and ignoring statutory procedural requirements.**

The question of whether the trial court correctly construed the "probable validity" phrase in Prop. Code §12.0071 is a matter of statutory interpretation. *De novo* review emphasizes the intent of the legislature and plain meaning of the text. *City of Houston v. Bates*, 406 S.W.3d 539, 543-44 (2013).

The trial court expunged the *lis pendens* notice on November 13, 2015. CRSuppVI:14-20 (order). Serafine filed a motion to withdraw or vacate it and sought the hearing required by Prop. Code 12.0071(d). CR:838-851. No hearing was held. The Blunts filed a response. CR:858-61. Serafine sought a ruling on the motion, CR:1032-1036 and objected to the refusal to rule. CR:1037-1039.

**A.** **"Probable validity" means "legally cognizable."**

In its Conclusions of Law the court stated, "Plaintiff failed to establish by a preponderance of the evidence the probable validity of a real property claim in this case." This recites the language of Prop. Code §12.0071. CR:904.

In its Findings of Fact the court found that

• the chain-link fence was "on the property of [the Blunts];"

- the railroad ties "were temporary in nature;"

- the reconstruction method of Serafine's surveyor Grant was "unreliable."

These are *substantive* findings that would lead a trier of fact to render a take-nothing judgment. CR:903. The court thus conflated a "valid claim" with a "successful claim." The term "probable validity" refers to the *claim*, not the outcome. A claim can be valid and the outcome determined by fact-finders, wrong.

Black's Law Dictionary,[3] defines *claim* to include "an interest or remedy *recognized* at law." An earlier edition of Black's[4] shows "valid" having the synonym "legal." Black's, 5th ed. at 803. "Legal" means "[c]ognizable in courts of law." *Id*. at 463. There is nothing about being cognizable that implies a particular claim will succeed under the variable circumstances of a trial.

The inquiry on the "probable validity" of a *claim* should be akin to that of Federal Rule 12(b)(6). That rule emphasizes that a claim should have all the necessary elements; not be comprised of bare conclusions; and is a cause of action recognized by law. A truly *invalid* claim under 12.0071 could be one

---

[3] Black's Law Dictionary, Garner, B., ed., 10th Edition, 2014.

[4] Black's Law Dictionary, Black, H., ed. Fifth Edition (Abridged), 1983.

30

that is moot, defective, does not concern real property, makes statements without laying a claim, or asserts a principle not cognizable to courts as we know them, such as a wish or desire or fanciful assertion.

**B.     The expungement of a valid but rejected claim defeats appellate jurisdiction over the *res*.**

A claim rejected at trial, far from being rendered invalid, is rendered appealable.  The problem with interpreting "probable validity" of a claim as a claim having a likelihood of success—and therefore having no validity if lost at trial—is that it renders null appellate jurisdiction over the real property *res*.  Appellate courts' judgments and remedies would be meaningless, difficult, or expensive if the property has been sold out from under the court's jurisdiction to render relief.  The legislature could not have intended to deprive appellate courts of their jurisdiction to hear meaningful appeals in the real property area.

A *lis pendens* notice remains effective on appeal because a court that has acquired jurisdiction is entitled to proceed to "final exercise" of its jurisdiction. *Texas Water Rights Commission v. Crow Iron Works*, 582 S.W.2d 768, 771 (Tex. 1979).

**C.     The trial court  ignored statutory procedure.**

There was also a procedural defect in how the court expunged the *lis pendens.*

31

Property Code subsection 12.0071(d) provides:

> Notice of a motion to expunge under Subsection (a) must be served on each affected party on or before the 20th day before the date of the hearing on the motion.

Here, there was no motion, no notice of motion, no service of any kind, no hearing, and no 20-day notice of a hearing. Section 12.0071 makes no provision for a *sua sponte* order.[5]

A trial court "err[s] in expunging [a] lis pendens sua sponte and without proper notice to each affected party," and "if the trial court erred in expunging the...lis pendens, it remains in effect." *In re Estate of Francisco Julio Lerma Sanchez*, No. 04-11-00332-CV at. 6-7 (Tex. App.—San Antonio April 18, 2012).

This Court should vacate the expungement and clarify it is void retroactively, in case there has already been a transfer.

---

[5] Some months later, after appeal was filed, Serafine filed a lis pendens notice of this appeal.

### III. Declaring the Carson survey as the boundary was error.

The Carson survey, declared as the boundary, was not supported by the court's findings and conclusions, and was against the great weight and preponderance of the evidence, which conclusively established that the Carson survey was error.

Review of this issue should be limited to the court's findings of fact and conclusions of law. CR:901-904.

After the close of evidence, before charging the jury, the parties reserved to the court a decision on the boundary, if the jury did not find adverse possession. There was an expectation and some assurance from the court that if this were necessary the court would hold a hearing to determine it. 12.RR:67.

The trial court, without a hearing, declared the Carson survey definitive. CRSuppIII:122 (final judgment).

The court's findings do not support Carson's survey because they are conclusory statements that the methods of plaintiff's surveyor Grant were "unreliable," and that Carson's methods were "detailed" and "specific," while the court concluded that Carson relied "on the recorded deed" of the Blunts. CR:901-904¶¶10-11. There was no evidence Carson relied on any recorded

33

deed of the Blunts, and no evidence that, if he had, there had been no changes in the intervening three years since his 2012 survey.

All of the remaining findings, while unrelated to the veracity of Carson's survey, are also in contradiction of Texas adverse possession doctrine. For example the court found that the old fence was "on" the Blunts' property. This is in favor, not against, Serafine's adverse possession. Equally, that Serafine's surveyor Grant used lines of occupation, is not a ground that supports Carson's survey. Grant's doing so when the "priority of calls" fails is supported by this Court's decision in *Nabours. See supra.* That Serafine allegedly "retracted" her claims is both false and irrelevant to how to survey the boundary.

A.    **The Carson survey is untenable under any theory.**

Several exhibits of photographs of the 2012 construction area were admitted at trial. These showed where Carson had placed his stake marking the boundary, at the place where his orange line (the right-hand one, of two lines) marked the boundary separating the Serafine and Blunt properties.

Alexander Blunt testified to several of these exhibits.

*Q. (BY MR. PETERS [Blunts' counsel])*
*And Mr. Blunt, if we would look at -- if we could look at Blunts'*
*Exhibit 56, what does that picture depict, Mr. Blunt?*

A. That is -- that stake with the orange flag on it shows the property boundary as determined by Holt Carson.

11.RR:121.

> *Q. (BY MR. PETERS)*
> *And if we could look at Blunts' Exhibit 62, and there's that stake again, right?*
> A. Yes, sir.
>
> *Q. And if we scroll down a little, why are these lines painted here?*
> A. Those were sprayed by the surveyor to demarcate the boundary line.

11.RR:123-24.

One such Blunt exhibit is below, Blunts' Ex. 79, 18.RR:233, which was

admitted at 11.RR:135.



Blunts' Ex. 79, 18.RR:233.

Below is another Blunt exhibit, Blunts' Ex. 56, 18.RR:213, admitted and testified to by Blunt at 11.RR:121, as quoted above. The stake is shown in the distance.

36



Blunts' Ex. 56, 18.RR:213

Carson's line plainly cuts through Serafine's entry to her back yard.

Serafine's gate is still standing there. The gate had closed against that entry space for the previous 35 years, the photo being taken during the 2012 construction (1977 to 2012 is 35 years).

If Carson's survey were correct, every time the gate closed, it would close over part of Lot 4, the Blunts' lot. If Carson's survey were correct, every time a person walked into Serafine's back yard, they would walk onto Lot 4, the Blunts' lot. If Carson's line were correct, people should enter Serafine's yard walking side-ways to fit through, if they did not wish to trespass. *Indeed, shortly after this Court's mandate, which lifted the interlocutory stay, the Blunts filed a counterclaim against Serafine alleging that "on many occasions" Serafine trespassed onto their property.* CR: 419-21 (9/11/2015).

Carson's line is untenable. There is no set of facts sufficient to support it. It is undisputed that Serafine's gate and entry to her yard had been undisturbed from 1977 until Viking's tear-out of the gate-post and fence in 2011, a few months before these photos. It is undisputed the gate itself remains today.

Viewed closely, Carson's survey map shows that he ignored pre-existing

monuments marking three corners of the Blunt's property. These three are notated "iron rod not used."

## B. The trial court erred in finding Serafine's surveyor Grant's methods "unreliable."

Holt Carson testified that in locating the footsteps of the original surveyor, in Hyde Park "there is no certainty as far as finding an original monument. They just do not exist." 12.RR:15. Likewise Serafine's surveyor James Grant testified that the 1891 plat was laid out without original monuments notated. 9.RR:66. The trial court's finding of fact that Grant's method was "unreliable" was error because his method was exactly that prescribed in *Nabours* when original monuments do not exist.

## C. The court erred by not holding a hearing on the boundary.

The Court issued Findings of Fact and Conclusions of Law explaining its decision to declare the Carson survey definitive. CR:901-904. The findings state that "Holt Carson, surveyor and expert witness for [the Blunts] drew his survey...*by relying on the recorded deed of the Property in the Travis County records.*" CR:903(emphasis added). There was no evidence of this. Even if there were, there was no evidence such reliance was confirmed between the date of the survey, Jan. 18, 2012, and the time the court entered its order on Nov. 13, 2015.

39

The court was not entitled to find controlling facts without a hearing. About a week after trial Serafine moved for a hearing, suggesting facts on which the court should ask the parties to submit evidence. CR:569-573 (motion of 10/23/2015). At the Nov. 10, 2015 hearing, formally noticed for attorney's fees, the court announced it had already decided the boundary according to the Holt Carson survey. 13.RR:70,78. The court allowed Serafine "five minutes" to argue, 13.RR:71, but erroneously held that all the evidence necessary for its decision had been presented at trial. 13.RR:70.

**IV.** **The court erred in granting the MSJs of Viking Ltd. and Viking GP on (a) negligent training and supervision and (b) nuisance.**

The claims should be remanded for trial. Viking's motion is at CR:56-79; Serafine's opposition is at CR:82-123. The order is at CR:288-290.

**A.** **The court erred in granting summary judgment on negligent hiring, training, and supervision ("negligent supervision").**

    **1.** **The court erred in conflating negligent supervision and ordinary negligence.**

Viking relied on *Rosell v. Central West Motor Stages, Inc.*, 89 S.W.3d 643 (Tex.App.—Dallas 2002, pet. denied). CR:64. Serafine had pled gross negligence. CR:32-50¶¶111-114 (petition). Viking's argument was: (1) "Plaintiff's gross negligence claim fails as a matter of law, therefore Plaintiff's remaining claims all sound in ordinary negligence making Plaintiff's negligent entrustment (sic) claim immaterial"; and (2) Viking "stipulated that Defendants accept the liability of [its] independent contractors," as *Rosell* would require. CR:64-65. This is error because *Rosell* allows the claim not when gross negligence is <u>proved</u> but when it is <u>alleged</u>. Second, *Rosell* is arguably wrongly decided because negligent supervision is an inherently different claim from ordinary negligence.

Serafine's claims survived summary judgment on gross negligence

41

because it is undisputed Viking came onto Serafine's property, destroyed some of it, left it behind, and ***does not admit to any mistake.*** Second, Viking's "stipulation" evidence was its interrogatory response, improper as summary judgment evidence. *Yates v. Fisher*, 988 S.W.2d 730, 731 (Tex. 1998). CR:288-290 (ruling on objection), CR:124-128¶3 (objection). Moreover, Viking's live answer denied all liability.

## 2. Serafine raised a fact issue on each element.

"The elements of a claim for negligent supervision...are (1) the defendant owed a legal duty; (2) the defendant breached it: (3) the plaintiff suffered damages; and (4) the damages were proximately caused by the breach." *Latimer v. Memorial Hermann Hospital Sys.*, No. 14-09-00925-CV (Tex.App.—Houston [14th Dist.] Jan. 20, 2011). This applies to independent contractors. *King v. Associates Commercial Corp.*, 744 S.W.2d 209, 211 (Tex.App.—Texarkana 1987).

Viking raised no objection to any part of Serafine's evidence.

***Duty.*** A master has a duty to the ***public.*** *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127,137 (Tex. App.—Amarillo 1997). Viking had a duty to not interfere with Serafine's as well as others people's property rights, as Serafine pled. CR:32-50 (petition).

Clanin knew in his first contact with Blunt that he had a dispute with Serafine about the fence.  CR:107.  Clanin passed Serafine's door on every site visit without stopping to inquire.  CR:99.  During construction Perez told Clanin there was a "problem," but Clanin told Perez, "stay away from it."  CR:107-108(Perez).  Clanin and Perez both did "final inspections" and noticed or should have noticed the damage, but did nothing.  CR:101.

***Breach of duty***.  Viking provides no training or supervision to ensure their employees have an understanding of other people's property rights.

Salvador Chavarria runs Viking and has weekly meetings with the"sales dealers," Jimmy Clanin's position. Chavarria testified, "I've owned the company for eight years and that's close to 400 meetings."  CR:205. He testified at deposition:

> *Q· ··Have you had any meetings recently about what*
> *the standards are for building a fence so that it doesn't*
> *approach-- encroach on adjoining land?*
> A We have not.
>
> *Q· ··I was asking if you had recently.··Have you ever*
> *had such a meeting in your knowledge involving*
> *Viking's standards for building a fence so that it does*
> *not encroach on adjoining land?*
> [ ]
> A [] I'm sure at some point we've discussed property
> line situations. We are not a survey company.
> Our contract with our customers defines that we have

no responsibility to property line disputes. **And, basically, we build fences where people tell us to build fences.**

CR:111(emphasis added).

Viking's "Fence Proposal" to its customers states, "Viking is relieved of all liability related to fence location and property lines."  CR:197.

Chavarria testified that the proposals—"Some have drawings of where the fence goes, some don't. This one doesn't."  CR:204.

> *Q:  Okay. When they don't have a drawing attached, how does the fence erector know where the fence is supposed to go?*
> A:  Based on discussions with the customer.
>
> *Q:  Is that all?*
> A:  For the most part.

CR:204 (Chavarria deposition).

Mr. Clanin testified at deposition:

> Q· [] ·*How would you know it was-- it was on the property line?*
> [ ]
> A Okay. That's not really for me to decide. I'm not a surveyor.
> []
> *Q. Does the customer normally delineate the line?*
> A Yes.
> *Q· ··How do they do it?*
> A Based on existing landmarks or us going and standing at the points.
> Q· .. <u>**standing at a point and then you just remember**</u>

44

**that point?**
A Well, I might have-- I might have marked it. [ ]

CR:110; CR:219-220.

Clanin testified that when the new fence went up, there were no lines painted on the ground.  CR:110.  The actual fence erector or "crew," Mr. Perez, also confirmed there was nothing to mark any line.  No paint, string, or "little flags."  CR:110; CR:238.  Perez didn't want to be pressed further:

> "Jimmy [Clanin], he told me where the fence-- where the fence goes, and that's it."

CR:109; CR:238.

Mr. Clanin was asked: "Do your crews have any training or certification from the AFA [American Fence Association] that you know of?"  He answered, "I don't know the answer to that."  CR:115.

### *Injury proximately caused by the breach*

It is undisputed that without Serafine's consent Viking tore out the original 50-foot fence and installed another one.   It is undisputed that before Viking's work the Pecan tree was on Serafine's property, CR:104, and after Viking's work the same tree was mostly on Blunts' property.  CR:105.  Viking moved the effective boundary, immediately depriving Serafine of possession.

The summary judgment evidence included two declarations by Serafine

45

detailing her title by limitations by 1988 and certainly by 2003, up to the original fence that Viking tore out, and running along her driveway marked by railroad ties lined up with the fence and curb cuts.  CR:103 (photo); CR:157-175 ( Serafine verified petition); CR:120-123 (Serafine declaration). Photographs below were presented to the court as evidence without objection.



The original fence was a boundary fence because nothing else separated the two properties.  CR:94.



Viking's replacement jutted into Serafine's yard at the end of her driveway.
CR:95.



Serafine's gate entering her yard (far left) had had for 34 years a matching gate post, which Viking tore out.   CR:98.

Close examination shows the gate's right hinges attach to identical fencing that directly meets Serafine's house.  The same fencing then continues immediately from the other side of Serafine's house.  CR:97.  All of this matched identically the boundary fence that Viking tore out.  Serafine's yard was enclosed on all four sides.



Viking's workers knocked out a panel from Serafine's east fence along the alley, allowing the new fence to intrude more deeply into Serafine's yard. CR:106.

They also bolted Serafine's fence to the new one, without consent.

Wide pools of concrete were embedded into Serafine's soil, CR:102 (SJ photo), and the new fence is cemented into the soil at a depth of 2 feet. CR:225 (Clanin deposition).

**B.    The court erred in granting summary judgment favorable to Viking on Serafine's nuisance claims.**

Serafine's case against Viking was for interference with property rights. Viking's defense is that their customer told Viking to tear out the chain link fence, and the fence was not worth much.

On Viking's theory, the right of property in Texas reduces to this: If a boundary fence already looks old, and someone pays you to rip it out, to leave the matching gate hanging there, and to put a better fence in a different place, it is okay to do it without adjoining landowner's consent.

Mr. Clanin testified:

**Q:  And you would just assume that it would be okay with them?**

A:  The assumption is that the two neighbors have communicated. *That's the assumption.*

CR:108 (emphasis added).

*Defendants do not admit they made a mistake. They adamantly claim the right to destroy property and re-locate boundaries if they are hired to do*

50

*so.*

Viking's pattern and practice—and its claim to a right to continue—is a public nuisance. Most members of the public would be reasonably annoyed and disturbed by coming home and finding their fencing and gate post gone, as was Serafine. This was adequately pled.[6] The Texas Supreme Court has recently decided *Crosstex North Texas Pipeline, L.P. v. Gardiner*, No. 15-0049 (Tex. June 24, 2016). Texas law now defines nuisance as a "legal injury–the interference with the use and enjoyment of property." *Id.* at ¶23. The focus is neither defendant's conduct nor the resulting damage. Rather, the questions is whether there has been "an invasion of a plaintiff's legal rights" *Id.* at ¶22. At least one other supreme court has similarly sought to protect private property rights.[7]

The evidence above was sufficient to raise a fact issue on public and private nuisance. It was sufficient to send to the jury the question of nuisance:

---

[6] Serafine pled:
"A trespass to land is a substantial harm"—not to mention the destruction of property—and people have the right "to know it is safe from unpermitted intrusion." Petition, CR:32-50 at ¶¶95-102.

[7] *Jacque v. Steenberg Homes, Inc.*, 563 N.W.2d 154 (Wis. 1997) faced an equally adamant trespasser. The Wisconsin court reasoned that without serious consequences to intentional interference with property rights, there is simply no right of property.

whether Viking *substantially* interfered with plaintiff's use and enjoyment of residential property by entering upon it, destroying fixtures, tearing out an existing boundary fence, and re-arranging the boundary in a different location. *Crosstex, Id.* at ¶24.

## V. The trial court engaged in prevailing-party fee-shifting unauthorized by any statute, by fashioning an unwarranted $10,000 sanction.

Viking failed in its offer-of-settlement fee-shifting because it failed to file the required declaration. After trial it could not collect anyway because plaintiff had made no recovery. The rule, TRCP 167, allows collection only up the amount of a judgment in plaintiff's favor. The trial court entered sanctions against Serafine to replace Viking's failed fee-shifting. Viking moved for sanctions—openly admitting it did so to replace its offer-of-settlement plea. But the court awarded sanctions on grounds different than what Viking moved—without a hearing, order to show cause, or any evidence *except the exact amount of money Viking was seeking for fee-shifting.*

This violates the "American Rule." *Wein v. Sherman*, No. 03-10-00499-CV (Tex.App.—Austin Aug. 23, 2013).

52

The final judgment of December 3, 2015 ordered that

> ***Defendants (sic) Viking Fence Company, Ltd.*** recover from Plaintiff Mary Louise Serafine the amount of $10,000.00, pursuant to the Court's Order on ***Defendant Viking Fence Company, Ltd.'s*** Motion for Sanctions....

CRSuppIII:94-129,96(emphasis added).

The court sanctioned Serafine under TRCP 13 and CPRC Chapter 10. CRSuppIII:94-129.

The ground was that ten months earlier Serafine had briefly added Salvador Chavarria and Jennifer Chavarria—the members of the LLC that is the general partner of Viking Ltd.—under a veil-piercing theory, after depositions and discovery. *Ibid.* The Chavarrias' MSJ on statute of limitations ground was granted in June, 2015. CRSuppV:128¶7; CR:80-81. ***Thus, there was never a merits decision on the claims against them.***

The Chavarrias did not move for sanctions at any time. Well before trial they were no longer parties.

The sanctions order claims to grant ***Viking's*** motion for sanctions, but the supposed offense was against the ***Chavarrias.*** Viking's motion did not mention the Chavarrias or any grounds stated in the order. CR:574-580 (Viking motion).

Serafine was sanctioned for pleading that the Chavarrias were the alter

53

ego of Viking. But the court sanctioned this supposed offense against the *Chavarrias* by awarding the money *to Viking.* This treats them as one and the same, as Serafine had pled.

The Court calculated the $10,000 amount from combining *fees for the Chavarrias' SOL dismissal* with *fees for Viking's dismissed claims.*

The court specifically sought out this figure at a hearing, from the attorney representing Viking and the Chavarrias:

> THE COURT: And just to clarify, 50 percent related to those causes of action, *which were dismissed by the Court, or those individuals who were removed from the case through summary judgment?*
>
> WITNESS (Mr. Otto): Correct. I would say a fair estimate of that would be 50 percent of the $20,000, would be fair.

13.RR:61-62 (hearing, 11/10/2015).

None of the evidence had anything to do with any sanctionable conduct. Serafine objected at the hearing and was overruled. Even so, it bears repeating that the sanctions actually entered had nothing to do with either Viking's motion or the hearing.

Courts do not have discretion to fashion prevailing-party fee-shifting through sanctions, particularly by awarding fees to one defendant because of

54

supposed offenses against another, never complained of at the time.  The trial court here decided to fee-shift 50% of $20,000 to cover the cost of all the claims dismissed in the June, 2015  MSJs  plus "discovery," *for Viking Ltd., Viking GP, and Salvador and Jennifer Chavarria all together.*

*It bears repeating that Viking was <u>denied</u> summary judgment as to negligence, gross negligence, and conversion.*

There was no evidence the Chavarrias answered any discovery, and they did not.

## A.  The conduct in question was unsanctionable.

It is important to emphasize that (1) no ruling on the merits of Serafine's claims against the individuals was ever made; and (2) the sanctions order misrepresents that Serafine's claims against the Chavarrias caused "drafting and arguing of *two separate* motions for summary judgment" plus "discovery." CR:128 (emphasis added).  The sanction taxes Serafine for all of this.  But the Chavarrias were not movants in *Viking's* MSJ.  CR:288-290 (order, 6/25/2016).  Likewise the order's statement that the Chavarrias had to answer "discovery."  There was simply no evidence they did, and they did not do so.

Below are the trial court's findings as the basis for sanctions:

1.  the statute of limitations had run;

55

2.    "[i]n order to recover ...[Serafine] was required to specifically plead and prove, within the applicable statute of limitations" that two veils needed to be pierced—from Viking Fence Ltd. down to Viking GP, LLC, and from there down to GP's sole shareholders, the Chavarrias;

3.    the petition makes "vague references to a variety of agency, alter ego, and corporate veil theories....";

4.    Serafine failed to allege "any independent duty of care to Plaintiff;"

5.    "[t]he creation of affiliated corporations to limit liability and the hiring of independent contractors is commonplace and a legally approved business practice in Texas;" and

6.    "Plaintiff failed to allege how the use of a corporate fiction was used as a means to evade an existing obligation...."

CRSuppIII:127-128.

Findings at Nos. 2, 3, 4, and 6 are at most pleading flaws to which the Chavarrias could have taken special exceptions or a TRCP 91a motion to dismiss, but did not. Even so, Texas requires only "'fair notice' pleading" in veil-piercing. *Metromedia Restaurant Services, Inc. v. Strayhorn*, 188 S.W.3d 282, 290 (Tex. App.—Austin 2006).

Yet Serafine pled details. Viking defended a fake insurance document before the court that nowhere contained the word "Viking." Viking would not testify to having any assets. Viking insisted until late in the game that everyone was the independent contractor of the level above—a four-level hierarchy. CR:34-35¶¶11-22.

56

Findings Nos. 1, 4, and 5 are debatable legal issues as to which Serafine disagreed with the court in motions and argument. The order does not even find Serafine's positions were objectively frivolous or that subjectively Serafine disbelieved them.

As to Finding No. 1, on the SOL having passed: Serafine urged relation back doctrine and the discovery rule, both established doctrines. CRSuppVII:4-56.

As to Finding No. 4 on failure to allege "Duty of care": This is irrelevant in veil-piercing.

As to Finding No. 5, that Texas approves of Viking's "hiring independent contractors, etc.": This shows how groundless the trial court's sanction was. Not only is "misclassification fraud" widely known. ***But the trial court requested Serafine to produce an MSJ on the issue on four days' notice,*** because the court wished to decide that issue without bringing it to the jury. Serafine's MSJ is at CRSuppVII:57-82. Serafine presented Viking deposition excerpts and IRS, U.S. Department of Labor, and Texas Workforce Commission rules plus the lengthy 2011 "Critical Health" opinion from this Court—authority well supporting Viking's misclassification. That the MSJ was denied is not complained of. CR:287(denial of MSJ). But that a sanction

57

would rest on a court's unrelated, erroneous legal opinion of what Texas "approves" of, is arbitrary.

**B.      The purpose of the sanction was improper---to replace Viking's failed fee-shifting under the offer-of-settlement rule.**

*The Chavarrias never sought fee-shifting, or sanctions.*

The Viking entities pled only the offer-of-settlement rule in TRCP 167 and CPRC Ch.42.    CR:422-425 (Viking answer, 9/11/2015).  But Viking's motion for sanctions openly stated that its purpose was fee-shifting:[8]

> [G]iven the take-nothing judgment, and no judgment to offset, Viking Defendants are not pursuing attorney fees under the Offer of Settlement rule.

CR:578¶19 (Viking motion for sanctions).

The purpose of Viking's sanction motion is an open attempt to evade the legislature's protection of plaintiffs in the offer-of-settlement rule, as Serafine said in her response.   CR: 585-663.   The rule's purpose is to cap fee-shifting in defendant's favor at the amount of a plaintiff's award.  That is to preserve the American rule so that plaintiffs will not be chilled in coming  to court.

To allow evasion of the rule after trial would be exactly that: chilling the

---

[8] Viking's counsel emailed that rationale to the court, but the email was eexcluded  by the Judge's Bill of Exception.  The Judge's Bill explains, Serafine "did not offer the [email]...into evidence at trial."  CRSuppV:448-50(Judge's Bill). But the email was unrelated to trial and written long after it.

plaintiff's coming to court. Serafine's response in the trial court urged that this is also what the legislature sought to discourage in its broad definition of "action" in the Citizen's Participation Act. Later Serafine modified her opposition only to the extent of urging the arguments without invoking the Act's procedural mechanisms. (The court's order mis-states that she withdrew it entirely.) Serafine met the court's deadline for additional briefing. CR:744-833.

## C. Viking's sanctions motion was based on a substantive error of law.

It is the same error embraced by the judge and which Viking argued at trial. The theory is that Serafine purportedly "knew" the new "fence was entirely within the Blunt's (sic) deeded property." CR:574¶11 (Viking sanctions motion). Even assuming the Blunts had proved up any deeded property—which they did not—this would not undo Serafine's adverse possession claim.

***Adverse possession doctrine is intended to do what Serafine claims: it allots ownership by use and occupation that is obvious on the ground for a long time, after which surveys are moot.***

In a sanctions motion, the moving party must overcome the presumption that pleadings are filed in good faith. *Nath v. Tex. Children's Hosp.*, 446

59

S.W.3d 355, 361 (Tex. 2014). Viking's motion did not overcome that presumption because its grounds, in substance, were error. The trial court made the same error and also did not overcome this presumption. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)( trial court has no discretion in determining what the law is or applying the law to the facts).

## D.    The court acted arbitrarily by surmising sanctionable conduct, without finding it.

The order states:

> Based on all of the foregoing*, there can be no other reasonable conclusion* but that Plaintiff's allegations against Salvador Chavarria and Jennifer Chavarria were made: (1) in bad faith; (2) with full-knowledge that her claims against the individual LLC members were groundless; and (3) for the purpose of harassment.

CR:128(emphasis added).

This order concedes surmise. It misleadingly states that on November 10, 2015 a hearing was held on Viking's motion. But at that hearing, *no evidence whatsoever was taken on any matter contained in the order, <u>except the amount of Viking's fees</u>.* The sanctions order rests on concepts concerning "alter ego" and "independent contractor." These words do not even occur in Viking's sanctions motion, CR:574-579, or in the hearing transcript. RR,

60

Vol.13.  There was no evidence of "bad faith" or improper conduct or motive on Serafine's part.

The November 10th hearing was not noticed for sanctions.  13.RR:48-55(colloquy, Serafine's objection).  The only notice of hearing was that of October 22, 2015,  CRSuppV:766, when Viking's only live request was its offer-of settlement plea.  Its sanctions motion was filed two weeks after the notice.

The standard for TRCP 13 is that it should be used only "in those egregious situations where the worst of the bar" acts outside "guiding principles of the law." *Tarrant Cnty. v. Chancey*, 942 S.W.2d 151, 154-55 (Tex.App.—Fort Worth 1997, no writ)(internal quotations omitted).  The record does not support that here.

## VI.    The trial court erred in awarding Serafine $0 in fees and sanctions under the Citizen's Participation Act, or alternative law.

Review of this issue should be limited to the court's findings of fact and conclusions of law.  CR:901-904.

Following this Court's opinion in *Serafine v. Blunt*, 466 S.W.3d 352 (Tex. App.—Austin 2015, no pet.), Serafine filed a motion seeking damages and sanctions under CPRC §27.009.  CR:291-332.  Subsequently, depositions disclosed that the Blunts' interference counterclaim based on threats and

harassment was groundless. Still, even after depositions, Alexander Blunt continued to file false affidavits swearing to "personal knowledge" that Serafine "continually harassed" and "stalked" Lockhart's employees "to the point [they] would no longer continue work" and Blunt "had to settle for a substandard solution."[9] CR:386-399(Blunt affidavit filed on 8/28/2015 at CR:391).

Serafine sought sanctions for this false testimony at the hearing on Sept. 25, 2015 on her Chapter 27 award, and then in several filings. CR:719-739(supplement to motion under Chapter 27); CR870-900(motion to modify judgment or for new trial); CR905-939 (request for additional findings of fact and conclusions of law). She also moved that sanctions should be awarded under TRCP 13. *Ibid.*

The final judgment made no award to Serafine of either fees or sanctions

---

[9] Yet an email suggests Blunt thought the system worked perfectly as early as July 16, 2012. CR:386-399 (Blunts' Exhibit 60).

The Blunts answered an interrogatory asking who received threats from Serafine and when:
> RESPONSE: Objection, this request is vague, compound, ambiguious (sic), and overbroad. Further, the phrase "you contend are relevant to this lawsuit" calls for a legal conclusion.

CRSuppEx.: 6.

under the TCPA. CRSuppIII:94-129¶¶14-15. In the same papers Serafine requested the same relief under TRCP 13 which was also denied.

## A.    The court was required to award Serafine's fees under *Sullivan*.

Under CPRC §27.009(a)(1), attorney's fees that are reasonable must be awarded, not merely a discretionary amount that is "equitable and just." *Sullivan v. Abraham*, 488 S.W.3d 294,300 (Tex. 2016).

## B.    The trial court was required to award sanctions.

The Supreme Court has not analyzed the sanctions provision of section 27.009(a)(2).    However, it would be anomalous to interpret "shall" as mandatory when applied to subsection (a)(1), but discretionary when applied to (a)(2). Section (a)(2) presumes a need to deter. The legislature could have added "if necessary" or similar terms, but did not do so.

The Court should remand for an award of sanctions sufficient to deter. The factual predicate is two-fold: (1) as a "mixed claim" where the severed or residual portion was later dismissed on summary judgment—in this case *a no-evidence summary judgment,* CR:511—relief should be awarded for both parts of the severed "mixed claim"; and (2) where false testimony undergirded the severed or residual portion, relief should be awarded for both parts of the severed "mixed claim."

**1. Fees and sanctions should have been awarded because the severed portion of the "mixed claim" had no evidence.**

This court in *Neyland v. Thompson*, No. 03-13-00643-CV (Tex. App.—Austin Apr. 7, 2015) and in the instant case was faced with a "mixed claim" SLAPP. A mixed claim involves "combining allegations of protected and non-protected activity under the label of one." *Salma v. Capon*, 161 Cal.App.4th 1275, 1287 (2008).

The Texas Supreme Court has not addressed the issue of whether—as California jurisprudence has put it—"the purposes of the [anti-]SLAPP statute" are frustrated when such pleading is used. *Salma v. Capon*, 161 Cal.App.4th 1275, 1287 (2008).

Plaintiff moved by oral motion in the trial court that additional fees and sanctions should be awarded —thus re-combining the two parts of the interference counterclaim—because she was successful on a no-evidence MSJ in defeating the residual portion. 13.RR:83-84. The trial court rejected this. Serafine moved the same in her motion to modify or for new trial, CR870-900, which was overruled by operation of law.

This Court should hold that when the severed portion of a mixed claim goes forward, and it is ultimately dismissed on summary judgment *on no-evidence grounds*, then that portion should be re-combined with the dismissed,

First Amendment violations, for purposes of Chapter 27 relief. If "camouflage" claims can be added to SLAPPs (a misnomer), the purpose of the statute is defeated.

**2.  Sanctions were warranted on the SLAPP claims on traditional grounds—false testimony and a subsequent frivolous counterclaim.**

Blunt's repeated filing of sworn affidavits with the same false testimony should have been sanctioned. *See Metzger v. Sebek*, 892 S.W.2d 20, 52-53 (Tex. App.—Houston 1994)(lying in affidavit claiming to have personal knowledge, when there is none, is sanctionable under TCRP 13 exists, but million dollar sanction for one affidavit is too much).

At the hearing on Serafine's motion for Chapter 27 relief, the court terminated plaintiff's counsel Mr. Bass' examination of Alexander Blunt. 7.RR:12-19. Mr. Bass intended to show that the residual part of the tortious interference claim was groundless, because depositions failed to turn up a single instance of threat that caused Lockhart to stop work. 7.RR:12-19.

The court would not let Mr. Bass proceed because (1) Mr. Blunt was not a corporation; and (2) the "likelihood" of similar future filings by the Blunts could not be shown, thus sanctions to deter would not be necessary. 7.RR:13-14. Mr. Bass summarized after lengthy colloquy:

65

MR. BASS: I understand. And I guess for the record, our position is evidence that this case was brought for the sole purpose of shutting down the plaintiff's lawsuit, and there was really no basis in fact for those counterclaims would be that's --
THE COURT: Sanctionable. That's your position....

7.RR:18

Nothing in Chapter 27 limits the (a)(2) sanctions provision to corporations. To the extent the court conceived Chapter 27 to be limited to corporate attempts to quell public speech, the Supreme Court has rejected this in *Lippincott v. Whisenhunt*, 462 S.W.3d 507,508 (Tex. 2015)(reversing Court of Appeals because TCPA is not limited in scope to only communications in "public form").

The court's findings and conclusions are non-specific, except for the statement that Serafine "retracted" any claim she might have had, but sued anyway. CR:903.

Even if this were true, which it is not, it is irrelevant to whether the Blunts' counterclaims are groundless. The court was required to apply Chapter 27 as it is written. Even assuming the term "justice and equity" applied to the fee determination —which it does not—"justice and equity" never allows judges to take their own free-floating impressions and carry them to entirely different claims, then somehow balance them against each other. This is a recipe for an

66

unpredictable, result-oriented judiciary.

The next day after this Court's mandate issued on Sept. 10, 2015, the Blunts filed a new counterclaim containing only three sentences, no facts, and the allegation that Serafine had trespassed onto their property on "many occasions." CR:419-421. The trial court apparently did not take account of this bogus claim, although it was brought to the court's attention. CR:498-503. The court dismissed the claim *on a no-evidence MSJ as to which the Blunts did not even bother to file a response.* The court minimized the seriousness of this frivolous filing, however, by concluding it was a only a "mirror image" claim that plaintiff should have expected and abided. RRSupp:76.

Because plaintiff was not permitted to develop the evidence of Blunt's false testimony and the impact of the subsequent frivolous trespass filing, the Court should reverse and remand for further proceedings.

**C. In addition, the Court should render judgment in the amount of $53,525 in attorney's fees to Serafine.**

At a minimum, Serafine should be awarded $38,325 for Mr. Bass' attorney's fees, 7.RR:67, and $15,200 for Mr. Hargrove's attorney's fees ($19,000 reduced by 20%). 7.RR:42. Serafine also requested fees for her own work, which should be remanded. *Beckstrom v. Gilmore*, 886 S.W.2d 845, 847 (Tex. App.—Eastland 1994)(granting statutory award to prevailing attorney,

67

analogizing self-represented attorney to in-house counsel representing business entity).

## VIIa. Errors in the trial court require a new trial.

First, "case resolution [cannot be condoned] where one side has been denied all opportunity to offer rebuttal." *Beard Family Partnership v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839, 851 (Tex. App.—Austin 2003)(Puryear, J. dissenting in part). Here, the trial court denied all rebuttal and held that plaintiff should have divined defendants' defense, then put into her case in chief her responses to whatever their defense was going to be. *See infra.*

Second, eliminating virtually all of plaintiff's exhibits as an evidentiary sanction four days before trial was too harsh.

Third, Alexander Blunt testified over objection that after a "mediation attempt" he offered to just give Serafine the land she claimed, but she continued to litigate anyway. Aside from violating principles of evidence, *there was never a mediation or settlement offer.*

Finally, loss of lateral support should have gone to the jury because it was fully pled and there was evidence to support it. The court erred as a matter of law in believing defense counsel's assertions that no such cause of

action exists in Texas.  The judge denied the lateral support instruction and erroneously held that loss of lateral support "fall[s] under negligence." 11.RR:80.  This deprived plaintiff of a major claim since the start of the case.

## A.    Plaintiff was denied rebuttal.

Defendants rested.  This colloquy followed:

MR. BASS: We have some rebuttal we'd like to offer.
THE COURT: Okay. And what exactly is the rebuttal?

MR. BASS: I'm sorry?
THE COURT: Are you planning to call another witness?

MR. BASS: Yes, Ms. Serafine in rebuttal.
THE COURT: Okay. Any objection?

MR. OTTO: [] I object -- I thought we took care of that by allowing additional questioning and the second taking of the stand by Ms. Serafine earlier in the trial. So it seems duplicitous, cumulative and repetitive.
MR. PETERS: That's what I thought, Your Honor. That's...why I didn't save any for rebuttal [].

THE COURT: That was my understanding as well. For what purpose are you seeking --
MR. BASS: To rebut some of the matters that were brought up by witnesses of the defendants that were not addressed in the plaintiff's case in chief.


12.RR:32-33.

To the contrary, there had been no prior ruling that Serafine, having been called to the stand to answer a couple of left-over questions in her case in

chief, was thereby providing rebuttal to the defense case. The defense case had not even been put on yet. Earlier, Viking's counsel had advised the judge that recalling the plaintiff in her case in chief was the same as rebuttal. Plaintiff's counsel Mr. Bass countered that it would not be rebuttal. 11.RR:55-57. The court adopted Viking's view. 12.RR:32-33.

As an additional ground, the court reasoned that because Nils Juulhansen's testimony about dilapidation at Serafine's house was *limited to 2002*, a full decade before Lockhart's 2012 construction, Serafine's own testimony *about what she did later* was beyond the scope. The court explained this in the Judge's Bill of Exception: "Serafine requested to offer rebuttal testimony that she made repairs to and/or remodeled portions of her home in 2004 and 2005,

> in attempt to rebut the testimony of Nils Hanson (sic) that her home was dilapidated. The Court exercised its discretion to exclude this evidence because it was *beyond the scope of proper rebuttal testimony.*"

CRSuppV:448 (emphasis added).

The court also reasoned that if disclosure had been made of a witness' name and phone number—again, that of Nils Juulhansen—then plaintiff should have anticipated what Nils' testimony would be and included it in her case in chief. The court asked plaintiff's counsel Mr. Bass, "Are you suggesting that

70

they weren't disclosed to you during the discovery process so you were not aware that it was going to be presented at trial?" 12.RR:33.   Colloquy concluded:

> MR. BASS: But as I understand, the Court will not permit us to discuss and show photographs of remodeling that was done after 2002.
>
> THE COURT: No, because that would go outside the scope of simply rebutting what was presented during their case, *which was not anticipated previously.*

12.RR:40 (emphasis added).

Rebuttal is "contradiction of an adverse party's evidence." [10]   If the adverse evidence has not been put on yet, there can be no meaningful rebuttal.

This is a ruling that requires plaintiff to be clairvoyant, assumes that a deposition would be effective in uncovering what the witness will say at trial when the adverse lawyer is asking the questions, and thus denies plaintiff the opportunity to rebut false evidence and impressions in defendants' case in chief.

*Harm analysis*

The Blunts had put on Nils Juulhandsen, who testified to all manner of problems in Serafine's house *when he lived there ten years before Lockhart's*

---

[10] Black's Law Dictionary, 10th ed., Garner, B., ed. (2004).

***construction.*** In Serafine's house, he testified, you couldn't even take a shower and wash the dishes at the same time. 11.RR:156. In fact, he testified, "that's why we moved...next door." 11.RR:156. Serafine's house had the "smell of gas." There were cracks and "slopes" inside and out. *Ibid.*

This evidence was central, probably resulting in an improper verdict, because it portrayed that Serafine's house was always falling apart, she perhaps caused it herself, and this was a bogus lawsuit. Serafine could have testified on rebuttal—but it would be largely irrelevant to her case in chief—that Serafine paid a property manager who would have taken care of Nils' complaints. She would have showed photos of damage that occurred only since the 2012 construction and "before and after" photos—but the judge excluded them (see below).

When Viking's Jimmy Clanin testified, Mr. Otto showed him a picture of Serafine's run-down fence along ***the alley*** and asked Clanin, "Have you ever heard anybody refer to that kind of fence like Ms. Serafine has, right there on the alley as a historical fence?" 11.RR:40. Mr. Clanin said, "No, sir." *Ibid.* This evidence gave the false impression that Serafine claimed this was a "historical" fence, that she did not replace it when it was clearly needed, and so this was probably a bogus lawsuit. Serafine would have corrected this

misinformation. She did not claim the old alley fence was "historical." In attempting to remove it, Serafine discovered Viking had bolted it as a support for the Blunts' fence, by which time litigation was contentious. None of this would have gone into Serafine's case in chief. Failure to get rebuttal went against Serafine on damages and negligence.

Clanin also testified to the effect that Serafine could have called Viking to get the concrete off her property. 11.RR:52-53. Serafine would have rebutted that Blunts' lawyer would not disclose who built the fence; Viking knew of the problem since Day One and long before litigation never offered assistance. Serafine did not and would not have put this in her case in chief. Failure to get rebuttal went to the merits of Serafine's claim generally and to negligence and damages. What damages, a juror might question, can there be over a run-down fence?

The Blunts were allowed over objection, to testify that there was a "mediation attempt" and they made a settlement offer to just "give" Serafine the land, but she refused it. 11.RR:145. Serafine would have rebutted that there was no offer and no mediation. Such "evidence" went to the heart of why Serafine was forced to bring the case. It probably resulted in the improper verdict that Serafine take nothing.

73

The Blunts were allowed testify over objection that their attorney wrote letters to Serafine asking her to produce a survey and she refused. 11.RR:114. Serafine would have rebutted with the phone calls and verbal communication at the time, but would not have put such evidence in her case in chief. The harm is that both the jury and judge believed erroneously that this case was decided by surveys and that Serafine herself conceded that.

Ashley Blunt testified that, before Viking tore out the fence, Serafine knew about it and approved of it. In fact, she and Ms. Serafine walked around the neighborhood selecting fences, Mrs. Blunt testified. 11.RR:167-168. Serafine would have rebutted this, as it was false. There would be no reason in Serafine case in chief to testify that she and Mrs. Blunt did not walk around the neighborhood. Even aggressive cross would not un-do it.

Sam Archer, a real estate agent and Mr. Blunt's friend, testified for the Blunts that Serafine's house is more valuable as a result of defendants' construction. 11.RR:286. Serafine, as the owner of her house, would have rebutted Archer's opinions and and testified to its value. This harm went to damages and the merits of the case.

That these were important issues is shown by all defendants' closing arguments. The Blunts' first point was:

> I again submit to you my clients made one mistake and one mistake only. That was purchasing and trying to maintain and improve property next to this plaintiff.

12.RR:97.

Lockhart's counsel emphasized Serafine did not take care of her property. 12.RR:138.

## B. In a "death penalty" sanction the trial court excluded plaintiff's trial exhibits on controlling issues.

Five days before trial, on October 8, 2015, Viking filed against plaintiff a motion for evidentiary sanction, or motion to compel, after hours. CRSuppIII:80-91. Although elsewhere plaintiff's counsel Mr. Bass could not get rulings on his filed and emailed objections to trial exhibits because, the court explained, "here in Travis County, we do have this wonderful electronic filing system, but sometimes it takes two days for it to actually make it into the system," 9.RR:8, in the case of Viking's after-hours sanctions motion the court filed an order by 11:53 a.m. the next morning. CR:558-59. It had two rulings.

First, the court limited plaintiff's exhibits to 100 in number without limiting defendants'. CR:558-59. The Blunts had designated 88 exhibits. RRSupp:16 (Mr. Peters). Viking had designated "67"

exhibits each containing 20, 40, or over 200 documents, for a total of over 500 documents.  CR:512-518.

Only plaintiff was limited.

Second, the court excluded all of plaintiff's exhibits from being introduced at trial, except those that could be personally presented to the judge in court, listed in the columnar format ordered, in two hours. CR:558-59.  The order read:

> "The Court FINDS that Plaintiffs exhibit list is insufficient and does not comply with the Travis County Standing Order requiring that the exhibit list identify documents reasonably anticipated to be offered in evidence.
>
> ***Plaintiff is therefore ORDERED to identify no more than 100 exhibits*** to be introduced at trial ***in the following format on or before 2:00 p.m. on October 9, 2015.***  Any exhibit that is not identified in the format below will not be introduced at trial."

CR:558-59.

The rule in question requires a ***list.***  It does not require a list in any particular form.   However the court ordered a chart in the format attached to the order.  CR:559.

In relevant part Rule 3.2 of the Travis County "Amended Standing

Pretrial Scheduling Order…" provides that 12 days before trial,

> Counsel shall exchange a list of exhibits that each reasonably anticipates will be offered in evidence. Exhibits not listed will not be admitted *unless good cause is shown.* (emphasis added).

Serafine engaged in no flagrant violation or callous disregard of the rule.

Plaintiff and Viking both complied with the 12-day deadline. Plaintiff's exhibit list that the court found non-compliant is shown at CRSuppIV:84-89. It listed categories of documents and photographs (deed documents, "old chain link fence" etc.). Viking's exhibit list is shown at CR:512-518. It too listed categories of exhibits—each category containing 20, 40, or some 200 individual documents.

There was no substantial difference between the two lists. The only difference is that Viking used large Bates number ranges. No rule anywhere requires Bates numbers. But as Serafine explained to the court when the parties appeared later that day, plaintiff's Bates numbers would be confusing for designation because she had three sets of Bates numbers—separately for the 12-1270 case (served on Lockhart

and Blunts), the 13-4023 case (served on Viking), and for the consolidated case (served on all defendants). RRSupp:6. There was no way to match up the Bates numbers, and in any case a particular document would confusingly bear at least two if not three different numbers.

Finally, defendants were not prejudiced in any way. All parties had received Serafine's documents and had been familiar with them for years.

When the court issued its sanctions order at 11:53 a.m., Ms. Serafine and Mr. Bass were meeting at his office in Georgetown. Plaintiff appeared in court at 2:00 p.m. and served and filed the handwritten list on the following page. CR:555-557.

This filing hastily listed as many exhibits as possible from depositions and expert reports, thereby clearly identifying them for defendants. In fact, however, defendants claimed they had not been provided with those particular exhibits, and thus many listed were excluded at trial anyway. 9.RR:67; 9.RR:126-128.



Filed in the County Court
[illegible stamp]

D-1-GN-12-001279

Serafine v. Lockhart

Plaintiff's Alternative Exhibit List

Certificate of Service

By my signature below, I certify that the attachment hereto has been served on the following counsel of record:

Thompson Coe et al., for Viking et al.; Hajjar factors, Doran factors, Esq.; ___ for Mr. & Mrs. ___; Ron Kaufman, Esq., via email, per agreement of housing

on October 9, 2015 at 1:50 p.m.

M. L. Serafine

Respectfully submitted,
Mary L. Serafine, SBN 24048301

M. L. Serafine

[barcode]

| Ex # | Description | Reference | Offered | Obj. | Ad/Den |
|---|---|---|---|---|---|
| 1 | All support and Ex: Prices | Price Index A-B | | | |
| 2 | " " 1 Relatives | Ex F. Report, Q | | | |
| 3 | " " Guest | Report, Ex H | | | |
| 4 | Title Docs | MLS 247-277 | | | |
| 5 | Driveway | NLD 447-1000 | | | |
| 6 | Fence Photos, etc. | S&R 824-846 | | | |
| 7 | Related to Viking blocks | S&R 58-65 | | | |
| 8 | " | S&R 96-104 | | | |
| 9 | " | S&R 110-150 | | | |
| 10 | " | S&R 150-175 | | | |
| 11 | " | S&R 176-200 | | | |
| 12 | " | S&R 200-230 | | | |
| 13 | " | S&R 231-300 | | | |
| 14 | " | S&R 300-344 | | | |
| 15 | Photos - orig. fence | BLD | | | |
| 16 | Mr. & Mrs. Blvd Depo | Ans Bk. Ex 1 | | | |
| 17 | | 2 | | | |
| 18 | | 3 | | | |
| 19 | | 4 | | | |
| 20 | | 5 | | | |
| 21 | | 6 | | | |
| 22 | | 7 | | | |
| 23 | Ashley Blvd Depo, Exc. | Ashley Depo 1 | | | |
| 24 | | 2 | | | |
| 25 | | 3 | | | |
| 26 | | 4 | | | |
| 27 | | 5 | | | |
| 28 | | 6 | | | |
| 29 | | 7 | | | |
| 30 | Serafine Depo, Exc. | Exhibit 1 | | | |
| 31 | | 2 | | | |
| 32 | | 3 | | | |
| 33 | | 4 | | | |
| 34 | | 5 | | | |
| 35 | | 6 | | | |
| 36 | | 7 | | | |
| 37 | | 8 | | | |
| 38 | | 9 | | | |
| 39 | | 10 | | | |
| 40 | | 11 | | | |
| 41 | | 12 | | | |
| 42 | | 13 | | | |
| 43 | | 14 | | | |
| 44 | | 15 | | | |
| 45 | | 16 | | | |
| 46 | | 17 | | | |
| 47 | | 18 | | | |
| 48 | | 19 | | | |
| 49 | | 20 | | | |
| 50 | | 21 | | | |

| Ex # | Description | Reference | Offered | Obj | Ad/Den |
|---|---|---|---|---|---|
| 51 | Serafine Depo Exc. | Ex 22 | | | |
| 52 | | 23 | | | |
| 53 | | 24 | | | |
| 54 | Chancerie Depo Exc. | Ex 1 | | | |
| 55 | | Ex 2 | | | |
| 56 | Pereira Depo Exc. | Ex 1 | | | |
| 57 | | 2 | | | |
| 58 | | 3 | | | |
| 59 | | 4 | | | |
| 60 | | 5 | | | |
| 61 | | 6 | | | |
| 62 | | 7 | | | |
| 63 | | 8 | | | |
| 64 | | 9 | | | |
| 65 | | 10 | | | |
| 66 | | 11 | | | |
| 67 | | 12 | | | |
| 68 | | 13 | | | |
| 69 | | 14 | | | |
| 70 | | 15 | | | |
| 71 | | 16 | | | |
| 72 | | 17 | | | |
| 73 | | 18 | | | |
| 74 | | 19 | | | |
| 75 | Olivia Depo Exhibits | Ex 1 | | | |
| 76 | | 2 | | | |
| 77 | | 3 | | | |
| 78 | | 4 | | | |
| 79 | | 5 | | | |
| 80 | | 6 | | | |
| 81 | | 7 | | | |
| 82 | | 8 | | | |
| 83 | | 9 | | | |
| 84 | | 10 | | | |
| 85 | | 11 | | | |
| 86 | | 12 | | | |
| 87 | | 13 | | | |
| 88 | | 14 | | | |
| 89 | | 15 | | | |
| 90 | | 16 | | | |
| 91 | | 17 | | | |
| 92 | | 18 | | | |
| 93 | | 19 | | | |
| 94 | | 20 | | | |
| 95 | | | | | |
| 96 | | | | | |
| 97 | | | | | |
| 98 | | | | | |
| 99 | | | | | |
| 100 | | | | | |

CR: 555-57.

80

Before the order issued there was (1) no notice, (2) no order to show cause; (3) no hearing; and (4) no lesser sanction. *TransAmerican Nat'l Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)("courts must consider the availability of less stringent sanctions and whether [they] would fully promote compliance"). *See also Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 24 (Tex. 2014)(sanctions so severe as to inhibit the presentation of the merits must be reserved for "flagrant bad faith" or "counsel's callous disregard…")(citation omitted); *In re Patton*, 47 S.W.3d 825, 828 (Tex. App.—Fort Worth 2001, orig. proceeding) (finding abuse of discretion to exclude trial exhibits without lesser sanction).

*Harm analysis*

Controlling issues in this case included how and when Serafine's tenants used Lots 5 and 6; whether Serafine's house was damaged by the 2012 construction, as she'd claimed; whether scientifically-collected soil samples had been collected by her expert; whether, in fact, the back building was intended to be used as an office as Serafine claimed; whether, in fact, Serafine had done a re-model in 2002 to 2004 and how

81

it looked inside.

Elimination of plaintiff's exhibits prevented her from showing the jury the evidence in plaintiff's Exhibit 106 at 17.RR and 18.RR, which was excluded, but which at trial Mr. Bass offered for a later bill of exception and the court approved but later refused. 10.RR:29. (Mr. Bass used the term "offer of proof," but it is clear he intended a formal bill of exception for the excluded exhibits, as he had done previously.) The documents excluded by the order on Oct. 9, 2015 included:

- telephone book pages from the Austin History Center showing the tenants at 4011 listed each year;

- photographs Serafine took of large cracks, dry wall breakages, and a threshhold that had shifted toward the next room—all damage that developed throughout Serafine's house only since the 2012 construction;

- photographs Serafine took of the soil sample collection to provide the jury with an understanding of why samples were collected down to 17 feet;

- architectural sketches completed for the back building that Serafine claimed she was turning into an office;

- the appraisal and photographs from 1977 showing the backyard was fenced on all four sides;

- estimates obtained for repairing the damage;

- fee bills for attorneys and experts;

- photographs of typical, vintage chain-link throughout Hyde Park that was similar to what Serafine lost;

- photographs of the interior re-model/restoration Serafine did in 2002-2004;

- photographs of the trenching Lockhart did along the side of Serafine's driveway (which defendants denied doing);

Not putting this before the jury prevented Serafine from putting on her case. "An error in the exclusion of evidence requires reversal if it is both controlling on a material issue and not cumulative." *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex.1994).

Serafine took every step to present this evidence on appeal.

Serafine's formal bill of exception contained this evidence, which the trial court erroneously refused. Serafine filed a motion in this Court to include it in the appellate record.

## C.    Admitting a purported mediation and settlement offer was harmful error.

*Defendant Blunt was allowed to testify to mediation results and a purported settlement offer.* Contrary to Tex. R. Evid. 408, Alexander Blunt testified as follows over plaintiff's objection:

> (By Mr. Peters, Blunts' counsel:)
> Q:  At some point in time, did you offer just to give the property to Ms. Serafine?
> MR. BASS: And again, I object to the reasons previously stated, Your Honor.
> THE COURT: Okay. Overruled.
> Q. (BY MR. PETERS) You may answer the question.
> A. Yes, after mediation attempt --
> Q. No, no.
> A. Yes, I offered to give her the land up to the fence.
> Q. Okay. And don't talk about -- just say why you offered to give it to her.
> A. I wanted this thing to stop and to go away.
> Q. Thank you, Mr. Blunt.

11.RR:145.

Admission of this evidence contrary to Tex. R. Evid. 408 put before the jur a

one-sided, prejudicial view of evidence they should never have heard: who said what in trying to settle. Again, Serafine had no opportunity to rebut. In addition there was neither a mediation nor settlement offer. Any settlement offers by Serafine were not put before the jury.

**D.      The court erred in refusing a lateral support instruction.**

The trial court concluded at the charge conference that "the Court's charge is not going to include a submission for loss of lateral support. That will have to fall under negligence...." 11.RR:80. ***This was not because there was no evidence of it.*** Rather, it was because Blunts' counsel advised, "There's no such cause of action as a lateral support" and it was essentially negligence. 11.RR:79-80. Lockhart's counsel agreed there was no such cause. 11.RR:77. Plaintiff's counsel disagreed. 11.RR:78. The court accepted defendants' advice.

This Court's opinion in *Simon* continues to be the law:

> By the weight of authority it is a well-settled rule of the common law that an owner of land has an absolute right to the lateral support of adjoining land. In other words, he has the right to have his land remain as it was in a state of nature, and neither the adjoining landowner, nor any one else, can rightfully remove from the boundaries of the land ***the supports which hold it in its natural position.*** Therefore, if the adjoining proprietor constructs ***a ditch or other excavation*** in such a manner as causes the soil of the complainant to cave in, slough off, or wash away, such adjoining proprietor is liable for damages, and, in a proper case, may be

restrained by injunction. The right of lateral support of the soil is absolute, and ***does not depend upon the question of due care or negligence.***

*Simon v. Nance*, 100 S.W. 1038, 1040 (Tex. Civ. App.—Austin 1907, no writ)(emphasis added).

Serafine's engineering expert, David Price, had testified:

[B]ecause if you dig a really ***deep ditch and you don't support it, basically the ditch over time, especially in those type of soils, will essentially cave in.*** Think slow motion. And then that causes what's called a ***lateral unsupported situation***, []

10.RR:226-227.

Blunts' Exhibit 56, *supra*, is a photograph of a boarded up trench. Mr. Blunt was asked about the scene and the boards. He testified, "We had trenched along that property line a few years earlier." This was "air spading" along plaintiff's driveway. 11.RR:121-122.

Plaintiff's Exhibit 2D is a photo of the trenching just over the property line. 17.RR:7, admitted at 9.RR:130.

Plaintiff's live petition pled:

### Cause of Action Against Mr. and Mrs. Blunt
### Interference with Lateral Support

Plaintiff has and had an absolute right to lateral support of her land. Defendant Blunts interfered with Plaintiff's lateral support by digging a trench, approximately I4 feet long, only a few inches away from her land, by digging a deep sump pit only a few feet from her land....

CR:23.

The elements of negligence include duty and breach of duty, which under *Simon* are explicitly not elements of interference with lateral support. The court erred and Serafine should have been able to take the question to the jury.

**VIIb. The trial court prevented appeal within the meaning of TRAP 44.1(a)(2).**

This Court can only guess at what the evidence would have been if the trial court had not excluded or refused to hear evidence on (1) the boundary; (2) the egregiousness of Alexander Blunt's fabrication of the "threats"counterclaim; and (3) plaintiff's rebuttal at trial.

Serafine was precluded from appealing that 10 hours was too short to try this consolidated case and two months too short a time to prepare it after a two-year stay. The Judge's Bill recites Serafine's objection, but omits the evidence from Serafine's formal bill to appeal the harm. CRSuppV:449.

These errors meet the harm standard of TRAP 44.1(a)(2) and *Ford Motor Company v. Castillo*, 279 S.W.3d 656 (Tex. 2009)(when...evidence does not appear in record, it is impossible to determine harm and party is prevented from properly presenting case on appeal).

## PRAYER

The Court should reverse and render judgment: (1) that Serafine conclusively established Serafine's adverse possession and limitations title to the disputed area; (2) that Serafine recover $53,525.00 in attorney's fees under TCRP Chapter 27; (3) that the boundary be declared as described by Grant's Occupied Line Survey and metes and bounds; and (4) that the $10,000 sanctions award to Viking be vacated. The Court should also reverse and remand for a new trial on (1) all of Serafine's claims against Viking and Lockhart; and (2) an award of sanctions "sufficient to deter" as provided by Chapter 27, and for fees and sanctions for the Blunts' "threats" mixed counterclaim.

In the alternative, the Court should remand for a new trial on all claims. The Court should vacate the order expunging the *lis pendens* notice.

Respectfully submitted,

By: _M. L. Serafine_

Mary Louise Serafine
State Bar No. 24048301
P O. Box 4342, Austin, Texas 78765
Telephone: (512) 220-5452
Email: mlserafine@gmail.com
<u>Appellant and Attorney for Appellant</u>

**CERTIFICATE OF COMPLIANCE WITH RULE 9.4(e)**

1.     This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(e)(i)(2)(B) because it was produced using Word Perfect software and contains 14,986 words, as determined by the software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(e)(i)(1).

2.     This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Word Perfect software in Times New Roman 14 point font in the main text and no smaller than Times New Roman 12 point font in footnotes.

By:  *M. L. Serafine*

MARY LOUISE SERAFINE
State Bar No. 24048301

**CERTIFICATE OF SERVICE**

By my signature below, I certify that a true and correct copy of the foregoing document has been delivered via e-service through the Court's electronic filing system on the counsel below, on this the 26th day of September, 2016.

The Raydon Firm, LLC
Two Riverway, Suite 845, Houston, TX 77056
Ronald Max Raydon, Esq. (ron@raydonlaw.com)
Attorney For Scott Lockhart and Austin Drainage & Foundation, LLC

Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, # 1500, Austin, TX 78701
Sara B. Churchin, Esq., schurchin@thompsoncoe.com;
Wade C. Crosnoe, Esq.,  wcrosnoe@thompsoncoe;
Jeff D. Otto, Esq., jotto@thompsoncoe.com;
Melissa J Ackie, Esq., mackie@thompsoncoe com.
Attorneys for Viking Fence Company, Ltd. and Viking GP, LLC.

Martens, Todd, Leonard, Taylor & Ahlrich

301 Congress Ave., # 1950, Austin, Texas 78701
Amanda Taylor, Esq., ataylor@textaxlaw.com
<u>Attorneys for Alexander and Ashley Blunt</u>

By: _____
MARY LOUISE SERAFINE
State Bar No. 24048301

## APPELLANT'S APPENDIX

**Trial Court Orders**

Final Judgment, including charge, verdict,
order on boundary, monetary sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 1

Order setting boundary, expungement . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 2

Findings of fact & conclusions of law . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 3

Order granting Viking MSJs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 4

Order consolidating cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 5

Directed verdict on Lockhart . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 6

Order excluding plaintiff's expert Hilts . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 7

Evidentiary sanction excluding plaintiff's exhibits . . . . . . . . . . . . . . . . . Tab 8

Judge's bill of Exception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 9

**Pleadings**

Petition in 12-1270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 10

Petition in 13-4023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 11

First supplement to petitions, both cases . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 12

Second supplement to petitions, both cases . . . . . . . . . . . . . . . . . . . . . . . . Tab 13

Blunts' counterclaims for interference and fraudulent lien . . . . . . . . . . Tab 14

Blunts' counterclaim for trespass . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 15

**Motion**

Plaintiff's supplement to motion for Chapter 27 relief . . . . . . . . . . . . . .  Tab 16

**Statutes and Rules**

Civ. Prac. & Rem. Code sec. 27.009 . . . . . . . . . . . . . . . . . . . . . . . . . . .  Tab 17

Civ. Prac. & Rem. Code sec. 16.034 . . . . . . . . . . . . . . . . . . . . . . . . . . .  Tab 18

Prop Code sec. 12.0071  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Tab 19

Tex. R. Civ. P. 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Tab 20

Civ. Prac. & Rem. Code Chapter 10  . . . . . . . . . . . . . . . . . . . . . . . . . . .  Tab 21

Tex. R. Civ. P. 265  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Tab 22

Tex. R. civ. P. 266 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Tab 23

Civ. Prac. & Rem. Code secs. 16.021 to 16.030  . . . . . . . . . . . . . . . . . . .  Tab 24

TAB 1

Filed in The District Court
of Travis County, Texas

**DEC - 3 2015**

CAUSE NO. D-1-GN-12-001270

At _____ 3:54 _____ PM.

Velva L. Price, District Clerk

| | | |
|---|---|---|
| MARY LOUISE SERAFINE | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| ALEXANDER BLUNT, ASHLEY BLUNT, | § | |
| SCOTT LOCKHART dba AUSTIN | § | |
| DRAINAGE AND FOUNDATION, LLC, | § | |
| VIKING FENCE COMPANY, LTD., and | § | |
| VIKING GP, LLC, | § | 200th JUDICIAL DISTRICT |
|     Defendants. | § | |

## FINAL JUDGMENT

On October 13, 2015, this case was called to trial. Plaintiff Mary Louise Serafine, an attorney, appeared Pro Se and through her attorney Ray Bass. Defendants Alexander Blunt and Ashley Blunt appeared through in person and their attorney, Doran Peters, and announced ready for trial. Scott Lockhart, Austin Drainage and Foundation, LLC d/b/a Austin Drainage and Landscape Development appeared in person and through attorney, Ronald Raydon, and announced ready for trial. Viking Fence Company, Ltd. and Viking GP appeared in person and through their attorneys, Jeff D. Otto and Melissa Ackie, and announced ready for trial. The record of testimony was duly reported by Della Rothermel, the court reporter for the 250th Judicial District Court.

On October 13, 2015, the Court impaneled and swore the jury, which heard the evidence and arguments of counsel. After the close of the evidence, the Court submitted definitions, instructions, and questions to the jury as set forth in The Court's Charge. In response, the jury, on October 16, 2015, made findings that the Court received, filed, and entered of record. The Court's Charge submitted to the jury, and the jury's findings, are attached as Exhibit "A" and incorporated by reference.

Final Judgment



004333407

Page 1 of 3



During the trial, the parties agreed to submit the contested boundary line determination and the issue of attorney fees to the Court by post-verdict submission and hearing. The Court, through its inherent and exclusive power to settle land titles and disputes, and in response to Plaintiff's trespass to try title allegations filed in the above captioned and styled cause, signed an Order Declaring Boundary on November 13, 2015. The Order finds that Holt Carson's Survey, sealed on January 18, 2012 and attached hereto as Exhibit "B," correctly and finally establishes the boundary line between lot 5 of Block 33 of Hyde Park Addition No. 1, also known as 4011 Avenue D, Austin, Texas 78751, and Lot 4 of Block 33 of Hyde Park Addition No. 1, also known as 4013 Avenue D, Austin, Texas 78751.

Prior to trial, on September 25, 2015, the Court considered Plaintiff's "Motion for Damages and Sanctions Under Chapter 27, Civil Practice & Remedies Code" against Defendants Alexander Blunt and Ashley Blunt. As justice and equity do not require that costs, fees, or expenses be awarded and no sanctions are needed to deter Defendants Alexander Blunt and Ashley Blunt from bringing similar actions, IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiff's requests for attorney's fees and sanctions against Defendants Alexander Blunt and Ashley Blunt are DENIED.

Based on the jury's verdict, and further supplemented by the Court's additional orders, this Court renders judgment as follows:

IT IS ORDERED, ADJUDGED and DECREED that Plaintiff take nothing on all claims against Alexander Blunt, Ashley Blunt, Scott Lockhart, Austin Drainage and Foundation, LLC d/b/a Austin Drainage and Landscape Development, Viking Fence Company, Ltd. and Viking GP, LLC.

Final Judgment

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Defendants Viking Fence Company, Ltd. recover from Plaintiff Mary Louise Serafine the amount of $10,000.00, pursuant to the Court's Order on Defendant Viking Fence Company, Ltd.'s Motion for Sanctions, attached hereto as Exhibit "C."

IT IS FURTHER ORDERED, ADJUDGED, and DECREED each party shall be responsible for their respective attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that all writs and processes for the enforcement and collection of this Final Judgment may issue as necessary.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that all relief requested by any party not specifically addressed in this Final Judgment is DENIED.

This Judgment is intended to finally dispose of all claims, causes of action, and all parties, and is therefore, final.

SIGNED this 3rd day of December 2015.

_____
JUDGE PRESIDING
KARIN CRUMP

Final Judgment

# EXHIBIT A

ORIGINAL

## CAUSE NO. D-1-GN-12-001270

| | | |
|---|---|---|
| MARY LOUISE SERAFINE | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| ALEXANDER BLUNT, ASHLEY BLUNT, | § | |
| SCOTT LOCKHART dba AUSTIN | § | |
| DRAINAGE AND FOUNDATION, LLC | § | 200th JUDICIAL DISTRICT |
| dba AUSTIN DRAINAGE | § | |
| AND LANDSCAPE DEVELOPMENT, | § | |
| VIKING FENCE COMPANY, LTD., AND | § | |
| VIKING GP, LLC | § | |
| | § | |
| *Defendants* | § | TRAVIS COUNTY, TEXAS |

## <u>CHARGE OF THE COURT</u>

LADIES AND GENTLEMEN OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the Court Operations Officer when you are not deliberating. The Court Operations Officer will give your notes to me promptly after collecting them from you. I will make sure they are kept in a safe, secure location and not disclosed to anyone. When you are released from jury duty, the Court Operations Officer will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions:

Court's Charge to the Jury

Filed in The District Court
of Travis County, Texas

*FA*

OCT 1 6 2015

At_____ /·5̶6̶  *P* M.
Velva L. Price, District Clerk

Filed in The District Court
of Travis County, Texas

*FA*

OCT 1 6 2015

At_____ 3:05  *P* M.
Velva L. Price, District Clerk

98

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

   The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least ten of the jurors. The same ten jurors must agree on every

Court's Charge to the Jury         2

answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

12. A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

13. You are the sole judges of the credibility or believability of each witness and the weight to be given to his or her testimony. In weighing the testimony of a witness you should consider his or her relationship to the Plaintiff or to the Defendant; his or her interest, if any, in the outcome of the case; his or her demeanor or manner of testifying; his or her opportunity to observe or acquire knowledge concerning the facts about which he or she has testified; his or her candor, fairness and intelligence; and the extent to which he or she has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## Additional Definitions:

1. Lot 4 refers to Alexander and Ashley Blunts' real property at 4013 Avenue D, Austin, Texas, 78751.

2. Lot 5 refers to Mary Louise Serafine's real property at 4011 Avenue D, Austin, Texas 78751.

3. "Market value" means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

## Additional Definitions for Adverse Possession:

4. "Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a "claim of right" that is inconsistent with and is "hostile" to the rights of the owner of the real property.

5. Adverse possession does not need to continue in the same person, but there must be privity of estate between each holder and his successor.

Court's Charge to the Jury      3

6. "Claim of right" means the claimant's intention to appropriate or claim the land as his or her own.

7. "Hostile" means the acts performed by the claimant of the real property and the use made of the real property were of such nature and character as to reasonably notify the owner of the real property that a hostile claim to the property was being asserted.

Additional Definitions for Negligence:

8. "Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

9. "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

10. "Proximate cause" means a cause that was a substantial factor in bringing about an occurrence, and without which cause such occurrence would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the occurrence, or some similar occurrence, might reasonably result therefrom. There may be more than one proximate cause of an occurrence.

## Question No. 1 – Adverse Possession – 25 Year Statute

Do you find that Mary Louise Serafine held the disputed area between Lot 4 and Lot 5 in adverse possession for a continuous and uninterrupted period of twenty-five (25) years?

To establish adverse possession, Mary Louise Serafine must have cultivated, used, or enjoyed the property.

**Answer "Yes" or "No"**

**Answer:** __NO__

If you answered "No" to Question No. 1, then Answer Question No. 2. Otherwise, do not answer Question No. 2.

## Question No. 2 – Adverse Possession – 10 Year Statute

Do you find that Mary Louise Serafine held the disputed area between Lot 4 and Lot 5 in adverse possession for a continuous and uninterrupted period of ten (10) years?

To establish adverse possession, Mary Louise Serafine must have cultivated, used, or enjoyed the property.

**Answer "Yes" or "No"**

**Answer:** ___NO___

Court's Charge to the Jury       6

If you answered "No" to Question Nos. 1 and 2, then Answer Question No. 3. Otherwise, do not answer Question No. 3.

## Question No. 3 – Adverse Possession – Five Year Statute

Do you find that Mary Louise Serafine held the disputed area between Lot 4 and Lot 5 in adverse possession for a continuous and uninterrupted period of five (5) years?

To establish adverse possession under the five year statute, Mary Louise Serafine must have: (1) cultivated, used, or enjoyed the property; (2) paid applicable taxes on the property; and (3) claimed the property under a duly registered deed.

**Answer "Yes" or "No"**

**Answer:** NO

104

If you answered "No" to Question Nos. 1, 2, and 3, then Answer Question No. 4. Otherwise, do not answer Question No. 4.

## Question No. 4 – Adverse Possession – Three Year Statute

Do you find that Mary Louise Serafine held the disputed area between Lot 4 and Lot 5 in adverse possession under title or color of title for a continuous and uninterrupted period of three (3) years?

"Title" means a regular chain of transfers of real property from or under the sovereignty of the soil.

"Color of title" means a consecutive chain of transfers to the person in possession that:

> (A) is not regular because of a document or record that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or

> (B) is based on a certificate of headright, land warrant, or land scrip.

**Answer "Yes" or "No"**

**Answer:** __NO__

Court's Charge to the Jury

8

If you answered "Yes" to Question Nos. 1, 2, 3, or 4, then Answer Question No. 5. Otherwise, do not answer Question No. 5.


## Question No. 5 – Trespass

Did a party listed below trespass on Mary Louise Serafine's property?

"Trespasser" means one who enters on the property of another without having consent of the person who owns or possesses the property. To constitute a trespass, entry upon another's property need not be in person but may be made by causing or permitting a thing to cross the boundary of the premises.


**Answer "Yes" or "No" for each of the following:**

**a.      Alexander Blunt**                    _____

**b.      Viking Fence Company**              _____

If you answered "Yes" to Question No. 5 for Alexander Blunt then Answer Question No. 6. Otherwise, do not answer Question No. 6.

## Question No. 6 – Actual Damages for Trespass

What sum of money, if any, do you find would fairly and reasonably compensate Mary Louise Serafine for the trespass, if any, by Alexander Blunt on her property?

You are instructed to consider the following elements of damages and no other. Consider each element separately and do not include amounts for one element in the other element. Do not include interest on any damages you find:

**Answer in dollars and cents for damages, if any.**

**Answer:** _____

Court's Charge to the Jury                                                    10

If you answered "Yes" to Question No. 5 for Viking Fence Company, then Answer Question No. 7. Otherwise, do not answer Question No. 7.

## Question No. 7 – Actual Damages for Trespass

What sum of money, if any, do you find would fairly and reasonably compensate Mary Louise Serafine for the trespass, if any, by Viking Fence Company on her property?

You are instructed to consider the following elements of damages and no other. Consider each element separately and do not include amounts for one element in the other element. Do not include interest on any damages you find:

**Answer in dollars and cents for damages, if any.**

**Answer:** _____

## Question No. 8 – Negligence – Fence between Lot 4 and Lot 5

With regard to the replacement of the fence between Lot 4 and Lot 5, did the negligence, if any, of those named below proximately cause any property damage to Mary Louise Serafine?

**Answer "Yes" or "No" for each of the following:**

a.  **Alexander Blunt** _____NO_____

b.  **Ashley Blunt** _____NO_____

c.  **Viking Fence Company** _____NO_____

d.  **Mary Louise Serafine** _____NO_____

Court's Charge to the Jury                                    12

If you answered "Yes" to Question No. 8 for more than one of the persons or company listed below, then answer Question No. 9 with respect to those persons or company. Otherwise, do not answer Question No. 9.

## Question No. 9 – Comparative Responsibility for Negligence

For each person you found caused or contributed to cause the property damage to Mary Louise Serafine, find the percentage of responsibility attributable to each.

Assign percentages of responsibility only to those you found caused damage to Plaintiff's property in replacing the fence. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to a person or company is not necessarily measured by the number of acts or omissions found. The percentage attributable to anyone need not be the same percentage attributed to that one in answering another question.

a.  **Alexander Blunt**          _____%

b.  **Ashley Blunt**            _____%

c.  **Viking Fence Company**        _____%

d.  **Mary Louise Serafine**        _____%

     **Total**              \_\_\_\_\_**100**\_\_\_\_\_%

Answer Question No. 10 if you answered "Yes" for anyone to Question No. 8. Otherwise, do not answer Question No. 10.

## Question No. 10 – Market Value Damages for Negligence

What is the reduction in the market value, if any, in Travis County, Texas, of the Serafine Property immediately before and immediately after the fence was installed in December 2011?

Do not reduce the amount, if any, in your answer because of the negligence, if any, of any party. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment.

**Answer in dollars and cents for damages, if any.**

**Answer:** _____

## Question No. 11 – Negligence – Drainage System

With regard to the installation of the drainage system on Lot 4, did the negligence, if any, of those named below proximately cause damage to Plaintiff's property?

**Answer "Yes" or "No" for each of the following:**

a.     **Alexander Blunt**                NO

b.     **Ashley Blunt**                    NO

c.     **Austin Drainage and Foundation**     NO

d.     **Mary Louise Serafine**           NO

Court's Charge to the Jury          15

If you answered "Yes" to Question No. 11 for more than one of the persons or company listed below, then answer Question No. 12 with respect to those persons or company. Otherwise, do not answer Question No. 12.


## Question No. 12 – Comparative Responsibility for Negligence

For each person you found caused or contributed to cause damage to Plaintiff's property in installing the drainage system, find the percentage of responsibility attributable to each.

Assign percentages of responsibility only to those you found caused damage to Plaintiff's property in installing the drainage system. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to a person or company is not necessarily measured by the number of acts or omissions found. The percentage attributable to anyone need not be the same percentage attributed to that one in answering another question.

| | | |
|---|---|---|
| a. | **Alexander Blunt** | _____ % |
| b. | **Ashley Blunt** | _____ % |
| c. | **Austin Drainage and Foundation** | _____ % |
| d. | **Mary Louise Serafine** | _____ % |
| | **Total** | ___**100**___ % |

113

If you answered "Yes" for anyone to Question No. 11, then answer Question No. 13. Otherwise, do not answer Question No. 13.

## Question No. 13 – Market Value Damages for Negligence

What is the amount of any reduction in market value in Travis County, Texas, of the Serafine Property immediately before and immediately after the installation of the drainage system on Lot 4?

Do not reduce the amount, if any, in your answer because of the negligence, if any, of any party. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

**Answer in dollars and cents for damages, if any.**

**Answer: $**_____

If you answered "Yes" for anyone to Question No. 11, then answer Question No. 14. Otherwise, do not answer Question No. 14.

### Question No. 14 – Cost of Repair Damages for Negligence

What sum of money, if paid now in cash, would fairly and reasonably compensate Mary Louise Serafine for her damages, if any, to restore the property to the condition it was in immediately before the installation of the drainage system?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Do not reduce the amount, if any, in your answers because of the negligence, if any of any party. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment.

**Answer in dollars and cents for damages, if any.**

**Answer: $_____**

Court's Charge to the Jury          18

## Question No. 15 – Nuisance

Do you find that Austin Drainage and Foundation created a private nuisance?

A private nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy their property.

**Answer: "Yes" or "No"**

_____NO_____

If you answered "Yes" to Question No. 15, then answer Question No. 16. Otherwise, do not answer Question No. 16.

**Question No. 1̸7̸ 16 – Damages for Nuisance**

What sum of money, if paid now in cash, do you find would fairly and reasonably compensate Mary Louise Serafine for the damages, if any, that were proximately caused by the private nuisance?

You are instructed to consider the following elements of damages and no other. Consider each element separately and do not include amounts for one element in the other element. Do not include interest on any damages you find:

If you determine that that there are property damages, you may consider the loss of market value or the cost of repairs, but not both. "Market value" means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling. The "cost of repairs" is the reasonable cost in Travis County, Texas, to restore the property to the condition it was in immediately before the occurrence in question.

**Answer in dollars and cents for damages, if any.**

**Answer:** _____

Court's Charge to the Jury            20

117

# PRESIDING JUROR

When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

The presiding juror has these duties:

1. Have the complete charge read aloud if it will be helpful to your deliberations;

2. Preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

3. Give written questions or comments to the Court Operations Officer who will give them to the judge;

4. Write down the answers you agree on;

5. Get the signatures for the verdict certificate; and

6. Notify the Court Operations Officer that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## Instruction for Signing the Verdict Certificate

Unless otherwise instructed, you may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

If ten jurors agree on every answer, those ten jurors sign the verdict.

If eleven jurors agree on every answer, those eleven jurors sign the verdict.

If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

Submitted to the jury the ___16th___ day of October, 2015, at ___10.45___o'clock ___a___.m.

_____
Judge Presiding

Court's Charge to the Jury                                     21

# EXHIBIT B

Filed in The District Court
of Travis County, Texas

NOV 13 2015

At _____ 3:37 _____ P M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-12-001270

| | | |
|---|---|---|
| MARY LOUISE SERAFINE | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| ALEXANDER BLUNT, ASHLEY BLUNT, | § | OF TRAVIS COUNTY, TEXAS |
| SCOTT LOCKHART dba AUSTIN | § | |
| DRAINAGE AND FOUNDATION. LLC, | § | |
| VIKING FENCE COMPANY, LTD., and | § | |
| VIKING GP, LLC, | § | 200th JUDICIAL DISTRICT |
|     Defendants. | § | |

## ORDER DECLARING BOUNDARY

All parties in this cause agreed to submit the contested boundary line determination to the Court after the conclusion of evidence and a final determination of the facts by a trial by jury.

On October 16, 2015, a jury of twelve agreed to each and every answer in the Court's Charge to the Jury, which found that Mary Louise Serafine take nothing by her claims against Alexander and Ashley Blunt. After review of the pleadings, the evidence submitted at trial, the trial record, the Court's Charge to the Jury, the jury's findings, Plaintiff's briefing, and the applicable law, the Court rules as follows:

The Court, through its inherent and exclusive power to settle land titles and disputes, and in response to Plaintiff's trespass to try title allegations filed in the above captioned and styled cause, FINDS that the survey of Holt Carson (herein referred to as the "Holt Carson Survey"), sealed on January 18, 2012, admitted during trial as "Blunt Exhibit 35," and attached hereto as Exhibit "A," correctly and finally establishes the boundary line between Lot 5 of Block 33 of Hyde Park Addition No. 1, also known as 4011 Avenue D, Austin, Texas 78751, and Lot 4 of Block 33 of Hyde Park Addition No. 1, also known as 4013 Avenue D, Austin, Texas 78751.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Holt Carson Survey, sealed on January 18, 2012 and attached hereto as Exhibit "A," correctly and finally establishes the boundary line between Lot 5 of Block 33 of Hyde Park Addition No. 1, commonly known as 4011 Avenue D, Austin, Texas 78751, and Lot 4 of Block 33 of Hyde Park Addition No. 1, commonly known as 4013 Avenue D, Austin, Texas 78751.

All relief not expressly granted herein is denied.

SIGNED this _13th_ day of November 2015.

JUDGE PRESIDING
KARIN CRUMP

ORDER DECLARING BOUNDARY



EXHIBIT D-B 35

# EXHIBIT C



Filed in The District Court
of Travis County, Texas

DEC - 3 2015

At_____ 2:10 ___ P.M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-12-001270

| | | |
|---|---|---|
| MARY LOUISE SERAFINE | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| ALEXANDER BLUNT, ASHLEY BLUNT, | § | |
| SCOTT LOCKHART dba AUSTIN | § | |
| DRAINAGE AND FOUNDATION, LLC, | § | |
| VIKING FENCE COMPANY, LTD., and | § | |
| VIKING GP, LLC, | § | 200th JUDICIAL DISTRICT |
|     Defendants. | § | |

### ORDER ON DEFENDANT VIKING FENCE COMPANY, LTD.'S MOTION FOR SANCTIONS

On November 10, 2015, the Court heard Defendant Viking Fence Company, Ltd.'s ("Viking") Motion for Sanctions (the "Motion") against Plaintiff Mary Louise Serafine pursuant to Texas Rule of Civil Procedure 13 and Texas Civil Practice and Remedies Code, Chapter 10, in the above-styled and numbered cause.

Defendant Viking appeared through its attorney of record, Jeff D. Otto. Plaintiff Mary Louise Serafine, attorney of record, appeared pro se, on her own behalf. The record of testimony was duly reported by Della Rothermel, the court reporter for the 250th Judicial District Court.

### Background

1. On or about December 18, 2011, Defendant Viking Fence Company, Ltd. installed a privacy fence for a home in Hyde Park. Plaintiff, an adjacent landowner, believed the newly installed fence encroached on her property rights.

2. On April 29, 2012, Plaintiff filed this suit against Alexander and Ashley Blunt for installing the fence.

3. On November 13, 2013, Plaintiff, an attorney licensed in Texas and proceeding Pro Se, filed a suit against Defendant Viking Fence Company, Ltd., in D-1-GN-13-004023, styled *Mary*

*Louise Serafine v. Viking Fence Company, Ltd. et al*, in the 126th Judicial District Court of Travis County, Texas (the "Viking Suit").

4. On July 6, 2014, Plaintiff added Defendant Viking GP, LLC, the general partner of Defendant Viking Fence Company, Ltd, as a defendant in the Viking Suit.

5. On February 10, 2015, Plaintiff filed her Third Amended Petition in the Viking Suit, which added Salvador Chavarria and Jennifer Chavarria, a married couple, who were the sole shareholders and members of Defendant Viking GP, LLC, as defendants in the Viking Suit.

6. In her Third Amended Petition, Plaintiff alleged the following:

   a. "Defendants Salvador Chavarria and Jennifer Chavarria engaged in a single business enterprise and that Defendants Viking Fence, Viking GP, and Salvador and Jennifer Chavarria are the alter egos of each other." Third Amended Petition at p. 3.

   b. "Defendants do business under an unlawful scheme in which Salvador and Jennifer Chavarria purport to be protected by an entity, inside another entity, which is designed to create the appearance, solely for the purpose of escaping liability, of multiple layers of independent-contractor agreements. This scheme is a misrepresentation to defendants' customers, the public at large, the state and federal agencies to whom defendants owe duties, and to their ostensible or actual agents or employees – the purported independent contractors." *Id.* at pp. 3-4.

   c. "Viking Fence, Viking GP, and Salvador and Jennifer Chavarria have engaged in an unlawful scheme to shield themselves from liability from their wrongful acts by erecting this web of entities and purported 'independent contractor' agreements." *Id.* at p. 4.

ORDER ON DEFENDANT VIKING FENCE COMPANY, LTD.'S MOTION FOR SANCTIONS

125

d. "Defendants Viking Fence, Viking GP, and Salvador and Jennifer Chavarria are engaged in a hiring scheme that is contrary to state and federal law and exploits the personnel who are engaged by them." *Id.* at p. 5.

7. On May 28, 2015, the Court considered the First Amended Traditional Motion for Summary Judgment on the Affirmative Defense of Statute of Limitations filed by Defendants Viking GP, LLC, Salvador Chavarria, Jennifer Chavarria, and James Clanin. On June 12, 2015, the Court granted Defendants' motion for summary judgment on the affirmative defense of statute of limitations, in part, and dismissed with prejudice all of Plaintiff's claims against Defendants Salvador Chavarria and Jennifer Chavarria.

8. On August 24, 2015, the Court, by agreement of the parties, consolidated D-1-GN-13-004023 (the "Viking Suit") into this action.

9. On October 16, 2015, a jury of twelve agreed to each and every answer in the Court's Charge to the Jury, which found that Mary Louise Serafine take nothing by her claims against Defendants Viking Fence and Viking GP.

10. On November 3, 2015, Defendant Viking filed a Motion for Sanctions against Plaintiff Mary Louise Serafine.

11. On November 9, 2015, Plaintiff filed an Opposition to Defendant's Motion for Sanctions and a Motion to Dismiss under Chapter 27, Civil Practice & Remedies Code.

12. On November 10, 2015, the Court held a hearing on attorney's fees and Defendant's Motion for Sanctions.

13. On November 20, 2015, Plaintiff withdrew her Motion to Dismiss under Chapter 27, Civil Practice & Remedies Code against Defendant Viking.

ORDER ON DEFENDANT VIKING FENCE COMPANY, LTD.'S MOTION FOR SANCTIONS

126

## Findings

After considering Defendant's Motion, Plaintiff's Response, the pleadings on file, the evidence admitted at the hearing, the live testimony of Jeff D. Otto, the arguments of counsel and applicable law, the Court FINDS as follows:

1. Although the statute of limitations expired in December 2013, Plaintiff did not file suit against Defendants Salvador Chavarria and Jennifer Chavarria until February 10, 2015.

2. In order to recover against Defendants Salvador Chavarria and Jennifer Chavarria, Plaintiff was required to specifically plead and prove, within the applicable statute of limitations, that: (a) the corporate form of Defendant Viking Fence, Ltd. should be disregarded to hold Defendant Viking GP, LLC liable; and (b) the liability shield of Defendant Viking GP, LLC should be pierced to hold its sole shareholders, Salvador Chavarria and Jennifer Chavarria, liable.

3. In her Third Amended Petition, Plaintiff made vague references to a variety of agency, alter ego, and corporate veil theories, including the allegation that Defendants Salvador Chavarria and Jennifer Chavarria were engaged in a "scheme" to make misrepresentations to "defendants' customers, the public at large, the state and federal agencies to whom defendants owe duties." Third Amended Petition at pp. 3-4.

4. Plaintiff, however, made no allegation that Defendants Salvador Chavarria and Jennifer Chavarria owed any independent duty of care to Plaintiff. Absent extraordinary circumstances, a member or manager of an LLC is not liable for the debts, obligations or liabilities of a limited liability company. *See* Tex. Bus. Orgs. Code § 101.114

5. Plaintiff alleged nothing wrongful, improper, or illegal about Defendant Viking Fence Company, Ltd.'s business organization. The creation of affiliated corporations to limit

ORDER ON DEFENDANT VIKING FENCE COMPANY, LTD.'S MOTION FOR SANCTIONS

liability and the hiring of independent contractors is commonplace and a legally approved business practice in Texas.

6. Plaintiff failed to allege how the use of a corporate fiction was used as a means to evade an existing obligation or how Defendants Salvador Chavarria and Jennifer Chavarria relied on a corporate fiction as a protection of crime or to perpetuate a fraud. Plaintiff provided no basis to demonstrate that Salvador Chavarria and Jennifer Chavarria were necessary parties to prevent injustice.

Based on all of the foregoing, there can be no other reasonable conclusion but that Plaintiff's allegations against Salvador Chavarria and Jennifer Chavarria were made: (1) in bad faith; (2) with full-knowledge that her claims against the individual LLC members were groundless; and (3) for the purpose of harassment. Accordingly, there is good cause to sanction Plaintiff under Texas Rule of Civil Procedure 13 and Texas Civil Practice and Remedies Code, Chapter 10. The Court finds that an appropriate remedy is an award of $10,000.00.

There is a direct relationship between the sanction and the offensive conduct by Plaintiff. The testimony and evidence admitted at the hearing established that in the month of June 2015, Defendant Viking Fence Company, Ltd. incurred reasonable and necessary fees in defending against Plaintiff's allegations regarding the claims against Salvador Chavarria and Jennifer Chavarria. The amount of sanction of $10,000.00 is tied to the fees and expenses incurred on behalf of Salvador Chavarria and Jennifer Chavarria, including responding to discovery and the drafting and arguing of two separate motions for summary judgment.

The sanction of $10,000.00 is no more severe than necessary. This amount will adequately sanction Plaintiff for signing pleadings that were groundless and harassing, as well deter repetition of the conduct or comparable conduct by others similarly situated.

IT IS THEREFORE ORDERED that Defendant Viking Fence Company, Ltd.'s Motion for Sanctions is GRANTED as set out above.

IT IS FURTHER ORDERED that the amount of $10,000.00 is awarded to Defendant Viking Fence Company, Ltd. as an award of sanctions against Plaintiff Mary Louise Serafine.

All relief not expressly granted herein is denied.

SIGNED this _3rd_ day of December 2015.

_____
JUDGE PRESIDING
KARIN CRUMP

ORDER ON DEFENDANT VIKING FENCE COMPANY, LTD.'S MOTION FOR SANCTIONS

**Filed in The District Court
of Travis County, Texas**

**NOV 1 3 2015**

At    3:44    PM.
Velva L. Price, District Clerk

TAB 2

### CAUSE NO. D-1-GN-12-001270

| | | |
|---|---|---|
| MARY LOUISE SERAFINE | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| ALEXANDER BLUNT, ASHLEY BLUNT, | § | |
| SCOTT LOCKHART dba AUSTIN | § | |
| DRAINAGE AND FOUNDATION, LLC, | § | |
| VIKING FENCE COMPANY, LTD., and | § | |
| VIKING GP, LLC, | § | 200th JUDICIAL DISTRICT |
|     Defendants. | § | |

### ORDER EXPUNGING NOTICE OF LIS PENDENS

On October 16, 2015, a jury of twelve agreed to each and every answer in the Court's Charge to the Jury, which found that Mary Louise Serafine take nothing by her claims against Alexander and Ashley Blunt. Accordingly, Plaintiff Mary Louise Serafine has failed to establish by a preponderance of the evidence the probable validity of a real property claim as it relates to 4013 Avenue D, Austin, Texas, 78751.

The Court resolved all remaining real property disputes by determining the boundary line between Lot 5 of Block 33 of Hyde Park Addition No. 1, also known as 4011 Avenue D, Austin, Texas 78751, and Lot 4 of Block 33 of Hyde Park Addition No. 1, also known as 4013 Avenue D, Austin, Texas 78751. A copy of the Court's Order Declaring Boundary is attached hereto as Exhibit "1."

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Notice of Lis Pendens, filed by Mary Louise Serafine on June 19, 2012, and recorded as Instrument Number 2012097859 in the Deed of Records of Travis County, Texas, is hereby EXPUNGED.

IT IS FURTHER ORDERED that the Notice of Lis Pendens, filed by Mary Louise Serafine on June 19, 2012, and recorded as Instrument Number 2012097859 in the Deed of Records of Travis County, Texas, does not:

---

ORDER EXPUNGING NOTICE OF LIS PENDENS



004308144

Page 1 of 2



(A) constitute constructive or actual notice of any matter contained in the notice or of any matter relating to the proceeding;

(B) create any duty of inquiry in a person with respect to the property described in the notice; or

(C) affect the validity of a conveyance to a purchaser for value or of a mortgage to a lender for value.

IT IS FURTHER ORDERED that the Notice of Lis Pendens, filed by Mary Louise Serafine on June 19, 2012, and recorded as Instrument Number 2012097859 in the Deed of Records of Travis County, Texas, is not enforceable against a purchaser or lender described by purchaser for value or of a mortgage to a lender for value, regardless of whether the purchaser or lender knew of the lis pendens action.

SIGNED this _____13th_____ day of November 2015.

JUDGE PRESIDING
KARIN CRUMP

ORDER EXPUNGING NOTICE OF LIS PENDENS

# EXHIBIT "1"



Filed in The District Court
of Travis County, Texas
At _____ NOV 13 2015
Velva L. Price, District Clerk
3:37 ___.M.

CAUSE NO. D-1-GN-12-001270

| | | |
|---|---|---|
| MARY LOUISE SERAFINE<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| V. | §<br>§<br>§ | |
| ALEXANDER BLUNT, ASHLEY BLUNT,<br>SCOTT LOCKHART dba AUSTIN<br>DRAINAGE AND FOUNDATION, LLC,<br>VIKING FENCE COMPANY, LTD., and<br>VIKING GP, LLC,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | OF TRAVIS COUNTY, TEXAS<br><br><br>200th JUDICIAL DISTRICT |

## ORDER DECLARING BOUNDARY

All parties in this cause agreed to submit the contested boundary line determination to the Court after the conclusion of evidence and a final determination of the facts by a trial by jury.

On October 16, 2015, a jury of twelve agreed to each and every answer in the Court's Charge to the Jury, which found that Mary Louise Serafine take nothing by her claims against Alexander and Ashley Blunt. After review of the pleadings, the evidence submitted at trial, the trial record, the Court's Charge to the Jury, the jury's findings, Plaintiff's briefing, and the applicable law, the Court rules as follows:

The Court, through its inherent and exclusive power to settle land titles and disputes, and in response to Plaintiff's trespass to try title allegations filed in the above captioned and styled cause, FINDS that the survey of Holt Carson (herein referred to as the "Holt Carson Survey"), sealed on January 18, 2012, admitted during trial as "Blunt Exhibit 35," and attached hereto as Exhibit "A," correctly and finally establishes the boundary line between Lot 5 of Block 33 of Hyde Park Addition No. 1, also known as 4011 Avenue D, Austin, Texas 78751, and Lot 4 of Block 33 of Hyde Park Addition No. 1, also known as 4013 Avenue D, Austin, Texas 78751.

ORDER DECLARING BOUNDARY

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Holt Carson Survey, sealed on January 18, 2012 and attached hereto as Exhibit "A," correctly and finally establishes the boundary line between Lot 5 of Block 33 of Hyde Park Addition No. 1, commonly known as 4011 Avenue D, Austin, Texas 78751, and Lot 4 of Block 33 of Hyde Park Addition No. 1, commonly known as 4013 Avenue D, Austin, Texas 78751.

All relief not expressly granted herein is denied.

SIGNED this _13th_ day of November 2015.

JUDGE PRESIDING
KARIN CRUMP

ORDER DECLARING BOUNDARY

# EXHIBIT "A"



## HYDE PARK ADDITION
### Volume 1 Page 67

SCALE: 1" = 20'

— Legend —
Ⓖ ½" Iron Rod Found
⌀ ½" Iron Pipe Found (unless noted)
○ ½" Iron Rod Set with plastic cap imprinted with "Holt Carson, Inc."
◆ 60D Nail Found
—x— Chain Link Fence
—//— Wood Board Fence
— — — Overhead Utility Line
(Record Dimension)

LOT 11

LOT 12

LOT 13    LOT 21

LOT 14    LOT 20

LOT 15    BLOCK 24    LOT 19

LOT 16    LOT 18

LOT 17

WEST 41st STREET (60')

LOT 1    LOT 34

LOT 2    LOT 33

LOT 3    LOT 32

BLOCK 33

LOT 4    LOT 31

LOT 5

LOT 6

LOT 7

AVENUE D (60')

SPEEDWAY (90')

SURVEY MAP OF

LOT 3 AND LOT 4, BLOCK 33, HYDE PARK ADDITION, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 1 PAGE 67 OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS. LOCATED AT 4013 AVENUE D.

SURVEYED: January 18, 2012

BY:

Holt Carson
Registered Professional Land Surveyor No. 5166
HOLT CARSON, INC.
1904 Fortview Road
Austin, Texas 78704

WEST 40th STREET (60')

A 892016

BLU-000133

EXHIBIT D-B 35

TAB 3

Filed in The District Court
of Travis County, Texas

JAN 1 2 2016 KAH

At ___5:00 p.___ M.

Velva L. Price, District Clerk

### CAUSE NO. D-1-GN-12-001270

| | | |
|---|---|---|
| MARY LOUISE SERAFINE | § | IN THE DISTRICT COURT |
| **Plaintiff,** | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| ALEXANDER BLUNT, ASHLEY BLUNT, | § | |
| SCOTT LOCKHART dba AUSTIN | § | |
| DRAINAGE AND FOUNDATION, LLC, | § | 200th JUDICIAL DISTRICT |
| VIKING FENCE COMPANY, LTD., and | § | |
| VIKING GP, LLC, | § | |
| **Defendants.** | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

On October 13, 2015, the Court called this case for jury trial. Plaintiff Mary Louise Serafine, an attorney, appeared Pro Se and through her attorney Ray Bass. Defendants Alexander Blunt and Ashley Blunt appeared through in person and their attorney, Doran Peters, and announced ready for trial. Scott Lockhart, Austin Drainage and Foundation, LLC d/b/a Austin Drainage and Landscape Development appeared in person and through attorney, Ronald Raydon, and announced ready for trial. Viking Fence Company, Ltd. and Viking GP appeared in person and through their attorneys, Jeff D. Otto and Melissa Ackie, and announced ready for trial. The record of testimony was duly reported by Della Rothermel, the court reporter for the 250th Judicial District Court.

On October 13, 2015, the Court impaneled and swore the jury, which heard the evidence and arguments of counsel. After the close of the evidence, the Court submitted definitions, instructions, and questions to the jury as set forth in the Court's Charge. On October 16, 2015, the jury signed the Court's Charge, which the Court received, accepted, filed, and entered into the record. The parties agreed to submit the contested boundary line determination and the issue of attorney fees to the Court by post-verdict submission and hearing.





On November 13, 2015, the Court signed the Order Declaring Boundary and the Order Expunging Notice of Lis Pendens. On December 3, 2015, the Court signed the Order on Defendant Viking Fence Company, Ltd's Motion for Sanctions and the Final Judgment. The Final Judgment orders that each party shall be responsible for their respective attorney's fees, expenses and costs incurred as a result of legal representation in this case.

Plaintiff sought findings of fact and conclusions of law concerning the Court's denial of an award to plaintiff of damages and sanctions against defendants Alexander Blunt and Ashley Blunt under section 27.009 of the Civil Practice & Remedies Code. Plaintiff also requested that the Court file findings of fact and conclusions of law concerning the Court's Order Declaring Boundary and Order Expunging Notice of Lis Pendens.

In response to Plaintiff's requests, the Court issues the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On October 16, 2015, the jury made findings that the Court received, accepted, filed, and entered into the record.

2. By agreement, the Court, through its inherent and exclusive power to settle land titles and disputes, and in response to Plaintiff's trespass to try title allegations, determined the boundary of the property in dispute between lot 5 of Block 33 of Hyde Park Addition No. 1, also known as 4011 Avenue D, Austin, Texas 78751, and Lot 4 of Block 33 of Hyde Park Addition No. 1, also known as 4013 Avenue D, Austin, Texas 78751 (the "Property").

3. The jury found that Plaintiff take nothing by her four claims for adverse possession against Defendants Alexander and Ashley Blunt.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

4. Despite the jury's findings, Plaintiff urged the Court, under the doctrine of adverse possession, to determine the boundary of the Property in accordance with the boundary survey that Plaintiff offered during trial and submitted to the jury through evidence.

5. The chain-link fence along the Property existed at the time that Plaintiff purchased her property.

6. There was no evidence concerning the purpose of construction of the chain-link fence by Plaintiff's predecessor in title.

7. The chain-link fence along the Property was a casual fence.

8. The chain-link fence along the Property was on the property of Alexander Blunt and Ashley Blunt at all time relevant to this trial.

9. The railroad ties installed by Plaintiff on the property of Alexander Blunt and Ashley Blunt were temporary in nature and not permanent.

10. The method of survey by Plaintiff's expert, surveyor James Marvin Grant, was unreliable because it did not follow the "priority of calls."

11. Holt Carson, surveyor and expert witness for Defendants Alexander and Ashley Blunt, drew his survey, sealed on January 18, 2012 and identified in the Court's Order Declaring Boundary, by relying on the recorded deed of the Property in the Travis County records and the "priority of calls." Mr. Carson's method of survey was specific, detailed and definite.

12. On or about June 27, 2008, Plaintiff sent a signed letter to Defendants Alexander and Ashley Blunt expressly retracting any potential claim or demand she may have had to the Property.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

13. On April 29, 2012, Plaintiff sued Defendants Alexander and Ashley Blunt in this cause after Plaintiff expressly withdrew any potential claim or demand she may have had.

14. Justice and equity do not require that costs, fees, or expenses be awarded to Plaintiff for the dismissal of counterclaims of Defendants Alexander Blunt and Ashley Blunt under section 27.009 of the Civil Practice & Remedies Code.

15. No sanctions are necessary to deter Defendants Alexander Blunt and Ashley Blunt from bringing similar claims/counterclaims that were subject of Plaintiff's Motion to Dismiss under section 27.009 of the Civil Practice & Remedies Code.

## CONCLUSIONS OF LAW

1. Holt Carson's Survey correctly and finally establishes the boundary line between lot 5 of Block 33 of Hyde Park Addition No. 1, also known as 4011 Avenue D, Austin, Texas 78751, and Lot 4 of Block 33 of Hyde Park Addition No. 1, also known as 4013 Avenue D, Austin, Texas 78751.

2. Plaintiff failed to establish by a preponderance of the evidence the probable validity of a real property claim in this case.

3. Plaintiff failed to demonstrate that justice and equity require that costs, fees, or expenses be awarded to her.

4. Plaintiff failed to demonstrate that sanctions against Defendants Alexander Blunt and Ashley Blunt would be necessary to deter Defendants Alexander Blunt and Ashley Blunt from bringing similar claims/counterclaims that were subject of Plaintiff's Motion to Dismiss under section 27.009 of the Civil Practice & Remedies Code.

SIGNED this _12th_ day of January 2016.

_____
JUDGE PRESIDING
KARIN CRUMP

Page 4 of 4

FINDINGS OF FACT AND CONCLUSIONS OF LAW

904

TAB 4

Filed in The District Court
of Travis County, Texas

JUN 25 2015

At_____ /:25 _____ ____M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-13-004023

| | | |
|---|---|---|
| MARY LOUISE SERAFINE<br>   Plaintiff, | § § § § | IN THE DISTRICT COURT |
| V. | § § | OF TRAVIS COUNTY, TEXAS |
| | § § § | |
| VIKING FENCE COMPANY, LTD., D/B/A/<br>VIKING FENCE CO., VIKING GP, LLC<br>   Defendants. | § § § | 126th JUDICIAL DISTRICT |

## ORDER ON DEFENDANTS' PARTIAL TRADITIONAL MOTION FOR SUMMARY JUDGMENT AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

On June 23, 2015, the Court considered Defendants Viking Fence Company, Ltd., d/b/a Viking Fence Co. and Viking GP, LLC's Partial Traditional Motion for Summary Judgment and No-Evidence Motion for Summary Judgment (the "Motion"). Having reviewed the Motion, Plaintiff's Response, Defendants' Reply brief, the pleadings on file, the summary judgment evidence and objections thereto, and the arguments of counsel, the Court rules as follows:

1. **Plaintiff's Objections to Defendants' Summary Judgment Evidence:**

   a. Plaintiff's objections to the testimony of Mr. Clanin are overruled.

   b. Plaintiff's objections to the first two paragraphs of page 8 of Defendants' Motion are sustained.

   c. Plaintiff's objection to Defendants' Exhibit A is sustained.

   d. Plaintiff's objection to the testimony of Mr. Chavarria quoted at pages 18-19 of Defendants' Motion is overruled.

   e. Plaintiff's objection to the first paragraph on page 20 of Defendants' Motion is sustained.

Page 1 of 3



004090640

## 2. Defendants' Partial Traditional Motion for Summary Judgment and No-Evidence Motion for Summary Judgment:

a.  The Court DENIES Defendants' Motion regarding Plaintiff's Negligence cause of action.

b.  The Court DENIES Defendants' Motion regarding Plaintiff's Gross Negligence cause of action.

c.  The Court GRANTS Defendants' Motion regarding Plaintiff's cause of action for Negligent Hiring, Retention, Training, and Supervision. Accordingly, Plaintiff's cause of action against Defendants for Negligent Hiring, Retention, Training, and Supervision is dismissed with prejudice.

d.  The Court GRANTS Defendants' Motion regarding Plaintiff's Private Nuisance cause of action. Accordingly, Plaintiff's Private Nuisance cause of action against Defendants is dismissed with prejudice.

e.  The Court GRANTS Defendants' Motion regarding Plaintiff's Public Nuisance cause of action. Accordingly, Plaintiff's Public Nuisance cause of action against Defendants is dismissed with prejudice.

f.  The Court GRANTS Defendants' Motion regarding Plaintiff's Defective Installment of a Fence cause of action. Accordingly, Plaintiff's Defective Installment of a Fence cause of action against Defendants is dismissed with prejudice.

g.  The Court DENIES Defendants' Motion regarding Plaintiff's Conversion cause of action.

All relief not expressly granted herein is denied.

SIGNED this ___25th___ day of ___June___ , 2015.

_____
JUDGE PRESIDING

ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (SERAFINE V. VIKING FENCE)

Filed in The District Court
of Travis County, Texas

AUG 2 4 2015

At _____ 2:59 P. M.

Velva L. Price, District Clerk

TAB 5

Cause No. D-1-GN-12-001270

| | | |
|---|---|---|
| Mary Louise Serafine, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| Alexander and Ashley Blunt, | § | 200th JUDICIAL DISTRICT |
| Scott Lockhart, Austin Drainage | § | |
| and Foundation, | § | |
| Austin Drainage and | § | |
| Foundation LLC dba Austin | § | |
| Drainage and Landscape | § | TRAVIS COUNTY, TEXAS |
| Development, Defendants | | |

Cause No. D-1-GN-13-004023

| | | |
|---|---|---|
| MARY LOUISE SERAFINE, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| VIKING FENCE COMPANY, | § | |
| LTD., d/b/a/ VIKING FENCE CO., | § | 126th JUDICIAL DISTRICT |
| VIKING GP, LLC, SALVADOR | § | |
| CHAVARRIA, an individual, | § | |
| JENNIFER CHAVARRIA, an | § | |
| individual, and JAMES CLANIN, | § | |
| an individual, Defendants | § | |
| | § | TRAVIS COUNTY, TEXAS |

AGREED ORDER

CONSOLIDATING CASES AND SETTING TRIAL

36

~~Came on to be heard, on June 23, 2015, Plaintiff's Motion to Consolidate, concerning two cases. After considering the motion, and after consultation with all parties and with agreement of all parties, the Court GRANTS the motion.~~

It is ~~therefore~~ ORDERED, ADJUDGED, AND DECREED that *Serafine v. Viking Fence Company et al.*, Cause No. D-1-GN-13-004023, be and hereby is consolidated with *Serafine v. Blunt et al.*, Cause No. D-1-GN-12-001270. The Court orders the clerk to note on the docket sheets in both cases that the cases were consolidated under Cause No. D-1-GN-12-001270. So consolidated, the case shall be set for trial on October 12, 2015 and shall remain in this Court for all pre-trial, trial, and post-judgment purposes.

SIGNED on ___August 24___, 2015.

_____
The Honorable Karin Crump,
PRESIDING JUDGE

AGREED AS TO FORM

_____

Ronald Raydon



37

APPROVED AS TO FORM:


_____

Ronald Max Raydon
Law Office of Ronald Max Raydon
1718 Fry Road, Suite 450
Houston, Texas 77084
Telephone 281-398-6402, facsimile 281-398-6403
Email ron@raydonlaw.com
Attorney For Scott Lockhart and Austin Drainage & Foundation, LLC

3

APPROVED AS TO FORM:

_Melissa J Ackie_

Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500, Austin, Texas 78701
Telephone: 512-703-8200, facsimile 512-708-8777
Jeff B. Otto, Esq., email: jotto@thompsoncoe.com
Melissa J Ackie, Esq., email: mackie@thompsoncoe com
Attorneys for Defendants Viking Fence Company, Ltd.d/b/a Viking Fence Co.,
Viking GP, LLC, Salvador Chavarria, Jennifer Chavarria, and James R. Clanin

APPROVED AS TO FORM:

_See page 2_

Doran D. Peters
HAJJAR PETERS LLP
3144 Bee Caves Road
Austin, Texas   78746
Telephone 512-637-4956,  facsimile (512) 637-4958
Email  dpeters@legalstrategy.com
Attorneys for Alexander and Ashley Blunt

5

APPROVED AS TO FORM:

*M. L. Serafine*

Mary Louise Serafine, State Bar No. 24048301
P.O. Box 4342
Austin, Texas 78765
Telephone: 512- 220-5452
Email: mlserafine@gmail.com

Ray Bass, Attorney
SBN 01884000
120 West 8th Street
Georgetown, Texas 78626
Telephone 512-863-8788, Facsimile 512-869-5090
Email: ray@raybass.com
Attorneys for Plaintiff

6

**Filed in The District Court
of Travis County, Texas**

**OCT 1 6 2015**

At ___4:10___ P.M.

Velva L. Price, District Clerk

TAB 6

## CAUSE NO. D-1-GN-12-001270

| | | |
|---|---|---|
| MARY LOUISE SERAFINE | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| ALEXANDER BLUNT, ASHLEY BLUNT, | § | |
| SCOTT LOCKHART dba AUSTIN | § | |
| DRAINAGE AND FOUNDATION, LLC | § | 200th JUDICIAL DISTRICT |
| dba AUSTIN DRAINAGE | § | |
| AND LANDSCAPE DEVELOPMENT, | § | |
| VIKING FENCE COMPANY, LTD., AND | § | |
| VIKING GP, LLC | § | |
| | § | |
| *Defendants* | § | TRAVIS COUNTY, TEXAS |

## ORDER ON DEFENDANTS AUSTIN DRAINAGE AND FOUNDATION, LLC AND SCOTT LOCKHART'S MOTION FOR DIRECTED VERDICT

On the 15th day of October, 2015, Defendants Scott Lockhart and Austin Drainage and Foundation, LLC, after Plaintiff presented all of her evidence and announced that she rested, orally moved for directed verdict. The Court, after reviewing same and after hearing presentation of argument and evidence, rules as follows:

Defendant Scott Lockhart moved for directed verdict as to all claims against him as Plaintiff has failed to provide any evidence that he at any time acted in his individual capacity. The Court GRANTED Defendant Scott Lockhart's Motion as to all causes of action. IT IS THEREFORE ORDERED that Plaintiff's claims against Defendant Scott Lockhart in his individual capacity are dismissed and Plaintiff take nothing from Defendant Scott Lockhart. All taxable costs are assessed against Plaintiff.

Defendant Austin Drainage and Foundation, LLC moved for directed verdict on the following causes of action and the Court ruled as follows:

Order on Directed Verdict





004265897

92

1.   Negligence                                      Granted _____ Denied ___X___

2.   Negligence Per Se                               Granted ___X___ Denied _____

3.   Lateral Support                                 Granted ___X___ Denied _____

4.   Nuisance                                        Granted _____ Denied ___X___

5.   Trespass                                        Granted ___X___ Denied _____

6.   Exemplary Damages/Gross Negligence              Granted ___X___ Denied _____

IT IS THEREFORE ORDERED that Plaintiff's causes of action for Negligence Per Se,

Lateral Support, Trespass, and Exemplary Damages/Gross Negligence are hereby dismissed with

prejudice.

SIGNED on this ___ day of October, 2015.

_____
JUDGE KARIN CRUMP

Filed in The District Court
of Travis County, Texas

**SEP 25 2015**

At_____4:12 p m.

Velva L. Price, District Clerk

TAB 7

**CAUSE NO. D-1-GN-12-001270**

| | | |
|---|---|---|
| MARY LOUISE SERAFINE | § | IN THE DISTRICT COURT |
|    Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| ALEXANDER BLUNT, ASHLEY BLUNT, | § | |
| SCOTT LOCKHART dba AUSTIN | § | |
| DRAINAGE AND FOUNDATION, LLC, | § | |
| VIKING FENCE COMPANY, LTD., and | § | |
| VIKING GP, LLC, | § | **200th JUDICIAL DISTRICT** |
|    Defendants. | § | |

## ORDER ON DEFENDANTS VIKING FENCE COMPANY, LTD. D/B/A VIKING FENCE CO. AND VIKING GP, LLC'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT SHEILA T. HILTS

On September 22, 2015, the Court considered Defendants Viking Fence, Ltd. And Viking GP, LLC's Motion to Exclude Plaintiff's Expert Sheila T. Hilts (the "Motion"). After considering the Motion, Plaintiff's response, the arguments of counsel, and applicable law, the Court is of the opinion that the Motion should be and is hereby GRANTED.

IT IS THEREFORE ORDERED that Defendants Viking Fence, Ltd. And Viking GP, LLC's Motion to Exclude Plaintiff's Expert Sheila T. Hilts is GRANTED. Accordingly, Ms. Sheila T. Hilts's testimony is excluded from trial.

All relief not expressly granted herein is denied.

SIGNED this 25th day of September 2015.

JUDGE PRESIDING
KARIN CRUMP


004232245

484

TAB 8



**KARIN CRUMP**
Judge
(512) 854-9312

**VASU BEHARA**
Staff Attorney
(512) 854-9903

**GRACE MCGEE**
Court Operations Officer
(512) 854-4807

**250TH DISTRICT COURT**
HEMAN MARION SWEATT
TRAVIS COUNTY COURTHOUSE
P. O. BOX 1748
AUSTIN, TEXAS 78767
FAX (512) 854-2469

**DELLA ROTHERMEL**
Official Reporter
(512) 854-9321

**ELIZABETH MEDINA**
Court Clerk
(512) 854-9010

October 9, 2015

Mr. Jeff Otto
Ms. Melissa J. Ackie
Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
    *VIA E-MAIL: mackie@thompsoncoe.com*

Mr. Doran Peters
Hajjar Peters LLP
3144 Bee Caves Road
Austin, Texas 78746
    *VIA E-MAIL: service@legalstrategy.com*

Mr. Ray Bass
120 West 8th Street
Georgetown, Texas 78626
    *VIA E-MAIL: ray@raybass.com*

Ms. Mary Louise Serafine
Attorney and Counselor at Law
P.O. Box 4342
Austin, Texas 78765
    *VIA E-MAIL: mlserafine@gmail.com*

Mr. Ronald M. Raydon
The Raydon Firm, LLC
One Riverway, Suite 1747
Houston, Texas 77056
    *VIA E-MAIL: ron@raydonlaw.com*

Re: Cause No. D-1-GN-12-001270; *Mary Louise Serafine vs. Viking Fence Company, Ltd. d/b/a Viking Fence Co., et al.;* in the 126th Judicial District, Travis County, Texas.

Dear Counsel:

The Court has reviewed the parties' respective exhibit lists.

The Court FINDS that Plaintiff's exhibit list is insufficient and does not comply with the Travis County Standing Order requiring that the exhibit list identify documents reasonably anticipated to be offered in evidence. Plaintiff is therefore ORDERED to identify no more than 100 exhibits to be introduced at trial in the following format on or before 2:00 p.m. on October 9, 2015. Any exhibit that is not identified in the format below will not be introduced at trial.



004251956



558

**Case Name/Number:  D-1-GN- 12-001270**

| Exhibit No. | Description | Reference | Offered | Objection | Admitted/Denied |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Pursuant to the Travis County Local Rules, the parties are reminded to stipulate, to the extent possible, to the authenticity and admissibility of all exhibits to be used at trial.

Sincerely,

Karin Crump
Judge, 250th District Court
Travis County, Texas

KC/gm

Original:  Velva L. Price, District Clerk

559

TAB 9

Filed in The District Court
of Travis County, Texas

JUL 2 8 2016

At _____ 3:15 ___ P.M.

Velva L. Price, District Clerk

CAUSE NO. D-1-GN-12-001270

| | | |
|---|---|---|
| MARY LOUISE SERAFINE, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| ALEXANDER BLUNT, ASHLEY | § | TRAVIS COUNTY, TEXAS |
| BLUNT, SCOTT LOCKHART dba | § | |
| AUSTIN DRAINAGE AND | § | |
| FOUNDATION, LLC, VIKING FENCE | § | |
| COMPANY, LTD., and VIKING GP, | § | |
| LLC., | § | |
| | § | |
| *Defendants.* | § | 200th JUDICIAL DISTRICT |

## JUDGE'S BILL OF EXCEPTION

July 7, 2016,

On ~~this day~~, the Court considered Plaintiff Mary Louise Serafine's First Amended Formal Bill of Exception. Having considered the First Amended Formal Bill of Exception, the Response, the Reply, and the arguments of counsel, as well as all other papers properly on file in this matter, the Court REFUSED Plaintiff's First Amended Formal Bill of Exception[1] and hereby issues the following Judge's Bill of Exception pursuant to Texas Rule of Appellate Procedure 33.2(c)(2)(C). In Court's opinion, the following accurately reflects the proceedings in the trial court:

### Exception A: Serafine's Rebuttal Testimony

**Judge's Bill of Exception**: Serafine requested to offer rebuttal testimony that she made repairs to and/or remodeled portions of her home in 2004 and 2005, in attempt to rebut the testimony of Nils Hanson that her home was dilapidated. The Court exercised its discretion to exclude this evidence because it was beyond the scope of proper rebuttal testimony.

---

[1] After Plaintiff Serafine would not agree to the corrections suggested by the Court pursuant to Texas Rule of Appellate Procedure 33.2(c)(2)(B), the Court returned the bill to Serafine with the Court's written refusal on it. *See* Tex. R. App. P. 33.2 (setting forth the procedure governing the contents of a bill of exception).

 

**Exception B: Serafine's Exhibit 106 (280 pages)**

**Judge's Bill of Exception**: Serafine requested to offer the entirety of Plaintiff's Exhibit 106 (a 280-page document) into the record for no specific purpose. The Court exercised its discretion to exclude the evidence but allowed the entirety of Exhibit 106 to be included as an offer of proof for the appellate court to review in connection with that evidentiary ruling. Thereafter, Serafine's counsel stated that some, unidentified portion of Exhibit 106 would support Serafine's rebuttal testimony regarding home repairs, but did not make a specific offer of those alleged portions of the exhibit. The Court maintained its decision to exclude the evidence.

**Exception C: Serafine's Ex. 2A—Curbside Photo with Antique Car**

**Judge's Bill of Exception**: After originally offering Exhibit 2A for admission into evidence, Serafine's counsel withdrew the offer and stated his understanding that Exhibit 2A would not be admitted. The Court invited Serafine to make an offer of proof regarding evidence she felt had been improperly excluded. Serafine made no attempt to re-offer Exhibit 2A or testimony related to it as part of an offer of proof or otherwise.

**Exception D: Additional Evidentiary Hearing on Boundary / Testimony of James Grant**

**Judge's Bill of Exception**: Serafine and all Defendants agreed in open court that the boundary dispute would be resolved by the trial court as fact-finder rather than the jury. Serafine and all Defendants had a full opportunity to present testimony and exhibits related to the boundary dispute through examination and cross-examination of their respective experts and the parties. Serafine made no request before the return of the jury's verdict to re-open the evidence to present additional, rebuttal testimony of her expert surveyor, James Grant, on the controversial matter of the proper boundary.

**Exceptions E-F: Evidence Related to Civil Practice & Remedies Code Chapter 27 Relief**

**Judge's Bill of Exception**: The Court cannot determine from Exception E what testimony or other evidence Serafine claims was improperly excluded from the record of the September 25, 2015 hearing. None of the documents attached as Exhibit E(b)-(i) were offered or ruled upon at that hearing. The documents attached as Exhibit E(a) is already included in the record for offer of proof purposes, and the documents attached as Exhibit F(a)-(c) are otherwise already included in the record.

**Exception G: General Complaint Regarding Trial Time and Denial of Continuance**

**Judge's Bill of Exception**: Serafine twice moved for a continuance of the trial and for more time than the ten hours the Court allotted her to present her case. The Court exercised its inherent authority and wide discretion to control its docket and refuse Serafine's motions for continuance and overrule her objections to the ten-hour limit imposed by the Court on Serafine's presentation of her case.

**Exception H: Serafine's Exhibit 3A—James Grant's Metes and Bounds Description**

**Judge's Bill of Exception**: Serafine's request is refused because it is duplicative of evidence already included in the record via a bill of exception Serafine made during trial.

**Exception I: Evidence Regarding Viking's Sanctions Order**

**Judge's Bill of Exception**: Serafine's request is refused. She did not offer the documents attached as Exhibit I into evidence at trial, and this Court did not rule on the admissibility of that evidence. The evidence therefore cannot be added into the record now via Serafine's formal bill of exception.

**Exception J: Serafine's Ex. 105 —Handwritten Estimates of Damages and Fees**

**Judge's Bill of Exception**: Serafine's request is refused. Exhibit J is already contained in Volume 17 of the Reporter's Record in this case by way of an offer of proof made at trial.

Signed on July 28, 2016.

_____
HONORABLE KARIN CRUMP

450

TAB 10

Filed
12 November 7 A9:28
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-12-001270

## NUMBER D1GN12001270

| | | |
|---|---|---|
| **MARY LOUISE SERAFINE** | § | **IN THE DISTRICT COURT** |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ALEXANDER BLUNT, ASHLEY** | § | **200TH JUDICIAL DISTRICT** |
| **BLUNT, SCOTT LOCKHART, AND** | § | |
| **AUSTIN DRAINAGE AND** | § | |
| **FOUNDATION LLC d/b/a AUSTIN** | § | |
| **DRAINAGE AND LANDSCAPE** | § | |
| **DEVELOPMENT,** | § | **TRAVIS COUNTY, TEXAS** |
| **Defendants** | § | |

## PLAINTIFF'S FOURTH AMENDED PETITION

TO THE JUDGE AND JURY OF SAID COURT:

Comes now Plaintiff Mary Louise Serafine and files her Fourth Amended Petition, and in support of all allegations contained herein, would show the Court:

### I.
### Discovery

Plaintiff elects Level 3 discovery pursuant to Texas Rule of Civil Procedure 190.4. A Scheduling Order is in place.

### II.
### Parties

Plaintiff Mary Louise Serafine has owned for 35 years and resides permanently in the Craftsman bungalow at 4011 Avenue D in Austin, Texas. She is among the longest-standing owners in the Hyde Park Historic District.

Defendants Alexander and Ashley Blunt are a married couple and have been married at all relevant times. They reside next door to Plaintiff at 4013 Avenue D in Austin, Texas. Mr. Blunt purchased the property on or about October 29, 2009. The Blunts have been served and have appeared in this matter.

15

Defendant Austin Drainage and Foundation LLC d/b/a Austin Drainage and Landscape Development is a Texas Limited Liability Company with the business address PO Box 4511, Austin, TX 78765-4511. Austin Drainage and Foundation LLC was served and has appeared in this action.

Defendant Scott Lockhart does business in Travis County and is a contractor hired by Mr. and Mrs. Blunt. Mr. Lockhart holds himself out as a soil moisture expert and in the past as a foundation expert. He is not a licensed engineer. Mr. Lockhart appears to be the sole owner of Austin Drainage and Foundation LLC (collectively, the "Lockhart Defendants").

## III.
### Jurisdiction and Venue

The Court has jurisdiction over this matter and venue is proper in Travis County because the named parties reside in or do business in Travis County, Texas, and the real property at issue and affected by this case is located in Travis County, Texas.

## IV.
### Factual Allegations

*Title by Limitations*

1.        In 1977 Plaintiff purchased the land and bungalow at Lots 5 and 6, Block 33 of the Hyde Park Addition No. 1 in Travis County, Texas, also known as 4011 Avenue D in Austin, Texas. At all times since, and up to and including the present, for a period of 35 years, Plaintiff has owned, used, enjoyed, possessed, and timely paid all taxes on said land and improvements. Plaintiff's Deed of Trust and Warranty Deed with Vendor's Lien were duly filed in the property records of Travis County, Texas shortly after they were executed in 1977. The Release of Lien was duly filed in 1987 when Plaintiff paid off her loan.

2.        Upon purchasing her property in 1977, then and there, Plaintiff took and treated as her own all of the land enclosed by the then-existing fencing that, taken together, completely enclosed Plaintiff's back yard, including the chain link fence that marked the boundary between Lot 5 (Plaintiff's) and the adjacent Lot 4 (now owned by Defendant Blunts). By means of a gate that still exists today and that then latched securely against the chain link fence, Plaintiff excluded all others from entry into her completely-fenced backyard, except by her permission. The chain link fence and its gate were installed by Plaintiff's predecessors in interest.

3.        In addition, upon purchasing her property in 1977, then and there, Plaintiff took and treated as her own all of the then-existing driveway on her property, including

the portion of it that extended onto Lot 4. In or about 1977, Plaintiff purchased and installed, and embedded into the ground five (5) railroad ties, weighing about 200 pounds each, to mark permanently the boundary separating her driveway (on Lot 5) from the front yard of the adjacent Lot 4 (now owned by Defendant Blunts). At that time, then and there, Plaintiff claimed and treated as her own the all of the land under and marked off by the railroad ties. Plaintiff placed the railroad ties in a manner consistent with the curb cuts at the entrance to her driveway and the backyard, chain link fence.

4. In simple words, the boundary marked off by the old chain link fence and the railroad ties separated Plaintiff's Lot 5 from the adjacent Lot 4, and this boundary was, by all relevant persons, considered to be and was treated as the boundary of Plaintiff's lot, for about 35 years. During this time, Plaintiff used, enjoyed, and cultivated the property she now claims.

5. Thus, for about 35 years, Plaintiff has owned and possessed all of Lots 5 and 6, including that strip of land—approximately 120 square feet—that she now claims in this action. That strip of land is described at Page One of Exhibit A, entitled "Metes and Bounds Description" (hereinafter, the "Strip of Land").

6. For about 35 years, Plaintiff has been, under claim of right and under title or color of title, in actual, visible, open, continuous, notorious, exclusive, and peaceable possession of said Strip of Land in a manner that is adverse and hostile to the claims of any other. Even prior to Plaintiff's adverse possession of said Strip of Land, Plaintiff's predecessors in interest had held the same Strip of Land.

7. Page Two of Exhibit A, entitled "Occupied Line Survey," shows all of Plaintiff's property, Lots 5 and 6, including the Strip of Land, which additionally is shown in detail at the right-hand side of said page.

8. Defendants Mr. and Mrs. Blunt, and all of their predecessors in interest acknowledged and acquiesced to the fact that Plaintiff owned the Strip of Land marked by the chain link fence.

9. Under the applicable three-year statute of limitations, Plaintiff had acquired good and sufficient title to the Strip of Land by adverse possession and such title had vested in Plaintiff by 1980.

10. Under the applicable five-year statute of limitations, Plaintiff had acquired good and sufficient title to the Strip of Land by adverse possession and such title had vested in Plaintiff by 1982

11. Under the applicable ten-year statute of limitations, Plaintiff had acquired good and sufficient title to the Strip of Land by adverse possession and such title had

vested in Plaintiff by 1987.

12.     Under the applicable 25-year statute of limitations, Plaintiff had acquired good and sufficient title to the Strip of Land by adverse possession and such title had vested in Plaintiff by 2002.

13.     At no time ever, including up to the present time, did anyone, including Defendants Mr. and Mrs. Blunt, bring a trespass to try title action, or any other action or claim, to recover any land from Plaintiff.

14.     At no time ever did Defendants Mr. and Mrs. Blunt or any of their predecessors offer or give Plaintiff any license, easement, permission, or other right to use or occupy the Strip of Land.

15.     To the extent, if any, that Defendants Mr. and Mrs. Blunt could have raised any objection to Plaintiff's possession—which they did not—the statute of limitations within which they could have done so has passed.

16.     Defendants Mr. and Mrs. Blunt had had actual knowledge of Plaintiff's possession of and claim on the Strip of Land for at least 4 or 5 years before they purchased their lot, because the Blunts had leased and lived as tenants on the lot adjacent to Plaintiff's for 4 or 5 years prior to purchasing it.

*Construction Damage*

17.     Beginning in or about March 2012, Defendants planned a major construction project that involved digging a long, wide, and deep trench that would encircle 3 sides of their house (encroaching in part on Plaintiff's land), with the trench then cutting at an angle across the land on the fourth (front) side of their house, and exiting out into the street. Defendants dug most of the trench, plus a very deep "sump pit" near the back (southeast) corner of the Blunts' house, immediately near Plaintiff's land. Based on Defendant Blunts' and their attorney's information to Plaintiff in this lawsuit, Defendants intend to finish digging the remaining 43 feet of trench on and abutting Plaintiff's driveway, at a location parallel to and only 10 feet from the north wall of Plaintiff's house. During this lawsuit, Defendants began to dig about 14 feet of that trench.

18.     Deep into the trenches around the Blunts' house, Defendants installed an underground water-collection and water-transporting apparatus, run by an electrical pump, that is completely invisible today. In fact Defendant Blunts have built a deck or patio over most of it.

19.     Defendants' construction harmed Plaintiff's property in a continuing and

permanent manner because it removed soil, created underground voids, did and continues to remove ground and surface moisture in a manner harmful to nearby land and structures, and, at the same time, created a flood risk and other risks from long-term malfunction, deterioration, and lack of maintenance of the system. A flood risk, in particular, arises from the sump pit.

20.      Among other factors, during periods when the system works as designed, it will dry out the soil within a zone of influence that encompasses at least some of the Plaintiff's property. This has caused and will cause, in all reasonable engineering probability, changes in the land and soil that, now and over time, will interfere with lateral support, will diminish the weight-bearing capacity of the soil, will cause movement of the soil around Plaintiff's foundation, and, in so doing, will damage Plaintiff's land, house, trees, and a small building on her property she intended to turn into an office.

21.      The Lockhart Defendants sold the system to the Blunts, performed the work, and designed and installed the system.

22.      Regardless of whether Defendants' construction is, wholly or in part, on or abutting Plaintiff's land, Defendants' project has caused injury and also poses an unreasonable risk of future, irreparable injury to Plaintiff's land, trees, house, and small building.

23.      As a result of the harm and potential harm—which Plaintiff will disclose and will be required to disclose to any buyer—Plaintiff has suffered great diminution in the value of her property. In addition, as a result of the Historic District zoning, Plaintiff is greatly restricted in removing, replacing, or altering the house.

24.      In this endeavor, Defendants had no plans, no specs, no drawings, no analysis of the clay soil in the area, and no competent engineering input or supervision.

25.      Defendant Lockhart, by virtue of his experience and expertise as a contractor, and for other reasons, is not a mere instrumentality of the Blunts, but rather had an independent duty to Plaintiff. He also acquired a duty to Plaintiff in the course of his conduct toward and assurances to her, before the work was started.

26.      The harm done to Plaintiff's property is determinable and predictable at this time, and the Court should award prospective damages.

19

# V.
## Cause of Action Against Mr. and Mrs. Blunt
## Trespass to Try Title and Title by Limitations

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

In December, 2011, Defendant Blunts wrongfully constructed a fence in Plaintiff's back yard that permanently trespassed upon and encroached upon Plaintiff's above-described Strip of Land, and wrongfully dispossessed Plaintiff of the same. The Blunts' new fence mostly enclosed onto their land a large pecan tree that previously had been entirely on Plaintiff's land and was therefore Plaintiff's. Defendant Blunts are now in unlawful possession of Plaintiff's land, and the Blunts' fence is hostile to and constitutes a cloud on Plaintiff's title.Plaintiff has brought this action to recover her land within the applicable statute of limitations.

# VI.
## Cause of Action Against Mr. and Mrs. Blunt
## Fraud and Fraud by Non-Disclosure

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

On or about October 29, 2009, Mr. Blunt, or Mr. and Mrs. Blunt, purchased the property at 4013 Avenue D, adjacent to Plaintiff's. At that time, Plaintiff was unaware of their purchase. At all relevant times, Defendant Blunts knew of, acknowledged, and acquiesced to Plaintiff's claim to the Strip of Land. On Sunday, December 11, 2011, at about 4:30 p.m., Mr. Blunt phoned Plaintiff and told her that he intended to install a new fence early the next morning. Mr. Blunt placed the call in order to generate the appearance of Plaintiff's consent, and for this purpose he audio-recorded the call. Mr. Blunt assured Plaintiff that there would be no encroachment onto her land, and made other assurances.

In fact, Mr. Blunt's statement was intentionally false and intentionally failed to disclose material facts to Plaintiff that he had a duty to disclose—namely, that the Blunts intended to construct a fence on Plaintiff's Strip of Land. As the Blunts knew and intended, Plaintiff remained ignorant of the true facts, did not have an equal opportunity to discover the facts, and did not have time to take lawful action that would have protected her property. That was exactly what Mr. Blunt intended to accomplish— to prevent Plaintiff from taking action or to induce Plaintiff to refrain from taking action to protect her property. The facts were material in that, if Plaintiff had known the truth about Defendants' intentions, she would have taken lawful steps to prevent construction

of the fence on her land and would have immediately moved to adjudicate the boundary. Instead, what the Blunts had long declined to determine peaceably and lawfully, they sought now to accomplish by deception. As a result, Plaintiff was injured and was forced, at great expense, to bring this lawsuit.

Thereafter Plaintiff sent letters to the Blunts in December and March that were never answered.

## VII.
## Cause of Action Against Mr. and Mrs. Blunt
## Agreed Boundary

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

In the alternative, Plaintiff pleads that the boundary marked off by the old chain link fence and the railroad ties separating Plaintiff's Lot 5 from the adjacent Lot 4 represented an agreed boundary. Over many years, there has been uncertainty as to the true boundary line between Lot 5 (Plaintiff's) and Lot 4 (now owned by the Blunts). Nevertheless, over decades, the owners of these lots agreed on and acted as though the boundary existed along Plaintiff's railroad ties and the old chain link fence. This boundary line was affirmed by the respective owners of those lots for many decades. Under the agreed-boundary doctrine, that boundary should now be formalized by the Court, and Plaintiff should have title to the Strip of Land.

## VIII.
## Cause of Action Against Mr. and Mrs. Blunt
## Easement

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

In the alternative, Plaintiff claims an easement by implication, easement by prescription, or other easement to which Plaintiff may be entitled, in connection with the Strip of Land.

21

## IX.
## Cause of Action Against Mr. and Mrs. Blunt
## Conversion

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

Defendants Mr. and Mrs. Blunt, themselves or through their agents, cut off and tore out a part of Plaintiff's wood fence at the back of her yard that separates her yard from the alley.

## X.
## Cause of Action Against All Defendants
## Negligence

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

All defendants had a duty to Plaintiff to exercise reasonable care in planning and carrying out their construction without injury to Plaintiff's property and property value. Defendants knew or should have known that the underground construction project they planned, implemented, and are still planning to implement, would damage Plaintiff's land, house, and trees. Defendants acted negligently and, as a result and cause of their negligence, Plaintiff has been damaged.

## XI.
## Cause of Action Against Lockhart Defendants
## Negligence Per Se (Unauthorized Practice of Engineering)

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

The Lockhart Defendants had a duty to Plaintiff to exercise reasonable care in planning and carrying out their construction without injury to Plaintiff's property and property value. Under the Texas Engineering Practice Act, Occupations Code sections 1001.001 et seq., the Lockhart Defendants, or one of them, was engaged in the unauthorized practice of engineering. Among other reasons, the Lockhart Defendants engaged in planning the use or alteration of land or water, or the design or analysis of works or systems for the use or alteration of land or water, and such action by the Lockhart Defendant required an engineering license, which none of them had. By law, the Lockhart Defendants acted negligently. As a direct result and cause, Plaintiff sustained and continues to suffer injury to her property and property value.

## XII.
### Cause of Action Against Lockhart Defendants
### Negligence Per Se (Unauthorized Practice of Landscape Architecture)

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

The Lockhart Defendants had a duty to Plaintiff to exercise reasonable care in planning and carrying out their construction without injury to Plaintiff's property and property value. Under the Texas Occupations Code sections 1051.001 et seq., which governs landscape architects, the Lockhart Defendants, or one of them, was engaged in the unauthorized practice of landscape architecture. Among other reasons, the Lockhart Defendants engaged in landscape development involving environmental and physical considerations related to land use and nearby buildings, and involved landscape grading and drainage. By law, the Lockhart Defendants acted negligently. As a direct result and cause, Plaintiff sustained and continues to suffer injury to her property and property value.

## XIII.
### Cause of Action Against Mr. and Mrs. Blfunt
### Interference with Lateral Support

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

Plaintiff has and had an absolute right to lateral support of her land. Defendant Blunts interfered with Plaintiff's lateral support by digging a trench, approximately 14 feet long, only a few inches away from her land, by digging a deep sump pit only a few feet from her land, and by intending and threatening to dig a trench that will stretch for 43 feet on and abutting Plaintiff's unpaved driveway.

## XIV.
### Cause of Action Against Mr. and Mrs. Blfunt
### Violation of Water Code section 11.086

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

Defendants, jointly and separately, are strictly liable to Plaintiff for diverting and impounding the natural flow of surface water—and continuing the same—

in a manner that has damaged Plaintiff's property by overflow.

## XV.
## Cause of Action against Defendants Mr. and Mrs. Blunt
## Negligent Hiring

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

As adjoining landowners to their immediate neighbors, Defendant Blunts had a duty to exercise reasonable care in planning and carrying out their construction without injury to the property and property values of others. Defendant Blunts knew or should have known that the project they were about to undertake required design and supervision by a licensed engineer. In hiring the Lockhart Defendants, none of whom were licensed engineers, the Blunts breached that duty, and Plaintiff was thereby damaged as a result.

## XVI.
## Cause of Action Against All Defendants
## Permanent or Temporary Nuisance

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

Defendants' actions were and, if not prevented, will be, abnormal under the circumstances. They interfere with Plaintiff's use and enjoyment of her property in a manner that is substantial, permanent, and continuing because, in addition to future damage, Plaintiff is forced continuously to anticipate and monitor the slow accretion of damage to her land, house, and trees. Plaintiff's monitoring of her land and structures will be costly to her, requiring professional engineering measurements and studies to document the current condition of the house and land, and further to document changes in those measurements and studies on a regular basis going forward.

## XVII.
## Cause of Action Against All Defendants
## Trespass

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

Defendants entered, and caused or encouraged others to enter, Plaintiff's property in a manner that was intentional, physical, and voluntary, without justification or Plaintiff's permission, thereby interfering with Plaintiff's possessory interest. Additionally, Defendants Mr. and Mrs. Blunt, by the erection of their fence, have physically, intentionally, and voluntarily entered upon Plaintiff's land, without justification and without Plaintiff's permission, constituting an invasion of Plaintiff's possessory interest in her land.


## XVIII.
## Cause of Action Against All Defendants
## Equitable Relief

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

The Court should issue a prohibitory injunction to enjoin the Blunts from the future, additional trenching they have threatened, and installation thereon of additional, underground moisture-removal apparatus, on and abutting Plaintiff's driveway.

The Court should issue a mandatory injunction requiring the Blunts to take steps to prevent further damage to Plaintiff's trees.

Concerning Plaintiff's American Elm tree, the roots of which were cut by the Blunts, and the branches of which mostly overhang the roof of the Blunts' house, Plaintiff disclaims liability for any future damage to the Blunts' or their successors as a result of the tree becoming destabilized.

Plaintiff's injury will be irreparable because once soil is disturbed, a house "shifts," or a tree dies, the same cannot reasonably be "put back" in the same state or position it once occupied.

The benefit of issuing the injunctions requested by Plaintiff will outweigh any harm to Defendants and there will be no harm to the public. Thus Plaintiff is entitled to injunctive relief.

The Court should issue any other mandatory or prohibitory injunction necessary to prevent additional future harm to any of Plaintiff's property.

# XIX.
## Cause of Action Against All Defendants
## Exemplary Damages

All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

Defendants, jointly or separately, throughout the events described herein, acted in a manner that was reckless, willful, deceptive, and without regard to Plaintiff.

# XX.
## Measure of Damages and Plea for Special Damages

As a result of the conduct described above, Plaintiff Mary Louise Serafine has suffered and will continue to suffer monetary damages unless remediation efforts are undertaken. Specifically, she has suffered damages in the form of the costs that must be expended to mitigate or mediate the moisture loss to her property. According to an licensed professional engineer who she has been required to retain, such a remediation/mitigation is probably possible, but it would cost at least $82,522.00.

Plaintiff Serafine has also suffered stigma damages. Specifically, her real property has suffered a diminution in value whether or not the remediation is performed and successful. If remediation is performed and successful, Serafine's damages (including the costs of remediation) amount to at least $164,522.00. If remediation is not possible, Serafine's damages amount to at least $196,800.00.

Plaintiff has suffered additional monetary damages in connection with additional work that will now be necessary to create a deeper foundation for a small building on her property which she intends to convert into an office.

The land and water alterations completed at the Blunts' property, which was designed to permanently alter the water drainage patterns between these too extremely close houses, are a permanent harm to Serafine's house, and they will cause it a diminution in value whatever happens going forward.

# XXI.
## Conditions Precedent

In connection with all of the foregoing, all conditions precedent have been performed or have occurred.

# PRAYER FOR RELIEZ

WHEREFORE, Plaintiff prays, upon final trial, that she be awarded judgment against Defendants for all causes of action pled above, and all other causes of action that may be proved at trial; and that the Court award to Plaintiff:

1. record title to the Strip of Land;

2. monetary damages;

3. special damages, including costs of remediation and for stigma and diminution in market value; mandatory and prohibitive injunctive relief;

4. costs of court;

5. attorneys' fees under CPRC 16.034 and under equity prejudgment and postjudgment interest;

6. exemplary and punitive damages; and

7. all other relief in law and equity to which Plaintiff may be entitled.

RESPECTFULLY SUBMITTED

Ray Bass, Attorney
SBN 01884000

120 West 8th Street
Georgetown, Texas 78626
Tel:    512-863-8788
Fax:    512-869-5090

Email: ray@raybass.com

ATTORNEY FOR PLAINTIFF

27

Plaintiff,                                    §
v.                                            §
                                              §        200th JUDICIAL DISTRICT
ALEXANDER AND ASHLEY BLUNT,
SCOTT LOCKHART, AND AUSTIN
DRAINAGE AND FOUNDATION LLC                   §
d/b/a AUSTIN DRAINAGE AND
LANDSCAPE DEVELOPMENT,
        Defendants.                           §        TRAVIS COUNTY, TEXAS


## DECLARATION AND VERIFICATION OF PLAINTIFF MARY LOUISE SERAFINE


My name is Mary Louise Serafine, I am over the age of 18, and my address is 4011 Avenue D in Austin, Texas 78751.

I am of sound mind and capable of making this declaration. I have read the foregoing document, PLAINTIFF'S FOURTH AMENDED PETITION.

I declare under penalty of perjury that the facts stated therein are true and correct.

Executed in Travis County, Texas on November 6, 2012.


_M. L. Serafine_____

Mary Louise Serafine

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S FOURTH AMENDED PETITION has been served via the method indicated below, pursuant to the Texas Rules of Civil Procedure 21 and 21a, to the person(s) noted below on this, the 7th day of November, 2012.

By: _Ray Bass_____
Ray Bass

Doran D. Peters
HAJJAR, SUTHERLAND, PETERS & WASHMON, LLP
1205 Rio Grande Street
Austin, Texas 78701
*Via facsimile (512) 637-4958*


Mary Schaerdel Dietz
Cox Smith Matthews, Inc.
111 Congress Avenue, Suite 2800
Austin, Texas 78703
*Via facsimile (512) 703-6399*


Ronald Max Raydon
Law Office of Ronald Max Raydon
1718 Fry Road, Suite 450
Houston, Texas 77084
*Via facsimile (281) 398-6403*

TAB 11

2/10/2015 3:45:54 PM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-13-004023**

Cause No. ~~D-1-GN-13-004023~~

| | | |
|---|---|---|
| MARY LOUISE SERAFINE, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 126th JUDICIAL DISTRICT |
| VIKING FENCE COMPANY, | § | |
| LTD., d/b/a/ VIKING FENCE | § | |
| CO., | § | |
| VIKING GP, LLC, SALVADOR | § | TRAVIS COUNTY, TEXAS |
| CHAVARRIA, an individual, | | |
| JENNIFER CHAVARRIA, an | | |
| individual, and JAMES CLANIN, | | |
| an individual, | | |
| Defendants | | |

## THIRD AMENDED PETITION

TO THE HONORABLE COURT:

Comes now Plaintiff Mary Louise Serafine and, files this Third Amended Petition, and in support thereof would show the Court:

1. A Level 3 Docket Control Order already governs this case.

### Parties

*Parties yet to be served:*

2. Defendants Salvador Chavarria and Jennifer Chavarria, a married couple, are individuals who own some or all of Viking GP and/or Viking Fence Company, Ltd. They have yet to be served in this case. They may likely be served at their place of business at 9602 Gray Blvd.or 9601 Beck Circle, Austin, Texas 78758. They may also be served elsewhere. On information and belief, they reside in Austin, Texas. At the time of service, a copy of the Docket Control Order in this case will be provided to them.

3. Mr. Clanin has yet to be served in this case. He may likely be served at his place

of business at 9602 Gray Blvd., Austin, Texas 78758. He may also be served elsewhere. On information and belief, he resides in or near Travis County, Texas. At the time of service, a copy of the Docket Control Order in this case will be provided to him.

*Parties already served to the extent necessary*:

4.    Defendant Viking GP, LLC ("Viking GP") is a Texas limited liability company organized in or about 2004. Its sole members are Salvador and Jennifer Chavarria. Viking GP does business at 9601 Beck Circle or 9602 Gray Blvd., which are only about 100 feet from each other in Austin, Texas 78758. Defendant Viking GP has previously been served at the office of its registered agent for service of process, Salvador Chavarria, at 9602 Gray Blvd., Austin, Texas 78758

5.    Defendant Viking GP is the sole general partner of a Texas limited partnership known as Viking Fence Co., Ltd. Defendant Viking Fence Company, Ltd. ("Viking Fence") does business at 9602 Gray Blvd., Austin, Texas 78758. Defendant Viking Fence has previously been served at the office of its registered agent for service of process, James Rial III. Defendant Viking Fence does business under two assumed names, "Viking Fence Co." and "Viking Fence and Cedar Supply."

6.    Plaintiff Mary Louise Serafine resides at and has owned for more than 35 years the property located at 4011 Avenue D in Austin, Texas, legally described as Lots 5 and 6 of Block 33 in Hyde Park Addition No. 1.

7.    Plaintiff is unaware of the true names of defendants Does 1 to 10, or whether defendants are individuals or business entities.

## Request for Disclosure

8.    Under Texas Rule of Civil Procedure 194, plaintiff requests that defendants Salvador and Jennifer Chavarria and James Clanin disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## Jurisdiction and Venue

9.    The Court has jurisdiction over this matter and venue is proper in Travis County because the named parties reside in or do business in Travis County, Texas, and the real property at issue and affected by this case is located in Travis County,

2

Texas.

## Factual Allegations

### Background

10. All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

11. Defendants do business in Travis County, Texas and defendants Viking Fence and Viking GP, and Salvador and Jennifer Chavarria advertise as fence-builders, fence-installers, and makers of fence materials, and generally as fence contractors doing business as "Viking Fence Co."

12. All defendants are engaged in a single business enterprise. Defendants Viking Fence, Viking GP, and Salvador and Jennifer Chavarria are the alter egos of each other.

13. At all relevant times, Defendants or their actual or ostensible agents or employees employ tools and instruments of force.

14. On information and belief, Defendant James Clanin is an individual who is an actual or ostensible agent or employee of Viking Fence and/or Viking GP and of Salvador and Jennifer Chavarria. In the alternative Mr. Clanin is a "sub-contractor" or his exact relationship to Viking Fence is unknown. Mr. Clanin has testified that he is either an employee or independent contractor of Viking Fence. To the extent defendants Viking Fence, Viking GP, or Salvador or Jennifer Chavarria succeed in disclaiming responsibility for their own wrongful acts by claiming that the acts and omissions of Mr. Clanin were committed on his own behalf, instead of on behalf of any or all of the remaining defendants, then Mr. Clanin bears responsibility himself.

15. All defendants are responsible in an actionable manner for the harms and injuries alleged herein. These defendants are fully aware of the wrongfulness of their acts and that the business practices in which they are engaged, as described below, are unlawful.

16. In the alternative, all defendants except Mr. Clanin know and should know that their business practices as described more particularly below, are unlawful.

17. Defendants do business under an unlawful scheme in which Salvador and Jennifer

3

Chavarria purport to be protected by an entity, inside another entity, which is designed to create the appearance, solely for the purpose of escaping liability, of multiple layers of independent-contractor agreements. This scheme is a misrepresentation to defendants' customers, the public at large, the state and federal agencies to whom defendants owe duties, and to their ostensible or actual agents or employees—the purported "independent contractors." This Court should find that these "independent contractors" are employees or, at the least, ostensible or actual agents of Viking Fence and/or Viking GP and Salvador and Jennifer Chavarria.

18. Viking Fence, Viking GP, and Salvador and Jennifer Chavarria have engaged in an unlawful scheme to shield themselves from liability for their wrongful acts by erecting this web of entities and purported "independent contractor" agreements.

19. In the scheme created by Viking Fence, Viking GP, and Salvador and Jennifer Chavarria, and carried out by Mr. Clanin, the independent contractors purport to hire other independent contractors. Those independent contractors hire other independent contractors. This Court should find that these purported independent contractors are in reality employees and have been employees for many years. Viking Fence has advertised as, and has caused the public to believe, that these purported "independent contractors" are employees of Viking Fence, or otherwise act for and represent Viking Fence. The customers believe they are hiring Viking Fence.

20. Viking Fence Co., Ltd. and Viking GP, LLC are undercapitalized and/or uninsured or underinsured. During discovery and depositions, Viking Fence Co., Ltd. produced, testified to (by interrogatory), and defended before this Court a false or at best incomplete insurance document that Viking Fence knew or should have known failed to include the word "Viking" anywhere in its many pages. It was a ruse. Similarly, targeted discovery reveals there is no evidence of the existence of any assets belonging to Viking Fence.

21. Viking Fence and Viking GP apparently share the same location and are neither separate from each other nor from their individual owners. Their only purpose is to purport to provide a shield for the individual owners or members.

22. This Court should pierce the veil of intertwined individuals and business entities where, as here, the entities are used to justify wrong and work injustice, thereby shifting to members of the public, such as plaintiff, defendants' own liabilities and losses resulting from their wrongful conduct, meanwhile advancing a scheme for

4

their own profit.

23. Defendants know and understand the legal ramifications of constructing a permanent fence on a boundary that divides real property—namely, that such a fence, especially, as here, in a residential context, permanently appears to allocate possession, use, and enjoyment of land and, eventually, by limitations, title. Defendants are in a better position to know and understand these ramifications than is the public, including, in the events leading up to this case, Plaintiff and Defendants' customers, and therefore Defendants should bear liability for all of the costs and injuries occasioned by Defendants' acts.

24. Defendants' construction practices, as in the instant case, entailed erecting between adjoining lands a steel-and-wood barrier that weighs many hundreds of pounds, is cemented permanently into the ground to a depth of about 2 feet, is 6 or more feet high, and extends for more than 50 feet.

25. Defendants know and understand that construction of a fence entails digging deeply into the ground, with attendant risks to underground public facilities and tree roots. Defendants are in a better position to know and understand these facts than is the public, including, in the events leading up to this case, Plaintiff and Defendants' customers. Defendants therefore should bear liability for all of the costs and injuries occasioned by Defendants' acts.

26. In the instant case, Defendants' construction practices entailed the digging of wide, deep holes on or partly on Plaintiff's land and filling them with concrete. These acts damaged Plaintiff's land, making pockets of it unusable, and damaging or impairing the roots of 2 or possibly 3 large, near-by trees, within the critical root zone of each tree.

27. Defendants take no care, and in the instant case took no care, to avoid installing a fence on or partly on Plaintiff's land, and did install it on or partly on Plaintiff's land. They took no care to comply with any state or local codes or laws.

28. Defendants Viking Fence, Viking GP, and Salvador and Jennifer Chavarria are engaged in a hiring scheme that is contrary to state and federal law and exploits the personnel who are engaged by them.

29. As a pattern and practice, Defendants install fences, as in the instant case, without adjoining landowner consent, without respect to boundaries, and without any standards, specs, procedures, or compliance with applicable law, including law for

5

protection of tree roots and underground public facilities.. Defendants' ostensible or actual agents or employees are, and were in the instant case, untrained, unsupervised, and uninformed of relevant standards and applicable law. It is Defendants' business policy, and pattern and practice, to operate in this way, for the purpose of their own profit at the expense of the public, including Plaintiff.

30. Defendants know their acts are wrongful. Defendants' work orders self-proclaim that Defendants are "relieved" of responsibility for their acts.

31. In the instant case, the damage to Plaintiff's property, and the still-continuing invasion of Plaintiff's possessory interest, was caused directly by Defendants' acts and routine practice, of sending out unsupervised, untrained, and unknowledgeable persons whose profit-making depends on quick work and moving on to the next job—and in this case, destroying Plaintiff's existing fence without her consent or effective consent, and erecting a new, unwanted fence on or partly on her land.

32. In the instant case, Defendants wrongfully and defectively installed the fence. Defendants knew and had to know they had no idea where to place the fence in relation to the boundary; no idea what codes or regulations applied; and no idea how to comply with neighboring property rights—as here, Plaintiff's rights.

33. It is Defendants' routine practice to install fences wrongfully and defectively in this manner.

34. The facts of the instant case and Defendants' own testimony shows that Defendants have no policies of any kind to prevent injury to the rights or property of third parties, such as Plaintiff, and, unlike most contractors, no policies to ensure compliance with local codes, such as those regarding fence-height, permits, and tree-root damage.

35. In the instant case, and under their ordinary policies and typical practice, Defendants made and ordinarily make no attempt to confer with the adjoining landowner and no competent attempt to locate *either* the boundary *or* the intended location of the fence, or attempt to locate tree roots or public facilities underground.

36. Pursuant to Defendants' policies, in the instant case, Defendants built a fence with no permit, violating the 6-foot fence height restriction (both later corrected at the City's insistence), and also violating the Austin tree protection requirements.

6

37

37.   Pursuant to Defendants' policies, in the instant case, Defendants' work order showed a pre-planned trespass onto Plaintiff's land, without owner consent.

38.   Pursuant to Defendants' policies as described above, and carried out in the instant case, Defendants wilfully and recklessly installed their fence with intentional and conscious disregard of the boundary and Plaintiff's rights and interest.

39.   Plaintiff suffered injury and damage thereby.

## Destruction of Plaintiff's Fence and Installation of a Nuisance

40.   In the instant case, in December, 2011, all without justification or Plaintiff's consent or effective consent, Defendants intentionally entered upon Plaintiff's land and tore out her chain link fence that, for more than 34 years, had marked the boundary between Plaintiff's land and the neighboring lot at 4013 Avenue D.

41.   Defendants knew or should have known that the chain link fence they tore out was owned, in whole or in part, by Plaintiff.

42.   Defendants knew or should have known that they lacked Plaintiff's consent.

43.   At the same time, all without justification or consent or effective consent, Defendants entered onto Plaintiff's land and tore out her gate post at the entrance to her backyard, leaving Plaintiff's gate swinging in the wind, attaching to nothing, unable to secure the backyard entrance. Defendants knew and had to know they were intentionally destroying Plaintiff's property without justification or consent or effective consent. On Defendants' final inspection, Defendants confirmed the completion of this tort, but did nothing. Defendants tore out Plaintiff's gate post in order to install an unsightly wall of solid wood that juts out toward, and somewhat encroaches into, Plaintiff's driveway.

44.   At the same time, all without consent or effective consent, Defendants entered onto Plaintiff's land, and installed on Plaintiff's land, at least in part, a fence that is a nuisance and permanent or on-going trespass.

45.   At the same time—only later discovered by Plaintiff—Defendants entered onto Plaintiff's land, without consent, and knocked out at least a one-foot length of Plaintiff's perpendicular fence along the alley, leaving a wide-open hole, in order make additional room for Defendants' encroachment into Plaintiff's land. At all

7

relevant times, Defendants knew and had to know they were intentionally altering Plaintiff's property, without justification or consent, and on Defendants' final inspection, they confirmed this tort, but did nothing to correct it.

46. At the same time, all without consent, Defendants entered onto Plaintiff's land and affixed a bolt—only later discovered by Plaintiff as it was concealed by brush—to the lower part of Plaintiff's alley fence, for their own purposes in apparently affixing and stabilizing the lower part of their industrial-style fence. As to the upper part of Defendants' fence, a board simply juts out into the air space above Plaintiff's land. At all relevant times, Defendants knew and had reason to know they were intentionally altering the property of another, without justification or consent, and on Defendants' final inspection, they confirmed this tort, but did nothing to correct it.

47. On one occasion in December, 2011 and again in January, 2012 Defendants were informed of and knew that Plaintiff objected to the invasion of her land and the fence, but Defendants again did nothing to correct it.

48. Defendants' entry onto Plaintiff's land, damage to her land, and damage to or destruction of her property was at all times intentional and pre-planned.

49. At all times Defendants acted with wilful contempt of Plaintiff's property rights and possessory interest and acted with malice and callousness in depriving Plaintiff of her rights.

50. Defendants at all times treated Plaintiff's land and improvements and fixtures as though they were Defendants' own and as though Defendants were entitled to Plaintiff's property.

51. At all relevant times Defendants knew, and had to know, they lacked entirely Plaintiff's consent or effective consent. At all relevant times Defendants wilfully kept their identity concealed from Plaintiff.

52. By their actions, Defendants destroyed a long-established, almost-35-year boundary and caused it to be placed legally in dispute for the first time.

53. As a result, Plaintiff's property has become unsaleable and its value decreased.

54. As a result of the foregoing, Plaintiff was forced to spend time and money, including attorneys' fees, expert fees, and Plaintiff's own attorney time, in

8

preparing this case to protect her property interest, and in preparing a separately-filed trespass to try title suit that, as a result of Defendants' actions, became necessary for Plaintiff to re-gain her boundary and land and possessory interest. Because Defendants apparently left no trace of the old fence, and all of Defendants' work was undocumented and un-photographed, the boundary has had to be reconstructed with expensive measurement techniques and old documents, certain of which were not immediately known to Plaintiff.

55. Interest in and possession of land is a natural right. Everywhere recognized as such, the right is specially important where the interest and possession is incident to an occupied home. Defendants' wilful invasion of Plaintiff's possessory interest, and destruction of her land and property, caused Plaintiff the same mental anguish that a reasonable person would suffer under the same circumstances.

56. In 1977 Plaintiff purchased the land and bungalow at Lots 5 and 6, Block 33 of the Hyde Park Addition No. 1 in Travis County, Texas, also known as 4011 Avenue D in Austin, Texas. At all times since, and up to and including the present, for a period of more than 35 years, Plaintiff has owned, used, enjoyed, possessed, and timely paid all taxes on said land and improvements.

57. Upon purchasing her property in 1977, then and there, Plaintiff took and treated as her own all of the land enclosed by her then-existing fencing, including the chain link fence that marked the boundary between Lot 5 (Plaintiff's) and the adjacent Lot 4 (also known as 4013 Avenue D in Austin, Texas.

58. Plaintiff acquired title to all of this land, up to and including the chain link fence that separated Plaintiff's land from Lot 4, by limitations title, by August, 1987, when the 10-year statute had run (from August 1977) . In the alternative, and to the extent Plaintiff did not acquire title by 1987, the statute ran again from 1978 to 1988. It ran again from 1979 to 1989. And it fully ran again *twenty-two (22) more times,* until Defendants disrupted that boundary by their tortious acts described herein, in December, 2011.

59. Plaintiff acquired full title by limitations under the 10-year statute. In the alternative, and to the extent Plaintiff did not acquire title under the 10-year statute, and the 25-year statute applies, then Plaintiff acquired title by limitations by August, 2002 (from August 1977). The 25-year statute ran again from 1978 to 2003. It ran again from 1979 to 2004. And the 25-year statute ran again *seven (7) more times* until Defendants disrupted that boundary by their tortious acts described herein, in December 2011.

9

40

60. In a line that extended from the chain link fence marking the boundary between Plaintiff's land and Lot 4, Plaintiff installed shortly after her purchase in 1977 (and no later than a date in 1978), railroad ties weighing some 200 pounds, which still serve the purpose today of marking off and separating Plaintiff's driveway from the front yard of Lot 4. Thus, Plaintiff's northern boundary was completely marked off, was visible, exclusive, open, notorious, and hostile to all other interests; it was peaceable having been challenged by no person until Defendants' trespass and other tortious acts described herein. This line was considered to be and was treated as the boundary of Plaintiff's lot, by Plaintiff and all others, for almost 35 years, until Defendants' tortious acts in December 2011.

61. At great expense and trouble, Plaintiff has been required to bring and has brought a separate action for trespass to try title, as against the current owners of the adjoining Lot 4, at 4013 Avenue D, to settle the boundary.

62. Attached hereto as Exhibit A is a map showing, at the least, the minimum area of Plaintiff's ownership, and thus the minimum area of trespass and encroachment of the fence that Defendants installed on Plaintiff's land in December 2011.

**Cause of Action for Negligent Hiring, Retention, Training, and Supervision (under Theory of Actual or Ostensible Agency and/or Respondeat Superior)**

63. All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

64. Defendants' wrongful acts were and continue to be carried out by Defendants' actual or ostensible agents or employees.

65. Defendants have and had a duty to the public and to Plaintiff to use reasonable or ordinary care to hire, retain, train, and supervise its agents and/or employees so that the latter would be competent to install a boundary fence without damage to the property and interests of third parties, including Plaintiff.

66. Defendants breached that duty, and as a result, Plaintiff suffered injury, harm, or damage.

67. Defendants' acts, omissions, and breach of their duties were a direct and proximate cause of the damage and injury to Plaintiff and her property.

10

41

68.    Defendants knew and should have known, and it was foreseeable, that Plaintiff would likely be harmed by Defendants' acts, omissions, and breach of their duties.

69.    By their acts, omissions, and breach of their duties, Defendants directly profited and intended to specially profit thereby.

### Cause of Action for Defective Installation of Boundary Fence

70.    All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

71.    Defendants at all times knew and should have known that installation of a boundary fence of the type that Defendant installed in this case—and typically installs---carries a high probability of error as to its placement on the legally-established boundary and, as a result, a high probability of harm to the adjoining landowner.

72.    This is particularly so where, as here and under their ordinary policies and typical practice, Defendants made no attempt to confer with the adjoining landowner and no competent attempt to locate *either* the boundary *or* the intended location of the fence; and make no attempt to locate tree roots or public facilities underground.

73.    The gravity of the resulting injury to Plaintiff in particular, and to adjoining landowners and to others in general, is high.

74.    By contrast, the burden on Defendants of taking even minimally adequate precautions is low.  Defendant harmed Plaintiff by failing to take even the most minimal precautions that would have prevented the injury.  Had Defendant contacted Plaintiff or taken any other precaution, the injury would not have occurred.

75.    Defendants' defective installation of the boundary fence caused Plaintiff to suffer injury, harm, or damage.

11

42

## Cause of Action for Negligence and Negligence Per Se

76. All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

77. Defendants had a duty to Plaintiff to exercise ordinary or reasonable care in carrying out this construction without damage or injury to Plaintiff's real or personal property or to her possessory interest.

78. Defendants knew or should have known, and it was foreseeable, that Defendants' acts and omissions would result in damage Plaintiff's property, land, trees, and possessory interest.

79. In addition to other wrongs, Defendants violated the City of Austin's tree protection code by excavating within one-half the critical root zone of a regulated tree on Plaintiff's property. Defendants also failed to follow requirements and best practices for unregulated trees.

80. Defendants acted negligently and, as a direct and proximate cause of Defendants' acts and omissions, Plaintiff suffered injury and damages, including damage to her fence, gate, gate post, alley fence, and trees..

## Cause of Action for Intentional Interference with Property Rights, Conversion and/or Trespass to Chattels

81. All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

82. Plaintiff owned exclusively her land, her gate and gate post, her alley fence, her trees and other plants. Plaintiff owned all of the chain link fence, or at a minimum owned it in part. Plaintiff had a right to immediate possession of all of the foregoing.

83. Without justification or obtaining Plaintiff's consent, Defendants tore out and removed Plaintiff's gate post, and chain link and wood fencing and also took and used Plaintiff's fencing by bolting the new fence to the remains of Plaintiff's wood fence. Defendants damaged the health of Plaintiff's trees. In so doing Defendants converted Plaintiff's property and/or wrongfully exercised dominion and control over Plaintiff's property.

12

43

84. Plaintiff suffered injury and damage thereby.

## Cause of Action for Trespass and Permanent or On-going Trespass

85. All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

86. Defendants entered, and caused or encouraged their agents or employees to enter, Plaintiff's property in a manner that was intentional, physical, and voluntary, without justification or Plaintiff's permission, thereby interfering with Plaintiff's possessory interest.

87. In addition, by erecting the fence, Defendants' physically, intentionally, and voluntarily entered upon Plaintiff's land, without justification and without Plaintiff's permission, so as to constitute a permanent invasion of Plaintiff's land and permanent interference with her possessory interest.

88. Defendants' trespass onto Plaintiff's land is continuing and will be permanent if not enjoined.

## Cause of Action for Negligent or Intentional, Permanent or Temporary, Private Nuisance

89. All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

90. At the time of Defendants' tortious acts, Plaintiff had had for almost 35 years a private interest in her land and improvements.

91. Defendants substantially interfered with and invaded Plaintiff's interest by conduct that was intentional and unreasonable or negligent, resulting in Plaintiff's loss of use and enjoyment of her property, including loss of peace of mind and enjoyment of her home.

92. Defendants' actions were and, if not prevented, will be, abnormal under the circumstances. They interfere with Plaintiff's use and enjoyment of her property in a manner that is substantial, permanent, and continuing. Defendants' fence is unsightly, disturbing, and unsuited aesthetically to its surroundings. The pools of concrete prevent plantings and other future uses of the underground space. Plaintiff is legally not entitled to remove the fence or to remove that part of it bolted to her alley fence and thus unable to repair or replace the alley fence.

13

Plaintiff is forced continuously to anticipate and monitor the slow accretion of damage to her trees.

## Cause of Action for Public Nuisance

93. All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

94. Plaintiff is a private citizen and has standing to bring suit on behalf of the public.

95. Defendants' business conduct creates a public nuisance and results in, or is a substantial factor in, obstructions of the free use of property, so as to interfere with the comfortable enjoyment of life and residential property.

96. Over time, Defendants' conduct affects a substantial number of people.

97. An ordinary person who is an adjoining landowner in the same position as Plaintiff would be reasonably annoyed or disturbed by Defendants' acts.

98. The harm suffered by Plaintiff here is different in kind from that suffered by the public in general.

99. A trespass to land is a substantial harm, even more so when it occurs, as here, without consent. It interferes with an important right—the right to own land and property, and to know it is safe from unpermitted intrusion, for the purposes of one's own welfare, privacy, peace and quiet, and useful or enjoyable uses over a period of time. This is especially important for residential ownership of land, where the sense of invasion is unsettling and where, on small lots, even a matter of inches may be important.

100. As a matter of business policy and pattern and practice. Defendants insufficiently take care to avoid trespassing on and destroying the property of others, Defendants' fences are permanent or at least difficult to remove.

101. Many members of the public would be unaware of a trespass, unaware of their right to correct it, or not know what to do about it, assuming they had the means to do so. Some members of the public would remain unaware until later, when their land is surveyed preparatory to a sale. Some members of the public would be unable to act within the two-year statute of limitation for trespass, or unaware that after the 3-, 5-, or 10-year statute of limitations expires, the owner of land

14

adjoining theirs now owns that land trespassed upon.

102. Some trespasses carried out by Defendants are difficult for adjoining landowners to detect. The scene is changed as a result of Defendants' tortious conduct, and because familiar markings are removed, visual inspection is less accurate.

103. Defendants' fences are not trivial structures. They weigh many hundreds of pounds and necessitate removal of a substantial amount of soil.

104. If Defendants are allowed to continue their tortious conduct, members of the public will have to take extra precautions to guard against Defendants' trespasses and wrongful installations of boundary fences, which could occur at any time.

105. The seriousness of the harm caused by Defendants outweighs the social utility, if any, of their conduct.

## Cause of Action for Equitable Relief

106. All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

107. The Court should issue a mandatory injunction requiring Defendants to take steps to prevent further damage to Plaintiff's trees.

108. Concerning Plaintiff's trees, the roots of which were cut or damaged by Viking, and the branches of which overhang Plaintiff's and others' property, Plaintiff disclaims liability for any future damage to others as a result of the trees becoming destabilized.

109. The benefit of issuing the injunctions requested by Plaintiff will outweigh any harm to Defendants and there will be no harm to the public. Thus Plaintiff is entitled to injunctive relief.

110. The Court should issue any other mandatory or prohibitory injunction necessary to prevent additional future harm to any of Plaintiff's property.

15

46

## Cause of Action for Exemplary Damages

111. All of the foregoing is incorporated herein by reference, as though repeated here in its entirety.

112. It is Defendants' pattern and practice as a matter of business policy to treat the property rights of adjoining landowners, and to treat the public's right to safety with respect to underground facilities and tree roots, with wilful, contemptuous disregard.

113. Defendants, jointly or separately, throughout the events described herein, acted and may continue to act with gross negligence and in a manner that was intentionally and affirmatively reckless, willful, and without regard to Plaintiff's rights or interests. Defendants acted solely to increase their own profit at Plaintiff's expense and may continue to so act.

114. Defendants should be deterred from continuing such acts, in order to protect the public, among other reasons, and therefore should be punished monetarily, in proportion to their net worth, to a degree that will deter them.

## Demand for Jury Trial

115. Plaintiff demands a jury trial.

## Conditions Precedent

116. All conditions precedent to plaintiff's claim for relief have been performed or have occurred.

## Objection to Associate Judge

117. Plaintiff objects to this case being referred to an associate judge for hearing a trial on the merits or presiding at a jury trial.

## Prayer for Relief

WHEREFORE, Plaintiff prays, upon final trial, to be awarded judgment against Defendants for all causes of action pled above, and all other causes of action that may be proved at trial; and that the Court award to Plaintiff:

monetary damages;

special damages, including costs of remediation and for stigma and diminution in market value;

mandatory and prohibitive injunctive relief;

16

costs of court;
attorneys' fees under CPRC 16.034 and under equity
prejudgment and postjudgment interest;
exemplary and punitive damages;
and all other relief in law and equity to which Plaintiff may be entitled.

Respectfully submitted,

By: /s/ MaryLSerafine

MARY LOUISE SERAFINE, SBN 24048301
P.O. BOX 4342, AUSTIN, TEXAS 78765
Telephone: 512- 220-5452, Email: mlserafine@gmail.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing has
been delivered via email, by agreement of counsel and as provided by the Docket Control
Order in this case on the counsel below, on this the 10th  day of February, 2015.

Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500, Austin, TX 78701
Telephone: (512)703-8200,  Telecopy: (512) 708-8777
Jeff B. Otto, Esq., jotto@thompsoncoe.com
Melissa J Ackie, Esq., mackie@thompsoncoe com
Attorneys for Viking Fence Company, Ltd. and Viking GP

By: /s/ MaryLSerafine
MARY LOUISE SERAFINE, SBN 24048301
P.O. BOX 4342, AUSTIN, TEXAS 78765
Telephone: 512- 220-5452, Email: mlserafine@gmail.com
Attorney for Plaintiff

17

48

# Exhibit A

18

49



NOTES:
1. THIS SURVEY WAS DONE WITHOUT THE BENEFIT OF A TITLE COMMITMENT. EASEMENTS, RESTRICTIONS AND/OR BUILDING SETBACKS MAY EXIST THAT ARE NOT SHOWN HEREON.
2. SEE METES AND BOUNDS DESCRIPTION PREPARED TO ACCOMPANY THIS MAP.

CM — CONTROL MONUMENT
( ) — RECORD DATA FROM PLAT 1\67
D.E. — DRAINAGE EASEMENT
R.O.W. — RIGHT-OF-WAY
☼ — POWER POLE

PLAT NORTH
SCALE: 1" = 20'

AVENUE D

HARRIS—GRANT SURVEYING, INC.
P.O. BOX 807  MANCHACA, TEXAS 78652
(512)444-1781 FAX (512) 444-6123

DETAIL SHOWING DIMENSIONS FROM OLD CHAIN LINK FENCE OCCUPIED LINE TO THE SOUTHERN MOST EDGE OF METAL FENCE POSTS AND

TAB 12

Cause No.  D-1-GN-12-001270

| | | |
|---|---|---|
| Mary Louise Serafine, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| Alexander and Ashley Blunt, | § | 200th JUDICIAL DISTRICT |
| Scott Lockhart, Austin Drainage | § | |
| and Foundation, | § | |
| Austin Drainage and | § | |
| Foundation LLC dba Austin | § | |
| Drainage and Landscape | § | TRAVIS COUNTY, TEXAS |
| Development, Defendants | | |

Cause No.  D-1-GN-13-004023

| | | |
|---|---|---|
| MARY LOUISE SERAFINE, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| VIKING FENCE COMPANY, | § | |
| LTD., d/b/a/ VIKING FENCE | § | 126th JUDICIAL DISTRICT |
| CO., VIKING GP, LLC, | § | |
| SALVADOR CHAVARRIA, an | § | |
| individual, JENNIFER | § | |
| CHAVARRIA, an individual, | § | |
| and JAMES CLANIN, an | § | |
| individual, | § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

PLAINTIFF'S FIRST SUPPLEMENT TO PETITION

3

TO THE HONORABLE COURT:

COMES NOW Plaintiff Mary Louise Serafine and files this First

Supplement to her *Fourth Amended Petition in Cause No. D-1-GN-12-001270*

and also to her *Third Amended Petition in Cause No. D-1-GN-13-004023*, by

*adding* the following ADDITIONAL ALLEGATION by *substituting* the

following as the PRAYER FOR RELIEF in both of the afore-mentioned

petitions, to the fullest extent that said relief prayed for shall apply to any

party or cause of action:


ADDITIONAL ALLEGATIONS

Independently, or in connection with all of the foregoing allegations, Defendants knew or should have known, and it was foreseeable, that demolition, removal, and/or replacement of the old chain link fence, and/or other damage to plaintiff's gate and fencing and interference with her property rights, would cause litigation to ensue.  In general it is foreseeable to the ordinary person, or specifically it is foreseeable to a person such as certain defendants here in an occupation related to fencing or real estate, that, under the circumstances here or under any circumstances, that demolition, removal, and/or replacement of an existing fence that separates two properties would cause litigation to ensue, including but not limited to a trespass-to-try-title action as a result of defendants' actions.

Plaintiff has for many years studied historic preservation in connection with residential structures and values it highly.  Plaintiff undertook to restore 4011 Avenue D in accordance with historic preservation standards.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays, upon final trial, to be awarded judgment against Defendants for all causes of action pled in the afore-mentioned petitions, and all other causes of action that may be proved at trial; and that the Court award to Plaintiff both general and special damages, including but not limited to:

record title to the Strip of Land, as described in Exhibit 1 attached hereto;

monetary damages;

special damages, including but not limited to costs of remediation, stigma damages, diminution in market value, and loss of use. Such special damages also include but are not limited to the following:

cost of expert consultation concerning whether or how the existing fence can be removed without further damage to tree roots;

the cost of removing the existing fence with procedures undertaken by tree experts that are not expected to further damage tree roots;

the cost of additional future tree care and liability insurance as a result of defendants' damage to tree roots;

costs of consultation for and installation of a replacement fence that comports with historic restoration guidelines promulgated by the U.S. Department of Interior;

the cost of litigating and obtaining adjudication of the instant trespass-to-try-title action to settle the boundary, including attorneys' and experts' fees thereby required, and including plaintiff's own time as an attorney or, alternatively, plaintiff's lost employment on other matters.

general and specific damages for the lost value, specifically the value to plaintiff in particular, of the old fence and of the gate post necessary to and matching plaintiff's gate, the foregoing being part of a historic property;

general and special damages for mental anguish such as would be experienced by an ordinary person and/or by a person committed to historic preservation, as a result of Defendants' interference with property rights, including interference, as here, continued over a period of time approaching four years;

mandatory and prohibitive injunctive relief;
costs of court;
attorneys' fees under CPRC 16.034 and under equity;
prejudgment and postjudgment interest;
exemplary and punitive damages;

and all other relief in law and equity to which Plaintiff deems herself entitled or may be entitled.

Pursuant to Tex. R. Civ. P., such damages are expected to exceed one million dollars and plaintiff seeks the same.

Dated: July 2, 2015
Respectfully submitted,

By: *M. L. Serafine*

Mary Louise Serafine, State Bar No. 24048301
P.O. Box 4342
Austin, Texas 78765
Telephone: 512- 220-5452
Email: mlserafine@gmail.com

Ray Bass, Attorney
SBN 01884000
120 West 8th Street
Georgetown, Texas 78626

Telephone 512-863-8788, Facsimile 512-869-5090
Email: ray@raybass.com
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing has been delivered pursuant to Rule 21a via email and/or facsimile, on the counsel below, on this the 2nd day of July, 2015.

Law Office of Ronald Max Raydon
1718 Fry Road, Suite 450
Houston, Texas 77084
Via facsimile (281) 398-6403
Via Email ron@raydonlaw.com
Attorney For Scott Lockhart and Austin Drainage & Foundation, LLC

Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500, Austin, TX 78701
Telephone: (512)703-8200,  Telecopy: (512) 708-8777
Jeff B. Otto, Esq., jotto@thompsoncoe.com
Melissa J Ackie, Esq., mackie@thompsoncoe com
Attorneys for Viking Fence Company, Ltd. and Viking GP, LLC.

Doran D. Peters
HAJJAR PETERS LLP
3144 Bee Caves Road
Austin, Texas   78746
Via facsimile (512) 637-4958
Via Email service@legalstrategy.com
Attorney for Alexander and Ashley Blunt

By: *M. L. Serafine*

MARY LOUISE SERAFINE, SBN 24048301

# EXHIBIT 1

# OCCUPIED LINE SURVEY
## 4011 AVENUE D, AUSTIN, TEXAS
## LOTS 5 & 6 BLOCK 33
## HYDE PARK ADDITION
## V. 1, PG. 67

NOTES:
1. THIS SURVEY WAS DONE WITHOUT THE BENEFIT OF A TITLE COMMITMENT. EASEMENTS, RESTRICTIONS AND/OR BUILDING SETBACKS MAY EXIST THAT ARE NOT SHOWN HEREON.
2. SEE METES AND BOUNDS DESCRIPTION PREPARED TO ACCOMPANY THIS MAP.

AVENUE D

CURB CUT

(50')  N 29°23'11" E  50.32'  N 29°14'46" E  (50')  50.60'  N 29°18'49" E  (50')  49.78'

N 29°14'46" E  0.42'

CALCULATED POINT ON NORTH EDGE OF RAILROAD TIES
CM
RAILROAD TIES
OCCUPIED LINE FOLLOWS NORTH EDGE OF RAILROAD TIES

19.7'

COV. WOOD

12.8'  25.3'  11.5'  1.9'

MAP SYMBOLS:
- X — BARBED WIRE FENCE
- oo — CHAIN LINK FENCE
- II — WOOD BOARD FENCE
- E — UTILITY LINE
- P.U.E. — PUBLIC UTILITY EASEMENT
- B.L. — BUILDING LINE
- ● — 1/2" REBAR FOUND
- ⊕ — 1/2" REBAR SET
- ◉ — IRON PIPE FOUND
- CM — CONTROL MONUMENT
- ( ) — RECORD DATA FROM PLAT 1\67
- D.E. — DRAINAGE EASEMENT
- R.O.W. — RIGHT-OF-WAY
- ☼ — POWER POLE

4.4'  0.6'  4.9'  3.9'  2.0'

120 SQFT AREA OF INTEREST

S 60°18'53" E  64.27'

LOT 4

ONE STORY WOOD\FRAME HOUSE

A\C  37.5'

13.4'  2.0'

S 60°18'53" E  64.27'

ADJOINING HOUSE

S 60°00'00" E  BEARING BASIS

(120')  119.43'  N 60°11'50" W

12.1'  oo

6.2'  8.5'  6.2'  5.7'  10.9'

S 60°18'53" E  64.27'

OPEN CONC.

3.4'  3.2'
CHAIN LINK GATE

MIDDLE OF CLOSING LATCH AS GATE USED TO CLOSE

LOT 7

S 61°29'36" E

LOT 6

LOT 5
LOT LINE

BLOCK 33

(120')  119.70'  N 60°00'00" W

LOT LINE

S 61°29'36" E  55.44'

WOOD STORAGE BUILDING

16" PECAN

OLD CHAIN LINK FENCE/OCCUPIED LINE, RECONSTRUCTED FROM RECORDS AND PHOTOGRAPH

EXISTING NOTCH FOR TRASH CANS

1.9'  0.4'  CM  2.21'  CALCULATED CORNER

55.44'

PLAT NORTH
SCALE: 1" = 20'

S 29°33'05" W  51.98'  (50')  CABLE TV RISER  PLACE OF BEGINNING, METES & BOUNDS

S 29°33'05" W  2.21'

ALLEY

HARRIS-GRANT SURVEYING, INC.
P.O. BOX 807  MANCHACA, TEXAS 78652
(512)444-1781 FAX (512) 444-6123



STATE OF TEXAS
REGISTERED
JAMES M. GRANT
1919
PROFESSIONAL LAND SURVEYOR

JAMES M. GRANT R.P.L.S. 1919
DATE: SEPTEMBER 4, 2012
INVOICE NO. 45067  WORK ORDER NO. 43647  C:\CARL D\2012\43747xx

## EXHIBIT A - METES AND BOUNDS DESCRIPTION

**BEING A CALCULATED MAP AREA OF 120 SQUARE FEET OF LAND, MORE OR LESS, OUT OF LOT 4, BLOCK 33 OF "HYDE PARK ADDITION", A SUBDIVISION IN TRAVIS COUNTY, TEXAS, AS RECORDED IN VOLUME 1, PAGE 67 OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS, SAID TRACT OF LAND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:**

**BEGINNING** at a ½" rebar found on the west right-of-way line of a 12' alley, at the common easterly corner between Lots 4 and 5, Block 33 of said Hyde Park Addition, for the southeast corner and **PLACE OF BEGINNING** hereof;

**THENCE** with the common line between said Lots 4 and 5, N 60°00'00" W 119.70 feet to a ½" rebar found on the east right-of-way line of Avenue D, at the common westerly corner between said lots, for the southwest corner hereof;

**THENCE** with the east right-of-way line of Avenue D, and crossing into said Lot 4, N 29°14'46" E 0.42 feet to a calculated point at the north edge of an existing railroad tie, for the northwest corner hereof;

**THENCE** continuing to cross through said Lot 4, and with the north edge of said existing railroad ties, and going past the easterly end of said railroad ties, S 60°18'53" E 64.27 feet to a calculated point, being the middle of the closing latch of the gate of an old chain link fence, the location of which has been computed using records and a photograph, and data obtained from an on-the-ground survey, for an angle point on the northerly line hereof;

**THENCE** continuing to cross through said Lot 4, and with said old chain link fence, no longer in existence, but the location of which has been computed from records, photograph, and data obtained from an on-the-ground survey, S 61°29'36" E 55.44 feet to a calculated point on the west right-of-way line of said 12' alley, for the northeast corner hereof;

**THENCE** with the west right-of-way line of said 12' alley, also the easterly or rear side of said Lot 4, S 29°33'05" W 2.21 feet to the **PLACE OF BEGINNING** and containing a calculated map area of 120 square feet of land, more or less.

See map prepared to accompany this description.

## HARRIS-GRANT SURVEYING, INC.
P.O. BOX 807, MANCHACA TEXAS 78652
512-444-1781

JAMES M. GRANT
R.P.L.S. 1919

September 6, 2012
jg\carlson\04-2012\43747

10/1/2015 6:17:43 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-12-001270
Ruben Tamez

TAB 13

Cause No.  D-1-GN-12-001270

| | | |
|---|---|---|
| Mary Louise Serafine, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| Alexander and Ashley Blunt, | § | 200th JUDICIAL DISTRICT |
| Scott Lockhart, Austin Drainage | § | |
| and Foundation, | § | |
| Austin Drainage and | § | |
| Foundation LLC dba Austin | § | |
| Drainage and Landscape | § | TRAVIS COUNTY, TEXAS |
| Development, Defendants | | |

Cause No.  D-1-GN-13-004023

| | | |
|---|---|---|
| MARY LOUISE SERAFINE, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| VIKING FENCE COMPANY, | § | |
| LTD., d/b/a/ VIKING FENCE | § | 126th JUDICIAL DISTRICT |
| CO., VIKING GP, LLC, | § | |
| SALVADOR CHAVARRIA, an | § | |
| individual, JENNIFER | § | |
| CHAVARRIA, an individual, | § | |
| and JAMES CLANIN, an | § | |
| individual, | § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

PLAINTIFF'S SECOND SUPPLEMENT TO PETITION

TO THE HONORABLE COURT:

COMES NOW Plaintiff Mary Louise Serafine and files this Second Supplement to her *Fourth Amended Petition in Cause No. D-1-GN-12-001270* and also to her *Third Amended Petition in Cause No. D-1-GN-13-004023*, by *adding* the following:

## ADDITIONAL ALLEGATIONS

Defendant Blunts and the Lockhart defendants knew and should have known, and it was foreseeable, that keeping plaintiff in the dark—for many weeks—about the excavation and drainage work they were planning or appeared to be doing, on and near her property, would cause expensive, protracted litigation to ensue, because plaintiff would be required to appeal to the courts to protect her interests. In this regard, these defendants were recklessly and grossly negligent in failing to do what a reasonable person would do under the circumstances: inform the plaintiff. In general it is foreseeable to the ordinary person, or specifically it is foreseeable to a person such as these defendants, that keeping plaintiff in the dark, while it appeared they would damage plaintiff's property and interfere with her property rights, over a long period of time, would cause plaintiff mental anguish, the damages pled for, loss of personal time, and the cost of attorneys fees, including for her own time, expert fees, and costs and expenses of protracted litigation.

## PRAYER FOR RELIEF

Plaintiff additionally pleads for general and special damages in an amount representing the value *to her*—not the fair market value—of all of the property wrongfully destroyed and converted by all Defendants, but especially Viking Fence Company, Ltd. and Viking GP, LLC, including her original fence, the gate post, the trees and shrubs, the area of land wrongfully made inaccessible to plaintiff and the land now plugged in at least nine places with underground concrete footings.

Plaintiff additionally pleads for general and special damages in an amount equal to reasonable compensation for her *loss of time* in being required, as a result of all Defendants' actions, including those of Viking Fence Company, Ltd. and Viking GP, LLC, to act in the protection of her interests by bringing this action against adjoining landowners, the Blunts, and against Scott Lockhart and his related entities, if any.

WHEREFORE, Plaintiff prays, upon final trial, to be awarded judgment against Defendants for all causes of action pled in the afore-mentioned petitions, and all other causes of action that may be proved at trial; and that the Court award to Plaintiff both general and special damages, including but not limited to:

the cost of removal and replacement of trees;
the cost of installing deep-drilled piers to prevent further movement of her house and out-building, including removal and replacement of interior flooring to the extent necessary to accommodate the work, removal of the contents of the house in the service thereof, all clean-up costs, cost of temporary housing.

Pursuant to Tex. R. Civ. P. 47, such damages are expected to exceed $100,000 but not to exceed one million dollars and plaintiff seeks the same.

Respectfully submitted,

By:  *M. L. Serafine*

Mary Louise Serafine,  State Bar No. 24048301
P.O. Box 4342
Austin, Texas  78765
Telephone:  512- 220-5452
Email: mlserafine@gmail.com

Ray Bass, Attorney
SBN 01884000
120 West 8th Street
Georgetown, Texas 78626
Telephone 512-863-8788, Facsimile 512-869-5090

Email: ray@raybass.com
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing has been delivered pursuant to Rule 21a via email and/or facsimile, on the counsel below, on this the 1st day of October, 2015.

Law Office of Ronald Max Raydon
1718 Fry Road, Suite 450
Houston, Texas 77084
Via facsimile (281) 398-6403
Via Email ron@raydonlaw.com
Attorney For Scott Lockhart and Austin Drainage & Foundation, LLC

Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500, Austin, TX 78701
Telephone: (512)703-8200, Telecopy: (512) 708-8777
Jeff B. Otto, Esq., jotto@thompsoncoe.com
Melissa J Ackie, Esq., mackie@thompsoncoe com
Attorneys for Viking Fence Company, Ltd. and Viking GP, LLC.

Doran D. Peters
HAJJAR PETERS LLP
3144 Bee Caves Road
Austin, Texas   78746
Via facsimile (512) 637-4958
Via Email service@legalstrategy.com
Attorney for Alexander and Ashley Blunt

By: _M. L. Serafine_

MARY LOUISE SERAFINE, SBN 24048301

TAB 14

Filed
12 June 21 P2:55
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-12-001270

CAUSE NO. D-1-GN-12-001270

| | | |
|---|---|---|
| MARY LOUISE SERAFINE | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | 200th JUDICIAL DISTRICT |
| | § | |
| ALEXANDER BLUNT, ASHLEY BLUNT, | § | |
| SCOTT LOCKHART dba AUSTIN | § | |
| DRAINAGE AND FOUNDATION, LLC | § | TRAVIS COUNTY, TEXAS |
| *Defendants* | | |

## DEFENDANTS' FIRST AMENDED ANSWER AND ORIGINAL COUNTERCLAIMS

COME NOW ALEXANDER BLUNT and ASHLEY BLUNT, Defendants in this case, who answer and counterclaim as follows:

## I - GENERAL DENIAL

1.01    Alexander Blunt and Ashley Blunt deny any and all allegations contained in Plaintiff's Original Petition and demand strict proof of same.

1.02    The Blunts reserve the right to make any additional special or verified denials and pleas in bar at a later time. The Blunts further reserve the right to file counterclaims, cross-claims, or third-party claims in this case.

## II - AFFIRMATIVE DEFENSES

2.01    Pursuant to Rule 94 of the Texas Rules of Civil Procedure, the Blunts each specifically plead the following:

- Plaintiff failed to mitigate damages;
- Plaintiff's claims are barred by the doctrine of estoppel;
- Plaintiff's claims are barred because she did not meet all conditions precedent;
- Plaintiff's claims are barred by the doctrine of laches; and
- Plaintiff's claims are barred by the doctrine of waiver.

6

## III - COUNTERCLAIMS

3.01        Counter-Plaintiffs are the Alexander Blunt and Ashley Blunt.

3.02        Counter-Defendant is Mary Louise Serafine.

3.03        **Tortious Interference with Contract:** The Blunts had a valid contract with Austin Drainage and Foundation, LLC. Serafine willfully and intentionally interfered with that contract through threats and the filing of this lawsuit. Serafine's interference proximately caused injury to the Blunts, who incurred actual damage or loss.

3.04        **Fraudulent Lien:** Serafine has knowledge that the Lis Pendens she has filed in relation to this case is not supported by any valid interest in the Blunts' property. Serafine filed the Lis Pendens with the Travis County Real Property Records with the intention to cause the Blunts financial injury. Serafine's actions violate Chapter 12 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.

## IV - DAMAGES

4.01        Serafine's actions have caused injury and damage to the Blunts. Further, the Blunts are entitled to statutory and/or exemplary damages. TEX. CIV. PRAC. & REM. CODE §12.002.

## V - CONDITIONS PRECEDENT

5.01        All conditions precedent to the Blunts claims for relief have been performed or have occurred.

## VI - ATTORNEY'S FEES

6.01        The Blunt Defendants request to be awarded attorneys' fees under TEX. CIV. PRAC. & REM. CODE §§ 37.009, 16.034, 12.002, and 12.006 and under equitable principles.

## VII - PRAYER

7.01        ALEXANDER BLUNT and ASHLEY BLUNT, request and pray for judgment of this

Court that Plaintiff takes nothing by way of its claims and that the Blunts have judgment for

damages, pre-judgment and post-judgment interest, court costs, attorney's fees, and for such other

and further relief to which they may show themselves to be justly entitled.

Respectfully Submitted,

HAJJAR | SUTHERLAND | PETERS & WASHMON, LLP
1205 Rio Grande Street
Austin, Texas 78701
Telephone: (512) 637-4956
Facsimile: (512) 637-4958

By: _____
Doran D. Peters
dpeters@hspwlegal.com
State Bar No. 24027615
Kendall L. Bryant
kbryant@hspwlegal.com
State Bar No. 24058660
ATTORNEYS FOR THE BLUNTS

## CERTIFICATE OF SERVICE

I certify by my signature that a true and correct copy of this pleading has been served via the method indicated below, pursuant to the Texas Rules of Civil Procedure 21 and 21a, to the person(s) noted below on this the 21st day of June, 2012:

Mary Louise Serafine                          *Via Certified Mail Number*
Post Office Box 4342                          *7010 1060 0000 3660 9777*
Austin, Texas 78765                           *Return Receipt Requested*
                                              *& First Class Mail*

_____
Doran D. Peters

TAB 15

9/11/2015 4:07:18 PM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-12-001270**
**Patricia Winkler**

CAUSE NO. D-1-GN-12-001270

| | | |
|---|---|---|
| **MARY LOUISE SERAFINE** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ALEXANDER BLUNT, ASHLEY BLUNT,** | § | |
| **SCOTT LOCKHART dba AUSTIN** | § | |
| **DRAINAGE AND FOUNDATION, LLC** | § | **200th JUDICIAL DISTRICT** |
| **AND LANDSCAPE DEVELOPMENT** | § | |
| **VIKING FENCE COMPANY, LTD.,** | § | |
| **VIKING GP, LLC, SALVADOR CHAVARRIA** | § | |
| **An Individual, JENNIFER CHAVARRIA,** | § | |
| **And JAMES CLANIN, an Individual** | § | |
| *Defendants* | § | **TRAVIS COUNTY, TEXAS** |

## DEFENDANTS' FIRST SUPPLEMENTAL COUNTERCLAIMS

COME NOW ALEXANDER BLUNT and ASHLEY BLUNT, Defendants in this case, who supplement their counterclaims as follows:.

### I - SUPPLEMENTAL COUNTERCLAIMS

1.01 **Trespass:** Counter-Defendant entered land owned by Counter-Plaintiffs, and the entry was physical, intentional and voluntary. This has happened on many occasions. This trespass caused injury to Counter-Plaintiffs right to possession.

### II - DAMAGES

2.01 Serafine's actions have caused injury and damage to the Blunts. Further, the Blunts are entitled to statutory and/or exemplary damages. TEX. CIV. PRAC. & REM. CODE §12.002.

### III - CONDITIONS PRECEDENT

3.01 All conditions precedent to the Blunts claims for relief have been performed or have occurred.

### IV - ATTORNEY'S FEES

4.01     The Blunt Defendants request to be awarded attorneys' fees under Tex. Civ. Prac. & Rem. Code §§ 37.004, 37.009, 16.034, 12.002, and 12.006 and under equitable principles.

## V - PRAYER

5.01     ALEXANDER BLUNT and ASHLEY BLUNT, request and pray for judgment of this Court that Plaintiff takes nothing by way of its claims and that the Blunts have judgment for damages, pre-judgment and post-judgment interest, court costs, attorney's fees, and for such other and further relief to which they may show themselves to be justly entitled.

Respectfully Submitted,

Hajjar Peters, LLP
3144 Bee Caves Road
Austin, Texas 78746
Telephone: (512) 637-4956
Facsimile: (512) 637-4958

By:     /s/Doran D. Peters
        Doran D. Peters
        State Bar No. 24027615
        Service@legalstrategy.com
ATTORNEY FOR ALEXANDER BLUNT AND
ASHLEY BLUNT

## CERTIFICATE OF SERVICE

I certify by my signature that a true and correct copy of this pleading has been served via the method indicated below, pursuant to the Texas Rules of Civil Procedure 21 and 21a, to the person(s) noted below on this the 11th day of September, 2015:

Mary Louise Serafine
P.O. Box 4342
Austin, Texas 78756
*Via Eservice: Mlserafine@gmail.com*

Jeff B. Otto
Melissa J. Ackie
Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500, Austin, TX 78701
*Via Eservice: jotto@thompsoncoe.com;*
                *mackie@thompsoncoe.com*

Law Office of Ronald Max Raydon
1718 Fry Road, Suite 450

Ray Bass
120 W. 8th Street

Houston, Texas 77084
*Via Eservice: ron@raydonlaw.com*

Georgetown, Texas 78626
*Via E-Service: Ray@raybass.com*

    */s/ Doran D. Peters*
Doran D. Peters

TAB 16

11/10/2015 9:44:22 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-12-001270
Tamara Franklin

Cause No.   D-1-GN-12-001270

| | | |
|---|---|---|
| Mary Louise Serafine, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| Alexander Blunt, Ashley Blunt, | § | |
| Scott Lockhart, Austin Drainage | § | 200th JUDICIAL DISTRICT |
| and Foundation, LLC d/b/a | § | |
| Austin Drainage and Landscape | § | |
| Development, Viking Fence | § | |
| Company, Ltd., and Viking GP, | § | |
| LLC, Defendants | § | TRAVIS COUNTY, TEXAS |

## COUNTER-DEFENDANT'S SUPPLEMENT TO MOTION FOR DAMAGES AND SANCTIONS UNDER CPRC CHAPTER 27

TO THE HONORABLE KARIN CRUMP:

On June 21, 2012, defendants Alexander and Ashley Blunt brought two counterclaims—tortious interference and fraudulent lien—in this matter. On June 26, 2015 the Third Court of Appeals dismissed under the anti-SLAPP statute the fraudulent lien claim, while splitting into two parts the tortious interference claim—dismissing part of it under the anti-SLAPP statute but allowing that part alleging "threats" *outside the context of this lawsuit* to go forward.

On September 25, 2015, this Court heard Serafine's motion for

damages and sanctions under the anti-SLAPP statute, CPRC Chapter 27. *Serafine has already won and is entitled to that relief.* Indeed, much of Cause No. D-1-GN-12-001270 was hijacked, as intended, by what turned out to be, in essence, three counterclaims at the Court of Appeals and a fourth counterclaim—a late-filed, vague, undefended trespass claim—that, had it proceeded, would have changed the complexion of the entire case.

At the hearing on Serafine's anti-SLAPP relief on Sept. 25, 2015, the Court indicated it would not award sanctions under §27.009 "sufficient to deter" unless the Court believed that deterrence was necessary because Blunts' offending conduct was likely to re-occur.

*Counter-defendant Serafine herewith files this Supplement urging the Court that a sanction sufficient to deter is necessary in this case, because (1) the Blunts' residual counterclaim for tortious interference through "threats" was founded on groundless testimony, as shown below; and (2) the Blunts' last-minute counterclaim for trespass so lacked evidentiary support that the Blunts filed no response to support it when*

*Serafine filed a motion for summary judgment against it.*[1] It was, therefore, precisely the conduct that should be deterred. Indeed, such conduct is not only likely to occur, but has already occurred. To that end, Serafine files this Supplement.

Plaintiff would respectfully note that she is well aware that she lost this case at trial. There are many reasons a case can be lost at trial, but even so, such loss is no evidence whatsoever that the Blunts filed legitimate claims—for tortious interference, by a suit or "threats," for"fraudulent lien," or for trespassing. All of these claims were groundless. They constituted separate actions from the case at trial, and all were dismissed in advance of it.

Serafine requests the attorneys fees previously requested, and asks the Court to reconsider awarding fees for Plaintiff's work, at paralegal rates. Chapter 27 does not contain a "fees incurred" provision, and the court in *Beckstrom v. Gilmore*, 886 S.W.2d 845, 847 (Tex. App.—Eastland 1994) has reasoned that, where a statute does not insist a claimant must be

---

[1] This Court granted summary judgment in Serafine's favor and dismissed both the counterclaim for "threats" and the counterclaim for "trespass." The Court of Appeals had already dismissed the others.

represented by another person, a self-represented lawyer is analogous to in-house counsel.

Recent cases considering Chapter 27 anti-SLAPP fees and sanctions include *Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV (Tex. App.—Austin, April 11, 2014)(upholding $75,000 in sanctions only, from Travis County District Court, where attorneys fees of $45,000 had previously been awarded in California), and *Avila v. Larrea*, No. 05-14-00631-CV (Tex. App.—Dallas, June 23, 2015)(declining to approve Jackson Walker's fee request for $249,000, but reversing trial court award of zero and remanding for further proceedings).

In considering a Chapter 27 sanctions award, the Court should note that the Blunts' counterclaim for tortious interference based on alleged "threats" ***outside the context of the lawsuit*** had no evidentiary support, but the Blunts repeatedly filed groundless affidavits. The trespass counterclaim was also groundless.

Documents referenced in this brief are in the Court's file.[2]

1.  Transcript of May 3, 2012 evidentiary hearing for temporary injunction, four days after filing of Serafine's law suit (no testimony regarding "threats"), Attachment No. 1 filed herewith.
2.  Blunts' Counterclaims, filed June 21, 2012.
3.  Blunts' Response to Motion to Dismiss, filed Sept. 4, 2012.
4.  Transcript, hearing before the Hon. Gisela Triana, Sept. 4, 2012, Attachment No. 2 filed herewith (and also in appellate record).
5.  Lockhart's Answers to Plaintiff's Interrogatories, dated Nov. 20, 2012, Attachment No. 3 filed herewith.
6.  Blunts' Responses and Objections to Plaintiff's Interrogatories, dated Dec. 7, 2012, Attachment No. 4 filed herewith.
7.  Blunts' Responses and Objections to Plaintiff's RFPs, dated Dec. 7, 2012 (filed on Sept. 15, 2015).
8.  Blunts' Special Exceptions to Serafine's...Affirmative Defenses, filed Dec. 18, 2012.
9.  Deposition of Alexander Blunt taken on July 15, 2015, (filed on Sept. 15, 2015).
10. Deposition of Ashley Blunt taken on Aug. 21, 2015, (filed on Sept. 15, 2015).
11. Deposition of Scott Lockhart taken on Aug. 21, 2015, (filed on Sept. 15, 2015).
12. Blunts' Notice of Hearing on Special Exceptions, filed Aug. 24, 2015.
13. Blunts' Opposition to Plaintiff's Motion for Return of Cash Bond, filed Aug. 28, 2015.
14. Blunts' Motion to Compel (pursuant to counterclaimed exemplary damages), filed Sept. 9, 2015.
15. Blunts' Supplemental Counterclaim for Trespass, filed Sept. 11, 2015.
16. Blunts' Response to Plaintiff's No-Evidence Motion for Summary Judgment (re: counterclaim for "threats" as tortious interference) , filed Sept. 18, 2015.

# FACTUAL BACKGROUND

*The facts:   There was no interference by tortious "threats."*

1.      The Blunts' counterclaim of June 21, 2012 alleged that Serafine made tortious threats to Austin Drainage & Foundation.[3]

2.      But after six months and two extensions of time, the Blunts could not give specific answers to interrogatories:

---

[3] **"Tortious Interference with Contract:** The Blunts had a valid contract with Austin Drainage and Foundation, LLC. Serafine willfully and intentionally interfered with that contract through threats and the filing of this lawsuit. Serafine's interference proximately caused injury to the Blunts, who incurred actual damage or loss."

REQUEST FOR INTERROGATORY NO. I: Identify, in conformity ·with the Definition 9 above, each and every person who allegedly received any threat(s) from Ms. Serafine that you contend are relevant to this lawsuit.

RESPONSE: Objection, this request is vague, compound, ambiguous, and overbroad. Further, the phrase "you contend are relevant to this lawsuit" calls for a legal conclusion.

Other interrogatory responses were similar.[4]

3.      Nor did any documents support the alleged threats:[5]

REQUEST FOR PRODUCTION NO. 8: Produce all documents to or from any person who you contend received any threat(s) from Ms. Serafine that are relevant to this lawsuit, including but not limited to documents to or from any person who refused to complete work for the Blunts.
RESPONSE: Objection. This request is overbroad and seeks information that is not relevant and not likely to lead to the discovery of admissible evidence.

REQUEST FOR PRODUCTION NO. 9: Produce all documents to or from any person who you contend witnessed any threat(s) from Ms. Serafine that are relevant to this lawsuit, including but not limited to persons who refused to complete work for the Blunts.
RESPONSE: Objection. This request is overbroad and seeks information that is not relevant and not likely to lead to the discovery of admissible evidence.

4.      Mr. Lockhart's interrogatory answer indicated that Mr. Blunt was the

---

[4] REQUEST FOR INTERROGATORY NO. 3: Specifically and separately for each person identified in the preceding answers, describe the substance of the threat(s) they allegedly received from Ms. Serafine, the manner in which the alleged threat was communicated by her, and the date, time and location of the threat.
RESPONSE: Objection. This best source for this information is the person to whom the threat was made. Generally, it is our understanding that Ms. Serafine made threats to Scott Lockhart and the employees of Austin Drainage.

[5] *See* Defendant Alexander Blunt and Ashley Blunt's Responses and Objections to Plaintiff's Second Request for Production, December 7, 2012.

person who witnessed the threats:

ANSWER: Mr. Blunt witnessed the verbal threats, and several others have read the written threats as they have been produced in this litigation.[6]

5.       In this Court, two and a half years later, Alexander Blunt testified at deposition on July 15, 2015 that he did not witness or record Ms. Serafine engaged in any, much less "daily" threatening conduct:

Q.    [Mr. Bass:]    I see. Okay. Do you have any recollection of ever having made a videotape recording using your cellphone or any other recording -- video recording device of having made a videotaped recording of what you were witnessing to be harassment of Scott Lockhart?
**A.  I don't recall.**

Q. Do you recall ever having made a videotaped recording using your cellphone or any other videotaping device of what you were witnessing to be harassment of Scott Lockhart's employees?
**A. It's the same question asked many different times. I'm going to answer it the same way. I don't recall.**

Q. Thank you. Did you ever hear Ms. Serafine make threats to Scott Lockhart?
**A. No.**

Q. Did you ever hear Ms. Serafine make threats to employees of Scott Lockhart?
**A. No.**

---

[6]    As noted, no documentation of threats ever surfaced.

Q. Now, you say in your counterclaim that tortious interference, that she made threats?
A. **I never personally witnessed her threaten Scott Lockhart or an employee.**

Q. Did Scott Lockhart ever tell you that he had been threatened by Ms. Serafine?
A. **I don't recall.**

Q. Did Scott Lockhart ever tell you that Ms. Serafine had threatened his employees?
A. **I don't recall.**

Blunt Depo at 85-87.

6.    Mr. Blunt responded "I don't recall" some 60 times in the three-hour deposition.

7.    In the same deposition Mr. Blunt testified that the drainage project was changed, re-designed, or re-routed not because of anything Ms. Serafine did or said, but because the re-routing was recommended by Bartlett Tree Service, whom the Blunts had hired:[7]

Q. [Mr. Bass:] And so just to follow up on that briefly, it's because of the recommendations made by Bartlett that the drainage system was routed around the tree?

---

[7] It is undisputed that a city-protected tree on Serafine's property was near the south side of the Blunts' house, near the site of the planned drainage trench.

**A. Correct.**

Q. It had nothing to do with anything that Ms. Serafine complained about?
A. I don't recall all of the exchanges we had, but Bartlett said it would be easier to come up with an alternate system....[ ] **So they recommended, if there was another option, it would be better for the tree to go around the other way. So that's -- that's the reason we proceeded with redesigning the project.**

Q. Okay. But you did that, you redesigned routing of the project based on what Bartlett Tree suggested?
**A. That was their suggestion.**

Q. Okay.
A. Otherwise we would have had to go further underground and it would have been more complicated to do it that way. **And it turns out that the system still functioned redesigning it the other way around. It just took extra cost and time.**

Q. Yeah, but that extra cost was based on recommendations made by Bartlett Tree, that's the part I'm getting at?
**A. Correct. [ ]**

Q. Okay. And I understand that and I'm really not quarreling with you about that. What I want to make sure is you're not saying you suffered any economic harm from this as a result of what Ms. Serafine did because you had to route around the tree? Are you?
**A. Not specifically on that -- on that particular point, no.**

Q. Right. That's what I'm talking merely about having to reroute around the tree, you didn't suffer any economic harm on that point because of anything Ms. Serafine did?

**A. No. No.**

Blunt Depo at 89-92

8. Mr. Blunt's attorney attended Mr. Blunt's deposition.

9. Mr. Lockhart, the contractor whose contract was allegedly interfered with by Serafine's threats, was deposed on August 21, 2015.

10. He testified that Serafine was "filming" his construction work. Otherwise, he recalled speaking to Ms. Serafine only once, except for exchanging pleasantries (Lockhart Depo at 36-38):

Q. [Mr. Bass on Serafine's alleged "filming:"] But she was always on her property?
**A. Yes, sir, always.**

Q. And you already told us that, in and of itself, would not have caused you to stop working on the project?
**A. No, sir.**

Q. Other than that, she never said anything to you that you considered to be harassing; did she?
**A. Not at all.**

Q. Or threatening?
**A. No.**

Q. And you never heard from your workers that she said anything --

**A. No.**

Q. -- that might be considered threatening or harassing?
**A. No.**

Lockhart Depo at 36-38.

11. Mr. Blunt's attorney attended Mr. Lockhart's deposition.

12. Mrs. Blunt, at her deposition, did not testify to any facts supporting the Blunts' claim of tortious interference, in her personal knowledge.

13. To summarize: Mr. Lockhart testified that neither he nor his workers received any threats from Ms. Serafine. Mr. Blunt testified that he never witnessed any such threats. He also testified that "the reason we proceeded with redesigning the project" was because Bartlett Tree Service recommended it; that "the system still functioned redesigning it the other way around;" and that "the Blunts didn't suffer any economic harm."

*The groundless testimony: Tortious interference by "threats."*

14. Despite this, Alexander Blunt repeatedly testified in support of the tortious interference counterclaim that dogged this litigation for three years.

15.    On September 4, 2012, before the Honorable Gisela Triana, Mr. Blunt testified, without cross-examination, about Ms. Serafine and Mr. Lockhart:[8]

> Q. [Mr. Peters:] And how -- why was this project delayed for months?
> A. She just harassed and intimidated him....[ ]
>
> Q. And that's specifically because they were intimidated and they would not go on that side of the property. Correct?
> A. Because of the lawsuit that she filed against them and the threats before that.
>
> Q. And that's what I was going to ask. Did these threats occur before the lawsuit was ever filed?
> A. Yes, well before.
>
> Q. And -- so you -- the system that you have is less optimal, and it cost you more money. Correct?
> A. Yes. [ ]

Transcript at 22-23.

---

[8] By the time Serafine filed her anti-SLAPP motion in August, 2012, it was clear to the Blunts that they had to allege some pre-suit threats, otherwise the litigation privilege would defeat their counterclaim. But before receiving Serafine's anti-SLAPP motion in August, 2012, the Blunts gave no sign of complained-of "threats." Indeed, at an early evidentiary hearing on May 3, 2012, Blunt and Lockhart both testifed at length without ever hinting at alleged threats, and Blunts' engineering expert, Dante Angelini, testified that he inspected the drainage project and found it "adequate."

16. Again contradicting the fact that Lockhart and his workers received no threats, that Bartlett Tree Service recommended the alternate route, and the drainage system worked, Mr. Blunt testified before Judge Triana by affidavit at the same hearing:

> *Ms. Serafine continually harassed the employees of Austin Drainage* [and Landscape Development} and interfered with their work to the point that Austin Drainage would no longer continue work on the project.     [ ]
>
> *On a daily basis,* Ms. Serafine stalked the employees of Austin Drainage....[ ]
>
> Ms. Serafine would ask the employees questions about the work being done. [ ]
>
> *Because of her threats,* I was not able to complete the work as I had originally contracted for it to be completed....
>
> I had to settle for a sub-standard solution. [ ]

17. Judge Triana denied Serafine's motion to dismiss the tortious interference claim, and the Third Court of Appeals affirmed her decision to the extent of remanding for trial only threats made outside the context of the lawsuit.   These courts were convinced by the groundless testimony.

18. And in this Court—even *after* Mr. Blunt's and Mr. Lockhart's depositions revealed that no workers received any threats and Lockhart did not re-route the system because of Ms. Serafine—Mr. Blunt testified with *two affidavits* in support of the Blunts' August 28, 2015 *Response to Plaintiff's Motion for Refund of Bond.* In one affidavit Mr. Blunt testified:[9]

> "The increase in cost was a direct result of **Ms. Serafine's harassment of Austin Drainage and Landscape Development. If she had not harassed them**...[and sued]... I would not have incurred this increase in costs. [ ]"

19. In the other affidavit, also supporting the Blunts' August 28, 2015 *Response to Plaintiff's Motion for Refund of Bond*, Mr. Blunt testified (using his 2012 affidavit quoted above):

> Ms. Serafine continually harassed the employees of Austin Drainage...[ ]
>
> **On a daily basis, Ms. Serafine stalked the employees....[ ]**
>
> > Because of her threats...[ ]...I had to settle for a sub-standard solution.

---

[9] The affidavit is dated August 27, **2013.** Correspondence from the undersigned to Mr. Blunt's counsel, suggesting that the affidavit should be corrected, did not receive a response. The notary's seal indicates the affidavit could not have been signed in 2013.

20. Again in this Court, the Blunts on Sept. 9, 2015 filed a Motion to Compel, seeking Plaintiff's financial status, allegedly in pursuit of exemplary damages for this flawed "threats" counterclaim—it being the only counterclaim "live" at that time.

21. Two days later on Sept. 11, 2015, the Blunts' filed their counterclaim for "trespass." It stated no date, time, location of property entered, or manner of entry, or any other fact. But Plaintiff had to file an answer, affirmative defenses, special exceptions, and a no-evidence and traditional motion for summary judgment.

22. Again in this Court—still undeterred even *after* depositions had shown Lockhart received no threats and the drainage system worked—Mr. Blunt on Sept. 18, 2015 testified by affidavit, newly dated that same day, in support of the Blunts' *Response to Plaintiff's No-Evidence Motion for Summary Judgment* (on the residual counterclaim):

> *Ms. Serafine continually harassed the employees of Austin Drainage and interfered with their work* to the point that Austin Drainage would no longer continue work on the project. [ ]

> *On a daily basis, Ms. Serafine stalked the employees* of Austin Drainage....[ ]

> This interference ultimately caused Austin Drainage to stop work. Later, once Mr. Lockhart was willing to continue the work, he would no longer install the French drain system to the right of the structure as called for in the contract. Instead, he would only retrofit and reroute the system to the left side of the house *due to the Plaintiff's interference.* [ ]

> This resulted in a system that was not optimal because the drains were installed on only two sides of the Blunts' [sic] property rather than three as originally designed and contracted for. [ ]

23. As to the trespass counterclaim: In response to both no-evidence and traditional MSJs, the Blunts did not file any paper.

## CONCLUSION & PRAYER

These facts show that the sanctions provided by section 27.009 of the anti-

SLAPP statute are warranted, to deter future, similar conduct. In the alternative, the facts support Rule 13 or, in the case of the summary judgment affidavit, Rule 166a(h) sanctions.[10] Plaintiff asks the Court to impose such sanctions.

As an attachment hereto, Plaintiff files a Motion for Leave to File Supplemental Exhibits, which contains attorney's fees records discussed at the Sept. 25, 2015 hearing but not admitted at that time.

Respectfully submitted,

By: *M. L. Serafine*

Mary Louise Serafine, State Bar No. 24048301
P.O. Box 4342

---

[10] Additionally, the affidavit signed by Mr. Blunt in the summary judgment proceeding concerning tortious interference through threats, is sanctionable under Rule 166a(h), which provides:

> **Affidavits Made in Bad Faith**.
> Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Austin, Texas   78765
Telephone:   512- 220-5452
Email:  mlserafine@gmail.com

Ray  Bass,  Attorney
SBN  01884000
120  West  8th  Street
Georgetown,  Texas  78626
Telephone  512-863-8788,  Facsimile  512-869-5090
Email:   ray@raybass.com
<u>Attorneys  for  Plaintiff</u>

CERTIFICATE  OF  SERVICE

By  my  signature  below,  I  certify  that  a  true  and  correct  copy  of  the
foregoing  has  been  delivered  pursuant  to  Rule  21a  via  email,  on  the
counsel  below,  on  this  the  9th  day  of  November,  2015.

Ronald  Max  Raydon,  Esq.,
THE  RAYDON  FIRM,  LLC
One  Riverway,  Suite  1747
Houston,  TX  77056
Via  facsimile  (281)  398-6403
Via  Email  ron@raydonlaw.com
<u>Attorney  For  Scott  Lockhart  and  Austin  Drainage  &  Foundation,  LLC</u>

Thompson,  Coe,  Cousins  &  Irons,  L.L.P.
701  Brazos,  Suite  1500,  Austin,  TX  78701
Telephone:  (512)703-8200,    Telecopy:  (512)  708-8777
Jeff  B.  Otto,  Esq.,  jotto@thompsoncoe.com
Melissa  J  Ackie,  Esq.,  mackie@thompsoncoe  com
<u>Attorneys  for  Viking  Fence  Company,  Ltd.  and  Viking  GP,  LLC.</u>

Doran  D.  Peters

HAJJAR  PETERS  LLP
3144  Bee  Caves  Road
Austin,  Texas      78746
Via  facsimile  (512)  637-4958
Via  Email  service@legalstrategy.com
Attorney  for  Alexander  and  Ashley  Blunt

By: _M. L. Serafine_

MARY  LOUISE  SERAFINE,  SBN  24048301

TAB 17

§ 27.009. Damages And Costs.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 27. Actions Involving The Exercise Of Certain Constitutional Rights**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 27.009. Damages And Costs**

(a) If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party:

   (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and

   (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

(b) If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party.

**Cite as Tex. Civ. Prac. and Rem. Code § 27.009**

**History.** Added by Acts 2011, 82nd Leg., R.S., Ch. 341, Sec. 2, eff. June 17, 2011.

TAB 18

§ 16.034. Attorney's Fees.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 16.034. Attorney's Fees**

(a)　In a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court:

　(1)　shall award costs and reasonable attorney's fees to the prevailing party if the court finds that the person unlawfully in actual possession made a claim of adverse possession that was groundless and made in bad faith; and

　(2)　may award costs and reasonable attorney's fees to the prevailing party in the absence of a finding described by Subdivision (1).

(b)　To recover attorney's fees, the person seeking possession must give the person unlawfully in possession a written demand for that person to vacate the premises. The demand must be given by registered or certified mail at least 10 days before filing the claim for recovery of possession.

(c)　The demand must state that if the person unlawfully in possession does not vacate the premises within 10 days and a claim is filed by the person seeking possession, the court may enter a judgment against the person unlawfully in possession for costs and attorney's fees in an amount determined by the court to be reasonable.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.034**

**History.** Amended by Acts 2009, 81st Leg., R.S., Ch. 901, Sec. 1, eff. September 1, 2009.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

TAB 19

§ 12.0071. Motion To Expunge Lis Pendens.

**Texas Statutes**

**Property Code**

**Title 3. Public Records**

**Chapter 12. Recording Of Instruments**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 12.0071. Motion To Expunge Lis Pendens**

(a)   A party to an action in connection with which a notice of lis pendens has been filed may:

  (1)   apply to the court to expunge the notice; and

  (2)   file evidence, including declarations, with the motion to expunge the notice.

(b)   The court may:

  (1)   permit evidence on the motion to be received in the form of oral testimony; and

  (2)   make any orders the court considers just to provide for discovery by a party affected by the motion.

(c)   The court shall order the notice of lis pendens expunged if the court determines that:

  (1)   the pleading on which the notice is based does not contain a real property claim;

  (2)   the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim; or

  (3)   the person who filed the notice for record did not serve a copy of the notice on each party entitled to a copy under Section 12.007(d).

(d)   Notice of a motion to expunge under Subsection (a) must be served on each affected party on or before the 20th day before the date of the hearing on the motion.

(e)   The court shall rule on the motion for expunction based on the affidavits and counteraffidavits on file and on any other proof the court allows.

(f)   After a certified copy of an order expunging a notice of lis pendens has been recorded, the notice of lis pendens and any information derived from the notice:

  (1)   does not:

    (A)   constitute constructive or actual notice of any matter contained in the notice

or of any matter relating to the proceeding;

(B) create any duty of inquiry in a person with respect to the property described in the notice; or

(C) affect the validity of a conveyance to a purchaser for value or of a mortgage to a lender for value; and

(2) is not enforceable against a purchaser or lender described by Subdivision (1)(C), regardless of whether the purchaser or lender knew of the lis pendens action.

(g) The court in its discretion may require that the party prevailing in the expunction hearing submit an undertaking to the court in an amount determined by the court.

**Cite as Tex. Prop. Code § 12.0071**

**History.** Added by Acts 2009, 81st Leg., R.S., Ch. 297, Sec. 2, eff. September 1, 2009.

TAB 20

Rule 13. EFFECT OF SIGNING PLEADINGS, MOTIONS AND OTHER PAPERS; SANCTIONS.

**Texas Rules**

**TEXAS RULES OF CIVIL PROCEDURE**

**Part I. GENERAL RULES**

*As amended through September 1, 2015*

**Rule 13. EFFECT OF SIGNING PLEADINGS, MOTIONS AND OTHER PAPERS; SANCTIONS**

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215-2b, upon the person who signed it, a represented party, or both.

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. A general denial does not constitute a violation of this rule. The amount requested for damages does not constitute a violation of this rule.

TAB 21

§ 10.001. Signing Of Pleadings And Motions.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle A. General Provisions**

**Chapter 10. Sanctions For Frivolous Pleadings And Motions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

### § 10.001. Signing Of Pleadings And Motions

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1)     the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)     each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)     each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)     each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

**Cite as Tex. Civ. Prac. and Rem. Code § 10.001**

**History.** Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.

_____

§ 10.002. Motion For Sanctions.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle A. General Provisions**

**Chapter 10. Sanctions For Frivolous Pleadings And Motions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 10.002. Motion For Sanctions**

(a)    A party may make a motion for sanctions, describing the specific conduct violating Section 10.001.

(b)    The court on its own initiative may enter an order describing the specific conduct that appears to violate Section 10.001 and direct the alleged violator to show cause why the conduct has not violated that section.

(c)    The court may award to a party prevailing on a motion under this section the reasonable expenses and attorney's fees incurred in presenting or opposing the motion, and if no due diligence is shown the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation.

**Cite as Tex. Civ. Prac. and Rem. Code § 10.002**

**History.** Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.

_____

§ 10.003. Notice And Opportunity To Respond.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle A. General Provisions**

**Chapter 10. Sanctions For Frivolous Pleadings And Motions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 10.003. Notice And Opportunity To Respond**

The court shall provide a party who is the subject of a motion for sanctions under Section 10.002 notice of the allegations and a reasonable opportunity to respond to the allegations.

**Cite as Tex. Civ. Prac. and Rem. Code § 10.003**

**History.** Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.

_____

§ 10.004. Violation; Sanction.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle A. General Provisions**

**Chapter 10. Sanctions For Frivolous Pleadings And Motions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 10.004. Violation; Sanction**

(a) A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both.

(b) The sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated.

(c) A sanction may include any of the following:

(1) a directive to the violator to perform, or refrain from performing, an act;

(2) an order to pay a penalty into court; and

(3) an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees.

(d) The court may not award monetary sanctions against a represented party for a violation of Section 10.001(2).

(e) The court may not award monetary sanctions on its own initiative unless the court issues

its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party or the party's attorney who is to be sanctioned.

(f)   The filing of a general denial under Rule 92, Texas Rules of Civil Procedure, shall not be deemed a violation of this chapter.

**Cite as Tex. Civ. Prac. and Rem. Code § 10.004**
**History.** Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.

_____

§ 10.005. Order.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle A. General Provisions**

**Chapter 10. Sanctions For Frivolous Pleadings And Motions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 10.005. Order**


A court shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed.

**Cite as Tex. Civ. Prac. and Rem. Code § 10.005**
**History.** Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.

_____

§ 10.006. Conflict.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle A. General Provisions**

**Chapter 10. Sanctions For Frivolous Pleadings And Motions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 10.006. Conflict**

Notwithstanding Section 22.004, Government Code, the supreme court may not amend or adopt rules in conflict with this chapter.

**Cite as Tex. Civ. Prac. and Rem. Code § 10.006**

**History.** Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.

TAB 22

Rule 265. ORDER OF PROCEEDINGS ON TRIAL BY JURY.

**Texas Rules**

**TEXAS RULES OF CIVIL PROCEDURE**

**Part II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS**

**§ 11. TRIAL OF CAUSES.**

**C. The Trial**

*As amended through September 1, 2015*

**Rule 265. ORDER OF PROCEEDINGS ON TRIAL BY JURY**

The trial of cases before a jury shall proceed in the following order unless the court should, for good cause stated in the record, otherwise direct:

(a) The party upon whom rests the burden of proof on the whole case shall state to the jury briefly the nature of his claim or defense and what said party expects to prove and the relief sought. Immediately thereafter, the adverse party may make a similar statement, and intervenors and other parties will be accorded similar rights in the order determined by the court.

(b) The party upon whom rests the burden of proof on the whole case shall then introduce his evidence.

(c) The adverse party shall briefly state the nature of his claim or defense and what said party expects to prove and the relief sought unless he has already done so.

(d) He shall then introduce his evidence.

(e) The intervenor and other parties shall make their statement, unless they have already done so, and shall introduce their evidence.

(f) The parties shall then be confined to rebutting testimony on each side.

(g) But one counsel on each side shall examine and cross-examine the same witness, except on leave granted.

TAB 23

Rule 266. OPEN AND CLOSE - ADMISSION.

**Texas Rules**

**TEXAS RULES OF CIVIL PROCEDURE**

**Part II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS**

**§ 11. TRIAL OF CAUSES.**

**C. The Trial**

*As amended through September 1, 2015*

**Rule 266. OPEN AND CLOSE - ADMISSION**

Except as provided in Rule 269 the plaintiff shall have the right to open and conclude both in adducing his evidence and in the argument, unless the burden of proof on the whole case under the pleadings rests upon the defendant, or unless the defendant or all of the defendants, if there should be more than one, shall, after the issues of fact are settled and before the trial commences, admit that the plaintiff is entitled to recover as set forth in the petition, except so far as he may be defeated, in whole or in part, by the allegations of the answer constituting a good defense, which may be established on the trial; which admission shall be entered of record, whereupon the defendant, or the defendants, if more than one, shall have the right to open and conclude in adducing the evidence and in the argument of the cause. The admission shall not serve to admit any allegation which is inconsistent with such defense, which defense shall be one that defendant has the burden of establishing, as for example, and without excluding other defenses: accord and satisfaction, adverse possession, arbitration and award, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, release, res judicata, statute of frauds, statute of limitations, waiver, and the like.

TAB 24

§ 16.021. Definitions.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

## § 16.021. Definitions

In this subchapter:

(1)  "Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

(2)  "Color of title" means a consecutive chain of transfers to the person in possession that:

  (A)  is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or

  (B)  is based on a certificate of headright, land warrant, or land scrip.

(3)  "Peaceable possession" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property.

(4)  "Title" means a regular chain of transfers of real property from or under the sovereignty of the soil.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.021**

**History.** Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

§ 16.022. Effect Of Disability.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 16.022. Effect Of Disability**

(a)    For the purposes of this subchapter, a person is under a legal disability if the person is:

    (1)    younger than 18 years of age, regardless of whether the person is married;

    (2)    of unsound mind; or

    (3)    serving in the United States Armed Forces during time of war.

(b)    If a person entitled to sue for the recovery of real property or entitled to make a defense based on the title to real property is under a legal disability at the time title to the property vests or adverse possession commences, the time of the disability is not included in a limitations period.

(c)    Except as provided by Sections 16.027 and 16.028, after the termination of the legal disability, a person has the same time to present a claim that is allowed to others under this chapter.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.022**

**History.** Amended by Acts 1987, 70th Leg., ch. 1049, Sec. 57, eff. Sept. 1, 1987.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

§ 16.023. Tacking Of Successive Interests.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 16.023. Tacking Of Successive Interests**

To satisfy a limitations period, peaceable and adverse possession does not need to continue in the same person, but there must be privity of estate between each holder and his successor.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.023**
**History.** Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

§ 16.024. Adverse Possession: Three-Year Limitations Period.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 16.024. Adverse Possession: Three-Year Limitations Period**


A person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.024**

**History.** Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

§ 16.025. Adverse Possession: Five-Year Limitations Period.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

### § 16.025. Adverse Possession: Five-Year Limitations Period

(a)    A person must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who:

    (1)    cultivates, uses, or enjoys the property;

    (2)    pays applicable taxes on the property; and

    (3)    claims the property under a duly registered deed.

(b)    This section does not apply to a claim based on a forged deed or a deed executed under a forged power of attorney.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.025**

**History.** Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

§ 16.026. Adverse Possession: 10-Year Limitations Period.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

### § 16.026. Adverse Possession: 10-Year Limitations Period

(a)   A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.

(b)   Without a title instrument, peaceable and adverse possession is limited in this section to 160 acres, including improvements, unless the number of acres actually enclosed exceeds 160. If the number of enclosed acres exceeds 160 acres, peaceable and adverse possession extends to the real property actually enclosed.

(c)   Peaceable possession of real property held under a duly registered deed or other memorandum of title that fixes the boundaries of the possessor's claim extends to the boundaries specified in the instrument.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.026**

**History.** Amended by Acts 1989, 71st Leg., ch. 764, Sec. 1, eff. Sept. 1, 1989.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 16.027. Adverse Possession: 25-Year Limitations Period Notwithstanding Disability**


A person, regardless of whether the person is or has been under a legal disability, must bring suit not later than 25 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.027**

**History.** Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

§ 16.028. Adverse Possession With Recorded Instrument: 25-Year Limitations Period.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 16.028. Adverse Possession With Recorded Instrument: 25-Year Limitations Period**

(a)    A person, regardless of whether the person is or has been under a legal disability, may not maintain an action for the recovery of real property held for 25 years before the commencement of the action in peaceable and adverse possession by another who holds the property in good faith and under a deed or other instrument purporting to convey the property that is recorded in the deed records of the county where any part of the real property is located.

(b)    Adverse possession of any part of the real property held under a recorded deed or other recorded instrument that purports to convey the property extends to and includes all of the property described in the instrument, even though the instrument is void on its face or in fact.

(c)    A person who holds real property and claims title under this section has a good and marketable title to the property regardless of a disability arising at any time in the adverse claimant or a person claiming under the adverse claimant.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.028**

**History.** Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

§ 16.029. Evidence Of Title To Land By Limitations.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

### § 16.029. Evidence Of Title To Land By Limitations

(a)    In a suit involving title to real property that is not claimed by this state, it is prima facie evidence that the title to the property has passed from the person holding apparent record title to an opposing party if it is shown that:

    (1)    for one or more years during the 25 years preceding the filing of the suit the person holding apparent record title to the property did not exercise dominion over or pay taxes on the property; and

    (2)    during that period the opposing parties and those whose estate they own have openly exercised dominion over and have asserted a claim to the land and have paid taxes on it annually before becoming delinquent for as long as 25 years.

(b)    This section does not affect a statute of limitations, a right to prove title by circumstantial evidence under the case law of this state, or a suit between a trustee and a beneficiary of the trust.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.029**

**History.** Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

§ 16.030. Title Through Adverse Possession.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Current with legislation passed during the 2015 Regular Session effective through 1/1/2016*

**§ 16.030. Title Through Adverse Possession**

(a)   If an action for the recovery of real property is barred under this chapter, the person who holds the property in peaceable and adverse possession has full title, precluding all claims.

(b)   A person may not acquire through adverse possession any right or title to real property dedicated to public use.

**Cite as Tex. Civ. Prac. and Rem. Code § 16.030**

**History.** Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.